UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:

FAIRFIELD RESIDENTIAL LLC, ET AL.,

Debtors.

(includes:

| | |
|---|---|
| FF Development, Inc.; | 09-14385 (__) |
| FF Development L.P.; | 09-14386 (__) |
| FF Properties, Inc.; | 09-14381 (__) |
| FF Properties L.P.; | 09-14382 (__) |
| Fairview Residential LLC; | 09-14379 (__) |
| FF Realty LLC; | 09-14392 (__) |
| Fairfield Financial A LLC; | 09-14389 (__) |
| FF Investments LLC; | 09-14383 (__) |
| Fairview Investments LLC; | 09-14387 (__) |
| Fairfield Affordable Housing LLC; | 09-14380 (__) |
| Fairview Homes, Inc.; | 09-14388 (__) |
| Fairview Residential L.P.; | 09-14384 (__) |
| Fairview Residential WA LLC; | 09-14391 (__) |
| Fairview Residential CA L.P.) | 09-14390 (__) |

JOINTLY ADMINISTERED
CASE NO. 09-14378 (__)

Chapter 11 Cases

Judge _____

## THE DEBTORS' PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**RICHARDS, LAYTON & FINGER, P.A.**

Daniel J. DeFranceschi (DE 2732)
Paul N. Heath (DE 3704)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**

Richard A. Chesley (Ill. Bar No. 6240877)
Kimberly D. Newmark (DE 4340)
191 North Wacker Drive, 30th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

Counsel for the Debtors and Debtors in Possession

# TABLE OF CONTENTS

ARTICLE I.        DEFINITIONS ................................................................................... 1

A.      Defined Terms ...................................................................................... 1

B.      Other Terms ........................................................................................ 11

C.      Exhibits ............................................................................................... 12

ARTICLE II.       CLASSIFICATION AND TREATMENT OF CLAIMS ................... 12

A.      Summary ............................................................................................. 12

B.      Classification ...................................................................................... 12

C.      Unclassified Claims: Administrative Claims and Priority Tax Claims ............... 13

D.      Classes of Claims and Interests: Classification, Treatment and Voting
        Rights ................................................................................................. 15

ARTICLE III.      ACCEPTANCE OR REJECTION OF THIS PLAN .......................... 20

A.      Impaired Classes of Claims Entitled to Vote ..................................... 20

B.      Classes Deemed to Accept this Plan .................................................. 20

C.      Classes Deemed to Reject this Plan ................................................... 20

D.      Nonconsensual Confirmation ............................................................. 20

ARTICLE IV.      MEANS FOR IMPLEMENTATION OF THE PLAN ...................... 21

A.      Implementation of Plan ...................................................................... 21

B.      Formation of Newco ........................................................................... 21

C.      Governance of Newco ......................................................................... 21

D.      Membership Interests in Newco, New Money Investment and
        Management Investment ..................................................................... 21

E.      Causes of Action ................................................................................ 23

F.      Formation of the Fairfield Trust ........................................................ 23

G.      Appointment and Term of the Liquidating Trustee ........................... 24

H.      Duties of the Liquidating Trustee ...................................................... 25

I.       No Recourse to Liquidation Trustee .................................................. 28

J.       Liability, Indemnification .................................................................. 28

K.      Administrator ...................................................................................... 29

L.      Investment Rights and Obligations .................................................... 29

M.      Dissolution of the Committee ............................................................ 30

N.      Trust Oversight Committee ................................................................. 30

O. Funding of the Plan ........................................................................................... 31

P. Wind-down Reserve .......................................................................................... 31

Q. Distribution Fund ............................................................................................. 32

R. Employee Programs .......................................................................................... 32

S. Corporate and Limited Liability Company Action ............................................ 32

T. Dissolution of the Fairfield Trust...................................................................... 32

U. Saturday, Sunday or Legal Holiday ................................................................. 33

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................................................................... 33

A. Rejection of Remaining Executory Contracts and Unexpired Leases ................ 33

B. Rejection Damages Bar Date ............................................................................ 33

C. Insurance Policies ............................................................................................. 33

ARTICLE VI. DISTRIBUTIONS ............................................................................ 34

A. General Provisions Concerning Distributions .................................................... 34

B. Disbursing Agent .............................................................................................. 35

C. Time and Manner of Distributions.................................................................... 35

D. Delivery of Distributions .................................................................................. 36

E. Undeliverable Distributions .............................................................................. 36

F. Claims Administration Responsibility................................................................ 36

G. Procedures for Treating and Resolving Disputed and Contingent Claims .......... 37

H. Setoffs and Recoupment ................................................................................... 38

I. Allowance and Disallowance of Claims Subject to Section 502 of the Bankruptcy Code .............................................................................................. 38

J. Cancellation of Instruments and Agreements ..................................................... 38

K. No Interest on Claims ....................................................................................... 38

L. Withholding Taxes............................................................................................ 39

M. Reports ............................................................................................................. 39

ARTICLE VII. EFFECT OF CONFIRMATION ....................................................... 39

A. Vesting of Assets .............................................................................................. 39

B. Binding Effect................................................................................................... 39

C. Discharge of Claims and Termination of Interests ............................................ 39

D.   Injunction ............................................................................................. 40

E.   Term of Injunctions or Stays ................................................................. 41

F.   Exculpation ........................................................................................... 41

G.   Reservation of Causes of Action/Reservation of Rights ......................... 41

H.   Avoidance Actions/Objections .............................................................. 41

ARTICLE VIII.   CONDITIONS PRECEDENT .............................................................. 41

A.   Conditions Precedent to Effective Date ................................................. 41

B.   Revocation, Withdrawal or Non-Consummation of Plan ........................ 42

ARTICLE IX.     ADMINISTRATIVE PROVISIONS ...................................................... 43

A.   Retention of Jurisdiction by the Bankruptcy Court ............................... 43

B.   Payment of Statutory Fees ................................................................... 44

C.   Headings .............................................................................................. 44

D.   Binding Effect of Plan .......................................................................... 44

E.   Final Order ........................................................................................... 45

F.   Withholding and Reporting Requirements ............................................ 45

G.   Tax Exemption and Expedited Tax Determination ............................... 45

H.   Governing Law ..................................................................................... 46

I.   Corporate Action .................................................................................. 46

J.   Plan Supplement .................................................................................. 46

K.   Severability .......................................................................................... 46

L.   Revocation ........................................................................................... 46

M.   Substantial Consummation ................................................................... 47

N.   Construction ......................................................................................... 47

O.   Conflict ................................................................................................ 47

P.   Amendments and Modifications ............................................................ 47

Q.   Notices ................................................................................................. 47

R.   Filing of Additional Documents ............................................................ 48

S.   Direction to a Party .............................................................................. 48

T.   Successors and Assigns ........................................................................ 48

U.   Waiver of Subordination ...................................................................... 49

# INTRODUCTION

Debtors Fairfield Residential LLC, FF Development, Inc., FF Development L.P., FF Properties, Inc., FF Properties L.P., Fairview Residential LLC, FF Realty LLC, Fairfield Financial A LLC, FF Investments LLC, Fairview Investments LLC, Fairfield Affordable Housing LLC, Fairview Homes, Inc., Fairview Residential L.P., Fairview Residential WA LLC, and Fairview Residential CA L.P. propose this Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code. The Plan effects a substantive reorganization of the Debtors as more fully set forth in this Plan. The First Tier Subsidiaries and Fairfield shall be substantively consolidated, but the Second Tier Subsidiaries shall not be substantively consolidated.

## ARTICLE I.

## DEFINITIONS

### A.     Defined Terms

Unless otherwise provided in this Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code or the Bankruptcy Rules. For the purposes of this Plan, the following terms (which appear in this Plan in capitalized form) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context otherwise requires.

1.     **"ACH"** shall mean an automated clearing house transfer from a domestic bank.

2.     **"Administrative Budget"** shall mean (i) the initial budget for the six-month period following the Effective Date, setting forth in reasonable detail the anticipated Post-Confirmation Expenses of the Fairfield Trust, together with any amendments or modifications thereto, as prepared by the Liquidating Trustee and approved by the Trust Oversight Committee pursuant to Article IV.H of this Plan; and (ii) any budget for a subsequent six-month period, setting forth in reasonable detail the anticipated Post-Confirmation Expenses of the Fairfield Trust, together with any amendments or modifications thereto, as prepared by the Liquidating Trustee and approved by the Trust Oversight Committee pursuant to Article IV.H of this Plan.

3.     **"Administrative Claim"** shall mean any Claim for costs and expenses of administration of these cases with priority under Bankruptcy Code section 507(a)(1), including, without limitation, costs and expenses allowed under Bankruptcy Code section 503(b), the actual and necessary costs and expenses of preserving the Estates of the Debtors, any Claim arising under Bankruptcy Code section 503(b)(9) with respect to which an Administrative Expense Request was filed on or prior to the bar date established for Claims, any claim relating to the right of reclamation to the extent afforded such priority under the Bankruptcy Code, any Professional Fee Claims, and any fees or charges assessed against the Estates of the Debtors under 28 U.S.C. § 1930.

4.     **"Administrative Expense Request"** shall mean a request or motion for payment of an Administrative Claim.

5. **"Administrative Expense Request Deadline"** shall mean the date set as the deadline for filing Administrative Expense Requests for Administrative Claims (excluding Professional Fee Claims) that are not subject to the Bar Date Order, which deadline shall be thirty (30) days after the Effective Date unless otherwise ordered by the Bankruptcy Court.

6. **"Administration Agreement"** shall mean the Administration Agreement between the Administrator, the Fairfield Trust and **[Newco]** included in the Plan Supplement as Exhibit A.

7. **"Administrator"** shall mean _____.

8. **"Affiliate"** has the meaning set forth at section 101(2) of the Bankruptcy Code.

9. **"Allowed Claim"** or **"Allowed Interest"** shall mean, respectively, a Claim or Interest that: (a) has been allowed by a Final Order of the Bankruptcy Court; (b) has been Scheduled, other than a claim that is scheduled as disputed, contingent or unliquidated; or (c) is the subject of a timely Proof of Claim that has been filed as of the relevant Bar Date and no objection thereto, or motion to subordinate, disallow or otherwise limit recovery, has been made. An Allowed Claim shall not include interest on the amount of any Claim except with respect to an Allowed Claim except as permitted by Bankruptcy Code section 506(b) and as specifically provided in this Plan, or by Final Order of the Bankruptcy Court. If the Debtors shall object to any Claim in accordance with section 502(d) of the Bankruptcy Code, such Claim shall not be an Allowed Claim until the avoidable transfer is returned, a Final Order has been entered that no avoidable transfer exists, or an agreement or settlement is reached that is approved by the Bankruptcy Court or pursuant to provisions in the Plan.

10. **"Allowed [_____] Claim" or "Allowed [_____] Interest"** shall mean an Allowed Claim or Allowed Interest, as the case may be, of a specified Class or an Allowed Claim that is an Administrative Claim, Priority Tax Claim, Priority Claim, General Unsecured Claim, Convenience Claim or Interest Related Claim, as the case may be.

11. **"Asset Management Agreement"** shall mean that certain servicing and asset management agreement by and among the Fairfield Trust and Newco included in the Plan Supplement as Exhibit B, pursuant to which Newco will provide management services to the Fairfield Trust in exchange for an asset management fee.

12. **"Assumption Objection Deadline"** shall mean the date four (4) days prior to the Confirmation Hearing.

13. **"Avoidance Action(s)"** shall mean all claims and Causes of Action arising under chapter 5 of the Bankruptcy Code.

14. **"Bankruptcy Code"** shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, as in effect on the Petition Date or thereafter amended and applicable to the Chapter 11 Cases, as the case may be.

15. **"Bankruptcy Court"** shall mean the United States District Court for the District of Delaware with jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the District of Delaware, or any court having competent jurisdiction to enter the Confirmation Order.

16. **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure effective in accordance with the provisions of 28 U.S.C. § 2075, as in effect on the Petition Date or thereafter amended and applicable to the Chapter 11 Cases, as the case may be.

17. **"Bar Date"** shall mean [_____] [__], 2010, and such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, excluding governmental units, asserting a Claim must have filed a Proof of Claim or be forever barred from asserting such Claim.

18. **"Bar Date Order"** shall mean that certain order of the Bankruptcy Court dated as of [_____] [__], 2010, establishing the [_____] [__], 2010 Bar Date for filing Proofs of Claim, with only those exceptions permitted thereby.

19. **"Business Day"** shall mean a day other than Saturday, Sunday, a legal holiday as defined in Bankruptcy Rule 9006(a) or other day on which the Bankruptcy Court is authorized or required by law to close.

20. **"Capmark Facility"** shall mean that certain credit agreement dated December 27, 2005 by and between Fairfield and the Capmark Lenders, as amended or supplemented from time to time**.**

21. **"Capmark Lenders"** shall mean Capmark Finance and the other lenders party to the Capmark Facility.

22. **"Capmark Unsecured Claims"** shall mean all Claims of any of the Capmark Lenders against any of the Debtors and/or their Estates, which arise from the Capmark Facility.

23. **"Cash"** shall mean cash and cash equivalents in certified or immediately available funds, including, but not limited to, bank deposits, checks and similar items.

24. **"Cash Option"** shall mean the right of each Holder of a Class 2B Fairfield/First Tier Subsidary Allowed General Unsecured Claim to elect to increase its initial cash distribution by its pro rata share of $9.0 million; provided, however, that the Cash Option shall not be available to the Holders of Class 2B General Unsecured Claims unless a New Money Investment is proposed pursuant to this Plan.

25. **"Causes of Action"** shall mean all claims as defined in section 101(5) of the Bankruptcy Code, causes of action, third-party claims, counterclaims and crossclaims (including but not limited to any Causes of Action described in the Disclosure Statement) of the Debtors and/or their Estates that are pending on the Effective Date or may be instituted after the Effective Date against any Person.

26. **"Chapter 11 Cases"** shall mean the above-captioned chapter 11 cases of the Debtors pending in the Bankruptcy Court under Case Nos. [_____ (___)].

27. **"Claims"** shall mean any claim(s) against the Debtors as such term is defined in section 101(5) of the Bankruptcy Code.

28. **"Class"** shall mean each class of Holders of Claims or Interests specified in Article II.B of this Plan.

29. **"Committee"** shall mean the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Cases, as its composition may change from time to time.

30. **"Confirmation Date"** shall mean the date on which the Confirmation Order is entered on the docket in the Chapter 11 Cases by the Bankruptcy Court.

31. **"Confirmation Hearing"** shall mean the hearing at which the Bankruptcy Court considers confirmation of this Plan.

32. **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming this Plan, pursuant to section 1129 of the Bankruptcy Code, and approving the transactions contemplated herein.

33. **"Convenience Class Unsecured Claims"** are General Unsecured Claims of a single holder of a type that would otherwise be included in Class 2.A, 2.B, 2.C, 2.D, 2.E or 2.F that are either (i) $1,000 or less in the aggregate or (ii) greater than $1,000 in the aggregate, but as to which the holder thereof has made a Convenience Class Election.

34. **"Convenience Class Election"** shall mean the election on the ballot for voting to accept this Plan by a single holder of General Unsecured Claims that are greater than $1,000 in the aggregate to have such General Unsecured Claims treated as a Convenience Class Unsecured Claim.

35. **"Creditor"** shall have the meaning set forth in section 101(10) of the Bankruptcy Code.

36. **"Creditor Membership Interests"** shall mean the Membership Interests issued to the Holders of Class 2B Fairfield/First Tier Subsidiary Allowed General Unsecured Claims who elect the Investment Option on the Effective Date.

37. **"Debtors"** shall mean, collectively, Fairfield Residential LLC, FF Development, Inc., FF Development L.P., FF Properties, Inc., FF Properties L.P., Fairview Residential LLC, FF Realty LLC, Fairfield Financial A LLC, FF Investments LLC, Fairview Investments LLC, Fairfield Affordable Housing LLC, Fairview Homes, Inc., Fairview Residential L.P., Fairview Residential WA LLC, and Fairview Residential CA L.P.

38. **"Disallowed Claim"** shall mean a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is Scheduled as zero or as contingent, disputed or

unliquidated and as to which no Proof of Claim or Administrative Expense Request has been timely filed or deemed timely filed with the Bankruptcy Court, (c) is not Scheduled and as to which no Proof of Claim or Administrative Expense Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (d) has been withdrawn by agreement of the Holder thereof and the Debtors or the Fairfield Trust, or (e) has been withdrawn by the Holder thereof.

39.     **"Disbursing Agent"** shall mean the Liquidating Trustee, unless another Person is designated to be the Disbursing Agent by the Trust Oversight Committee.

40.     **"Disclosure Statement"** shall mean the Disclosure Statement dated [_____] [__], 2010, and all exhibits thereto, filed in connection with the Plan pursuant to section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court.

41.     **"Disputed Claim"** shall mean a Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim, including, without limitation, all Claims that (i) have not been Scheduled by the Debtors or have been Scheduled as unknown, contingent, unliquidated, disputed or at zero, whether or not such Claims are the subject of a Proof of Claim in the Bankruptcy Court, or (ii) are the subject of an objection filed with the Bankruptcy Court, which has not been withdrawn or overruled by a Final Order of the Bankruptcy Court; provided, however, that a Claim shall not be a Disputed Claim to the extent it becomes an Allowed Claim or a Disallowed Claim.

42.     **"Distributable Cash"** shall mean the Excess Cash after (i) payment of the Allowed Administrative Claims, Allowed Claims, Allowed Priority Claims, Allowed Convenience Class Unsecured Claims and Allowed Priority Tax Claims, and (ii) retention of amounts needed to pay or reserve for anticipated amounts of Post-Confirmation Expenses and Disputed Claims.

43.     **"Distribution"** shall mean the distribution, in accordance with this Plan, of Cash or other property, as the case may be, or the Cash or other property as distributed.

44.     **"Distribution Fund"** shall mean the fund which shall be established on the Effective Date by the Liquidation Trustee to pay (in the event any payments are to be made to holders of such Claims) Class 1.A, 1.B, 1.C, 1.D, and 1.E Priority Claims, Class 2.A, 2.B, 2.C, 2.D, 2.E and 2.F General Unsecured Claims, and Class 4.A, 4.B, 4.C, 4.D, and 4.E Convenience Claims.

45.     **"Effective Date"** shall mean the first Business Day after the Confirmation Order has become a Final Order.

46.     **"Effective Date Distributions"** shall mean the Distributions of Cash by the Fairfield Trust to Holders of Class 2.A and Class 2.B General Unsecured Claims on the Effective Date.

47.     **"Effective Date Minimum Cash Balance"** shall mean $30.0 million.

48. **"Estates"** shall mean the estates of the Debtors created by section 541 of the Bankruptcy Code.

49. **"Excess Cash"** means the amount of available cash in the Fairfield Trust that exceeds the applicable Minimum Cash Balance, plus appropriate reserves.

50. **"Executory Contract"** shall mean any executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, between any Debtor and any other Person.

51. **"FF Properties"** shall mean FF Properties L.P.

52. **"Face Amount"** shall mean (i) when used in reference to a Disputed or Disallowed Claim, the full stated liquidated amount claimed by the Holder of such Claim in any Proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (ii) when used in reference to an Allowed Claim, the allowed amount of such Claim.

53. **"Fairfield"** shall mean Fairfield Residential LLC.

54. **"Fairfield Trust"** shall mean the Delaware common law trust described more fully in Article IV.F of the Plan.

55. **"Fairview CA"** shall mean Fairview Residential CA L.P.

56. **"Fairview L.P."** shall mean Fairview Residential L.P.

57. **"Fairview WA"** shall mean Fairview Residential WA LLC.

58. **"Final Decree"** shall mean the decree contemplated under Bankruptcy Rule 3022.

59. **"Final Order"** shall mean an order or judgment of the Bankruptcy Court as entered on the docket of the Chapter 11 Cases that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or seek reargument or rehearing has run or as to which any right to appeal, reargue, petition for certiorari or seek rehearing has been waived in writing or, if an appeal, reargument, petition for certiorari or rehearing thereof has been pursued or granted then such an appeal, reargument, petition for certiorari or rehearing has been denied, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired. Notwithstanding, and in lieu of the foregoing, insofar as the Confirmation Order confirming this Plan is concerned, Final Order means such order or judgment with respect to which no stay is in effect.

60. **"First Tier Subsidiaries"** shall mean the following Fairfield first-tier subsidiaries: FF Development, Inc., FF Development L.P., FF Properties, Inc., FF Properties L.P., Fairview Residential LLC, FF Realty LLC, Fairfield Financial A LLC, FF Investments LLC, Fairview Investments LLC, and Fairfield Affordable Housing LLC.

61. **"First Tier Subsidiary Claims"** means the Allowed General Unsecured Claims of all creditors of the First Tier Subsidiaries other than the Capmark Lenders, except for the Holders who elect to receive payment as a Convenience Class Unsecured Claim.

62. **"General Unsecured Claim"** shall mean any Claim that is not an Administrative Claim, Priority Claim, Priority Tax Claim, Wachovia Claim, Convenience Class Unsecured Claim, Intercompany Claim or Interest Related Claim, including without limitation the Fairfield and First Tier Subsidiary Claims.

63. **"Guaranty Claims"** are Claims based upon project loan payment guaranties or project construction loan completion guaranties.

64. **"Guaranty Claims Protocol"** shall mean the procedures established for the liquidation of the Claims of Unsecured Creditors holding guaranty claims against the Debtors as set forth in the Plan Supplement as Exhibit C.

65. **"Holder"** shall mean the owner or holder of any Claim or Interest.

66. **"Homes"** shall mean Fairview Homes, Inc.

67. **"Impaired"** shall have the meaning set forth in section 1124 of the Bankruptcy Code.

68. **"Interest"** shall mean, with respect to any Debtor, any "equity security" as such term is defined in section 101(16) of the Bankruptcy Code. Interest shall also include, without limitation, all stock, partnership, membership interest, warrants, options or other rights to purchase or acquire any equity interests in the Debtors.

69. **"Intercompany Claim"** shall mean a claim of any Debtor against any other Debtor.

70. **"Interest Related Claim"** shall mean any Claim, including pursuant to section 510(b) of the Bankruptcy Code, against the Debtors arising from the purchase or sale of an Interest in the Debtors, or any Claim against the Debtors by an entity that asserts equitable or contractual rights of reimbursement, contribution or indemnification arising from such Claim.

71. **"Investment Option"** shall mean the right of each Holder of a Class 2B Fairfield/First Tier Subsidiary Allowed General Unsecured Claim to elect to invest its pro rata share of $9.0 million in Newco in exchange for Membership Interests; provided, however, that the Investment Option shall not be available to the Holders of Class 2B General Unsecured Claims unless a New Money Investment is proposed pursuant to this Plan..

72. **"IRS"** shall mean the Internal Revenue Service.

73. **"Lien"** shall mean any lien, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

74. **"Liquidating Trust Agreement"** shall mean the liquidating trust agreement for the Fairfield Trust which is included in the Plan Supplement as Exhibit D.

75. **"Liquidating Assets"** shall mean all assets of each of the Debtors other than the Reorganized Fairfield Assets, including, but not limited to, all Causes of Action, including all Avoidance Actions.

76. **"Liquidating Trustee"** shall mean that individual appointed by the Committee, the Other Creditors and the Capmark Lenders, in his or her capacity as the trustee of the Fairfield Trust or any of his or her successors.

77. **"Management"** shall mean Chris Hashioka, Greg Pinkalla, Ted Bradford, Jim Hribar and Perry Raptis.

78. **"Management Investment"** shall mean the investment of not less than $1.25 million in Newco by Management in exchange for Membership Interests.

79. **"Membership Interests"** shall mean the membership interests in Newco to be issued on the Effective Date.

80. **"Minimum Cash Balance"** shall be (i) $30 million beginning on the Effective Date through December 20, 2010; (ii) $25 million beginning on December 21, 2010 through December 20, 2011; (iii) $15 million beginning on December 21, 2011 through December 20, 2012; and (iv) $10 million thereafter.

81. **"New Money Investment"** shall mean the New Money Investors' investment of not less than $15.0 million in Newco in exchange for Membership Interests.

82. **"New Money Investors"** shall mean _____.

83. **"Newco"** means New Fairfield, LLC, which shall hold, directly or indirectly, all of the equity interests of Reorganized FF Properties.

84. **"Operating Agreement"** shall mean the Operating Agreement of Newco attached as Exhibit F to the Plan Supplement.

85. **"Organization Documents"** shall mean any certificate filed with the Secretary of State prior to the Effective Date, including any certificate of incorporation or certificate or formation, and any amendments or restatements thereto, and the bylaws or limited liability company agreements, as applicable, and any amendments and restatements thereto, of each of the Debtors.

86. **"Other Creditors"** shall mean the five Creditors holding the largest Unsecured Claims that are not otherwise on the Committee.

87. **"Person"** shall mean any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint

stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or other entity.

88.     **"Petition Date"** shall mean December 13, 2009, the date the Debtors commenced the Chapter 11 Cases.

89.     **"Plan"** shall mean this Chapter 11 Plan of Reorganization (as the same may be modified or amended by the Debtors and the Committee in accordance with the Bankruptcy Code and the Bankruptcy Rules) and any exhibits hereto and any documents incorporated herein by reference.

90.     **"Plan Supplement"** means the supplement or supplements to the Plan containing certain documents relevant to the implementation of the Plan, including without limitation the Administration Agreement, the Asset Management Agreement, the Guaranty Claims Protocol, the Unfinished Projects Protocol, the Operating Agreement for Newco, the agreement governing the New Money Investment and the Liquidating Trust Agreement.

91.     **"Post-Confirmation Expense"** shall mean any fees, costs and expenses (including, without limitation, United States Trustee fees, Liquidating Trustee fees, attorneys' fees, the fees of other professionals, and any taxes imposed on the Fairfield Trust or in respect of the Liquidating Assets and/or the Reorganized Fairfield Assets) necessary to complete the reorganization of the Debtors, their Estates and the liquidation of the Liquidating Assets and Fairfield Trust after the Effective Date.

92.     **"Priority Claim"** shall mean a Claim entitled to priority pursuant to section 507 of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

93.     **"Priority Tax Claim"** shall mean a Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code or a tax Claim afforded secured status pursuant to section 506 of the Bankruptcy Code.

94.     **"Professional"** shall mean a Person (i) employed by the Debtors and/or the Committee pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been Allowed under section 503(b)(4) of the Bankruptcy Code by the Bankruptcy Court pursuant to a Final Order.  This term excludes professionals that may be selected and employed by the Liquidating Trustee, the Fairfield Trust or the Trust Oversight Committee on and after the Effective Date.

95.     **"Professional Fee Claim"** shall mean all fees and expenses claimed by Professionals which remain unpaid as of the Effective Date.

96.     **"Proof of Claim"** shall mean a proof of claim filed in the Chapter 11 Cases pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

97.     **"Pro Rata"** shall mean the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

98.     **"Protected Party"** shall mean any of the Debtors, the Liquidating Trustee, the Estates, the Fairfield Trust, the Committee and the Trust Oversight Committee and their respective officers, directors, current (but not former) employees, members, shareholders, advisors, attorneys, representatives, professionals and other agents.

99.     **"Reorganized Fairfield"** shall mean Reorganized FF Properties and Newco, collectively.

100.    **"Reorganized Fairfield Assets"** shall mean: (i) the assets of FF Properties (including without limitation contractual rights to receive existing asset management fees and property management fees, but excluding cash and Causes of Action), (ii) any contracts for rehabilitation, construction or development work executed by FF Development on or after November 1, 2009 for which Newco will not be paid a trust asset management fee; (iii) all employees, certain property, plant and equipment, certain licenses and other intangible property, certain executory contracts (including equipment leases, nonresidential real estate leases and the asset management agreements with SAF III, Ohio State Teachers Retirement System and Bouwfunds), and books and records of Fairfield and the Retained Subsidiary Debtors as necessary to conduct the business of Newco; and (iv) (A) if a New Money Investment has not been consummated upon the Effective Date, cash in the amount of $9 million; or (B) if a New Money Investment has been consummated upon the Effective Date, the pro rata portion of $9 million allocable to the Holders of Allowed General Unsecured Claims that have elected the Investment Option.

101.    **"Reorganized FF Properties"** shall mean FF Properties in the form that it shall have after implementation of this Plan, and completion of the Chapter 11 Cases.

102.    **"Retained Subsidiary Debtors"** shall mean all Debtors except Fairfield and FF Properties.

103.    **"Scheduled"** with respect to any Claim, shall mean listed on the Schedules.

104.    **"Schedules"** shall mean the Statements of Financial Affairs and Schedules of Assets and Liabilities filed by the Debtors with the Bankruptcy Court in the Chapter 11 Cases under Bankruptcy Rule 1007, as such Statements of Financial Affairs and Schedules of Assets and Liabilities have been or may be amended or supplemented from time to time.

105.    **"Second Tier Subsidiaries"** shall mean Fairview Homes, Inc., Fairfield Residential L.P., Fairview Residential WA LLC, and Fairview Residential CA L.P.

106.    **"Secretary of State"** shall mean the Secretary of State of the State of Delaware.

107.	**"Subsequent Distributions"** shall mean any Distribution of Cash by the Fairfield Trust to Holders of Class 2.A or Class 2.B General Unsecured Claims that is not an Effective Date Distribution.

108.	**"Trust Oversight Committee"** shall mean the trust oversight committee of Creditors formed on the Effective Date upon the dissolution of the Committee and composed of three (3) members selected by the existing Committee, the Other Creditors, and the Capmark Lenders. Such members will be identified in the Plan Supplement filed prior to the Confirmation Hearing.

109.	**"Unfinished Projects Protocol"** shall mean the procedures established for the liquidation of the Claims of Unsecured Creditors holding Claims against the Debtors arising in connection with joint venture projects that have not been completed as of the Petition Date, which protocol is included in the Plan Supplement as Exhibit G.

110.	**"Voting and Claims Agent"** shall mean Kurtzman Carson Consultants LLC, the Court appointed claims, noticing and balloting agent in these jointly administered Chapter 11 Cases.

111.	**"Wachovia"** shall mean Wachovia Finance Co.

112.	**"Wachovia Facility"** shall mean that certain credit agreement dated December 14, 2007 by and among Fairfield and Wachovia, as amended or supplemented from time to time.

113.	**"Wachovia Claim"** shall mean all claims of Wachovia against any of the Debtors and/or their Estates that arise from or relate to the Wachovia Facility.

114.	**"Wachovia Real Estate"** shall mean the real estate underlying the Wachovia Facility.

115.	**"Wind-down Reserve"** shall mean the reserve to be established on the Effective Date by the Liquidating Trustee, in consultation with the Trust Oversight Committee in accordance with the terms of the Administrative Budget, to fund the winding up of the affairs of the Debtors and administering the Plan and Fairfield Trust. After the Effective Date, the Wind-down Reserve shall be supplemented to the extent considered necessary or desirable by the Liquidating Trustee (in consultation with the Trust Oversight Committee) with proceeds of any collection, sale, liquidation, or other disposition of any non-Cash property of the Debtors or the Fairfield Trust existing on or created after the Effective Date, including, without limitation, Causes of Action.

## B.	Other Terms

The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to this Plan as a whole and not to any particular article, section or clause contained in this Plan. A reference to an "Article" refers to an Article, or referenced portion thereof, of this Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any,

in or by the Bankruptcy Code. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply in constructing this Plan.

## C.    Exhibits

All Exhibits to this Plan and the Plan Supplement are incorporated by reference into and are made a part of this Plan as if set forth in full herein.

## ARTICLE II.

## CLASSIFICATION AND TREATMENT OF CLAIMS

### A.    Summary

This Plan constitutes a separate chapter 11 plan of liquidation or reorganization for each of the following categories of Debtors: (i) Fairfield and the First Tier Subsidiaries; (ii) Homes; (iii) Fairview L.P.; (iv) Fairview WA; and (v) Fairview CA. Except for Administrative Claims, and Priority Tax Claims, all Claims against and Interests in a particular category of Debtors are placed in Classes for each category of the Debtors described above. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims or Priority Tax Claims, as described below.

### B.    Classification

The table below classifies Claims against and Interests of all Debtors for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and a Claim or Interest shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| CLASS | STATUS | ENTITLED TO VOTE |
|---|---|---|
| Class 1.A: Fairfield/First Tier Subsidiary Priority Claims | Not Impaired | No |
| Class 1.B: Homes Priority Claims | Not Impaired | No |
| Class 1.C: Fairview L.P. Priority Claims | Not Impaired | No |
| Class 1.D: Fairview WA Priority Claims | Not Impaired | No |
| Class 1.E: Fairview CA Priority Claims | Not Impaired | No |
| Class 2.A: Capmark General Unsecured Claims | Impaired | Yes |
| Class 2.B: Fairfield/First Tier Subsidiary General Unsecured Claims | Impaired | Yes |
| Class 2.C: Homes General Unsecured Claims | Impaired | Yes |
| Class 2.D: Fairview L.P. General Unsecured Claims | Impaired | Yes |
| Class 2.E: Fairview WA General Unsecured Claims | Impaired | Yes |

| CLASS | STATUS | ENTITLED TO VOTE |
|---|---|---|
| Class 2.F: Fairview CA General Unsecured Claims | Impaired | Yes |
| Class 3: Wachovia Claims | Impaired | Yes |
| Class 4.A: Fairfield/First Tier Subsidiary Convenience Class Claims | Not Impaired or Impaired by Agreement | No |
| Class 4.B: Homes Convenience Class Claims | Not Impaired or Impaired by Agreement | No |
| Class 4.C: Fairview L.P. Convenience Class Claims | Not Impaired or Impaired by Agreement | No |
| Class 4.D: Fairview WA Convenience Class Claims | Not Impaired or Impaired by Agreement | No |
| Class 4.E: Fairview CA Convenience Class Claims | Not Impaired or Impaired by Agreement | No |
| Class 5.A: Fairfield/First Tier Subsidiary Intercompany Claims | Impaired | No |
| Class 5.B: Homes Intercompany Claims | Impaired | No |
| Class 5.C: Fairview L.P. Intercompany Claims | Impaired | No |
| Class 5.D: Fairview WA Intercompany Claims | Impaired | No |
| Class 5.E: Fairview CA Intercompany Claims | Impaired | No |
| Class 6.A: Fairfield/First Tier Subsidiary Interest Claims | Impaired | No |
| Class 6.B: Homes Interest Claims | Impaired | No |
| Class 6.C: Fairview L.P. Interest Claims | Impaired | No |
| Class 6.D: Fairview WA Interest Claims | Impaired | No |
| Class 6.E: Fairview CA Interest Claims | Impaired | No |

## C. Unclassified Claims: Administrative Claims and Priority Tax Claims

As provided in Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under this Plan. Rather, all such Claims shall be treated separately as unclassified Claims in accordance with the terms set forth in this Article II.C.

### 1. Administrative Claims

#### a. Non-Professional Fee Claims

The Liquidating Trustee shall pay each Holder of an Allowed Administrative Claim against any Debtor (excluding Professional Fee Claims) the full amount of such Allowed Administrative Claim, without interest, in Cash, (a) as soon as practicable after the Effective Date but no later than twenty (20) days after the Effective Date or (b) within thirty (30) days

after such Administrative Claim becomes an Allowed Claim. Notwithstanding anything herein to the contrary, a Holder of an Allowed Administrative Claim against any Debtor may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Liquidating Trustee. Without limiting the foregoing, all outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930 that have not been paid as of the Effective Date shall be paid by the Liquidating Trustee no later than thirty (30) days after the Effective Date or when due in the ordinary course.

### b. Professional Fee Claims

The Liquidating Trustee shall pay Professionals who are entitled to reimbursement or allowance of fees and expenses from each of the Debtors' Estate pursuant to Bankruptcy Code sections 327-330 and 503(b)(2) - (b)(6) of the Bankruptcy Code, and according to the allocation formula set forth below, in Cash, in the amount awarded to such Professionals by Final Order of the Bankruptcy Court, as soon as practicable after the later of the Effective Date and the date upon which any order awarding fees and expenses becomes a Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Cases, and after application of any retainer received by the Professionals.

Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date must be filed with the Bankruptcy Court and served on counsel for the Fairfield Trust and the Liquidating Trustee at the addresses listed in Article IX.Q of this Plan and on the Office of the United States Trustee so that it is received no later than forty-five (45) days after the Effective Date, unless otherwise extended by agreement of the claimant and the Liquidating Trustee, or such Professional Fee Claim shall be forever barred and shall not be enforceable against the Debtors, their Estates, the Fairfield Trust, the Liquidating Trustee and their successors, their assigns, the Liquidating Assets or the Reorganized Fairfield Assets. Allowed Professional Fee Claims must be paid in full or reserved in full in Cash pending allowance by the Bankruptcy Court prior to any payment to Holders of Allowed Claims in Classes 2A through 2F (General Unsecured Claims).

### c. Administrative Claims and Administrative Expense Request Deadline

Each Holder of an Administrative Claim must file an Administrative Expense Request requesting payment of such Administrative Claim with the Bankruptcy Court by no later than (i) [_____] [__], 2010 for any Claims subject to the Bar Date Order or (ii) the Administrative Expense Request Deadline for all other Administrative Claims that are not subject to the Bar Date Order; provided, however, that any such Administrative Expense Request need not be filed with a hearing date. Nothing herein extends a Bar Date established in the Bar Date Order.

### 2. Priority Tax Claims

The Liquidating Trustee shall pay, at the Liquidating Trustee's discretion, each Holder of an Allowed Priority Tax Claim against any Debtor either (i) in full in Cash at the later of (a) as soon as practicable after the Effective Date or (b) within thirty (30) days after such

Priority Tax Claim becomes an Allowed Claim. All Allowed Priority Tax Claims against the Debtors which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. The Liquidating Trustee can prepay any Allowed Priority Tax Claim at any time after the Effective Date without any penalty or charge.

Holders of Allowed Priority Tax Claims will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with such Claims. Any Claim for any such penalty, or demand for any such penalty, will be deemed disallowed by confirmation of this Plan.

**D.     Classes of Claims and Interests: Classification, Treatment and Voting Rights**

Holders of Claims and Interests are divided into Classes and treated as follows:

**1.     <u>Classes 1.A through 1.E – Priority Claims –Not Impaired</u>**

**a.     Classification**

Classes 1.A, 1.B, 1.C, 1.D and 1.E consist of all Allowed Priority Claims for such respective classes.

**b.     Treatment**

The Liquidating Trustee shall pay each Holder of an Allowed Class 1.A Claim, Allowed Class 1.B Claim, Allowed Class 1.C Claim, Allowed Class 1.D, or Allowed Class 1.E Claim in relative order of priority pursuant to Bankruptcy Code section 507, in full, in Cash, without interest, on the later of (i) thirty (30) days after the Effective Date or (ii) five (5) business days after the date on which such Claim becomes an Allowed Claim.

**c.     Voting**

Classes 1.A, 1.B, 1.C, 1.D and 1.E are not Impaired. Holders of Claims in Classes 1.A, 1.B, 1.C, 1.D and 1.E are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Claims in Classes 1.A, 1.B, 1.C, 1.D and 1.E are not entitled to vote to accept or reject this Plan.

**2.     <u>Class 2.A through 2.F – General Unsecured Claims – Impaired</u>**

**a.     Classification**

Classes 2.A, 2.B, 2.C, 2.D, 2.E and 2.F consist of all General Unsecured Claims for such respective classes.

### b. Treatment

In full and final satisfaction of the Allowed General Unsecured Claims in Classes 2.A, 2.B, 2.C, 2.D, 2.E and 2.F, Holders of Allowed General Unsecured Claims in such classes shall receive:

(i) Class 2.A (Capmark General Unsecured Claims): the Holders of the Capmark General Unsecured Claims shall be entitled to:

A. 60% of the Effective Date Distributions of all Cash on hand in excess of the Effective Date Minimum Cash Balance until an aggregate of $38.2 million has been distributed pursuant to this Article II(D)(2)(b)(i)(A) and Article II(D)(2)(b)(ii)(A) collectively; then

B. thereafter, 40% of the Effective Date Distributions of all Cash on hand in excess of the Effective Date Minimum Cash Balance until an aggregate of $43.2 million has been distributed pursuant to this Article II(D)(2)(b)(i)(B) and Article II(D)(2)(b)(ii)(B) collectively; then

C. thereafter, 60% of the Effective Date Distributions of all Cash on hand in excess of the Effective Date Minimum Cash Balance as of such Effective Date; and

D. 60% of Subsequent Distributions of Excess Cash by the Fairfield Trust until the Holders of Capmark General Unsecured Claims have received an aggregate of $39.75 million; then

E. 55% of the Subsequent Distributions of Excess Cash by the Fairfield Trust thereafter until such time as the aggregate value of all Distributions made to Holders of Capmark General Unsecured Claims equals the allowed amount of such Claims.

The timing and amount of the Distributions of Excess Cash will be determined by the Trust Oversight Committee. The aggregate value of all Distributions received by the Holders of Capmark General Unsecured Claims shall not exceed the Allowed Claims owed by the Debtors under the Capmark Facility.

(ii) Class 2.B (Fairfield/First Tier Subsidiary Claims): with respect to Holders of Class 2.B Claims (except for those who elect to receive payment under a Convenience Class), a Pro Rata Distribution of Cash, based upon the amount of their Allowed Claim, of the following:

A.      40% of the Effective Date Distributions of all Cash on hand in excess of the Effective Date Minimum Cash Balance until an aggregate of $38.2 million has been distributed pursuant to Article II(D)(2)(b)(i)(A) and this Article II(D)(2)(b)(ii)(A) collectively;

B.      thereafter, 60% of the Effective Date Distributions of all Cash on hand in excess of the Effective Date Minimum Cash Balance until an aggregate of $43.2 million has been distributed pursuant to Article II(D)(2)(b)(i)(B) and this Article II(D)(2)(b)(ii)(B) collectively;

C.      thereafter, 40% of the Effective Date Distributions of all Cash on hand in excess of the Effective Date Minimum Cash Balance as of such Effective Date;

D.      40% of Subsequent Distributions of Excess Cash by the Fairfield Trust until the Holders of Capmark General Unsecured Claims have received an aggregate of $39.75 million;

E.      45% of all Subsequent Distributions of Excess Cash by the Fairfield Trust (provided, however, that such percentage shall increase to 100% when the aggregate value of all Distributions made to the Holders of Capmark General Unsecured Claims equals the allowed amount of the obligations owed to the Holders of Capmark General Unsecured Claims).

Notwithstanding the foregoing, if there is no New Money Investment on the Effective Date, then the aggregate amount distributed under clauses (ii)(A) through (ii)(C) above shall be reduced by $9 million and the Holders of Class 2.B Claims shall instead receive 85% of the Membership Interests.  If there is a New Money Investment on the Effective Date, (x) with respect to the Holders that elect the Cash Option (if any), such Holders of shall receive their pro rata share of $9 million in cash (such pro rata share shall be calculated by including in the denominator both Holders that elect the Cash Option and Holders that elect the Investment Option), and (y) with respect to those Holders that elect the Investment Option (if any), such Holders shall receive their pro rata share of $9 million, payable in the form of  Creditor Membership Interests (such pro rata share shall be calculated by including in the denominator both Holders that elect the Cash Option and Holders that elect the Investment Option).

Holders of Guaranty Claims shall have the amount of their Claims determined by the Guaranty Claims Protocol.  In addition, each Holder of an Allowed General Unsecured Prepetition Claim who is an owner of a joint venture project with a Debtor that has not been completed as of the Petition Date shall be treated in accordance with the Unfinished Projects Protocol.

(iii)      Class 2.C (Homes General Unsecured Claims):  the Holders of Class 2.C Claims shall receive a Pro Rata Distribution in cash of the proceeds received from the liquidation of Homes in respect of their claims against Homes.

(iv)      Class 2.D (Fairview L.P. General Unsecured Claims):  the Holders of Class 2.D Claims shall receive a Pro Rata Distribution in cash of the proceeds received from the liquidation of Fairview L.P. in respect of their claims against Fairview L.P.

(v)　　Class 2.E (Fairview WA General Unsecured Claims): the Holders of Class 2.E Claims shall receive a Pro Rata Distribution in cash of the proceeds received from the liquidation of Fairview WA in respect of their claims against Fairview WA.

(vi)　　Class 2.F (Fairview CA General Unsecured Claims): the Holders of Class 2.F Claims will receive a Pro Rata Distribution in cash of the proceeds received from the liquidation of Fairview CA in respect of their claims against Fairview CA.

### c.　　Voting

Classes 2.A, 2.B, 2.C, 2.D, 2.E and 2.F are Impaired.  Therefore, Holders of Allowed Class 2.A Claims and Allowed Class 2.B Claims are entitled to vote to accept or reject the substantively consolidated Plan for Fairfield and the First Tier Subsidiaries or choose the Convenience Class Election, Allowed Class 2.C Claims, Allowed Class 2.D Claims, Allowed Class 2.E Claims and Allowed Class 2.F Claims are entitled to vote to accept or reject this Plan for their respective Estates or choose the Convenience Class Election.

### 3.　　Class 3 – Wachovia Claims – *Impaired*

### a.　　Classification

Class 3 consists of the Wachovia Claims.

### b.　　Treatment

In full and final satisfaction of Wachovia's Allowed Class 3 Claim, Wachovia shall be entitled to (A) a recovery on their Claim through, at their option, (i) a sale of the Wachovia Real Estate to a third-party or (ii) the retention of the Wachovia Real Estate; and (B) an Allowed General Unsecured Claim in Class 2B in the amount of the difference between the outstanding balance under the Wachovia Facility on the Petition Date and the value (as determined by the Bankruptcy Court or as otherwise mutually agreed between the Debtors and Wachovia, as may be reasonably acceptable to the Committee and the Capmark Lenders) of the collateral securing the Wachovia Facility.

### c.　　Voting

Class 3 is Impaired.  Therefore, Wachovia is entitled to vote to accept or reject the substantively consolidated Plan for Fairfield and the First Tier Subsidiaries.

### 4.　　Classes 4.A through 4.E – Convenience Claims (Includes Those Choosing the Convenience Class Election) – Not Impaired or Impaired by Agreement

### a.　　Classification

Classes 4.A, 4.B, 4.C, 4.D and 4.E consist of all Convenience Claims for such respective classes, including Claims of a single Holder of a type that would otherwise be included in Classes 2.A, 2.B, 2.C, 2.D and 2.E  that are either (i) $1,000 or less in the aggregate

or (ii) greater than $1,000 in the aggregate, but as to which the Holder thereof has made a Convenience Class Election.

### b. Treatment

The Liquidating Trustee shall distribute to each Holder of an Allowed Class 4.A Claim, an Allowed Class 4.B Claim, an Allowed Class 4.C Claim, an Allowed Class 4.D Claim or an Allowed Class 4.E Claim, Cash equal to 100% of the Face Amount thereof up to a maximum of $1,000 total payout in full and final satisfaction of such Claim.

### c. Voting

Holders of Class 4.A Claims, Class 4.B Claims, Class 4.C Claims, Class 4.D Claims and Class 4.E Claims are conclusively deemed to have accepted the Plan either (i) pursuant to section 1126(f) of the Bankruptcy Code for such Claims within Article II.D.4(a)(i) of this Plan, or (ii) pursuant to an affirmative vote to accept the Plan for such Claims within Article II.D.4.(a)(ii) of this Plan who chose the Convenience Claims Election.

### 5. Classes 5.A through 5.E – Intercompany Claims – Impaired

#### a. Classification

Classes 5.A, 5.B, 5.C, 5.D and 5.E consist of all Intercompany Claims for such respective class.

#### b. Treatment

Intercompany Claims in Classes 5.A, 5.B, 5.C, 5.D and 5.E shall be settled and forever discharged.

#### c. Voting

Holders of Intercompany Claims in Classes 5.A, 5.B, 5.C, 5.D and 5.E shall receive no distribution under this Plan and are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

### 6. Class 6.A through 6.E – Interests and Interest Related Claims –Impaired

#### a. Classification

Classes 6.A, 6.B, 6.C, 6.D and 6.E consist of all Interests and Interest Related Claims for such respective class.

#### b. Treatment

On the Effective Date, all Interests in any of the Debtors shall be deemed canceled, null and void, and of no force and effect, and Holders of Interest Related Claims in Classes 6.A, 6.B, 6.C, 6.D and 6.E shall receive no Distributions with respect to such Claims.

      c.        **Voting**

Classes 6.A, 6.B, 6.C, 6.D and 6.E will receive no distribution under this Plan. Holders of Interest and Interest Related Claims in Classes 6.A, 6.B, 6.C, 6.D and 6.E are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Interests and Allowed Interest Related Claims in Classes 6.A, 6.B, 6.C, 6.D and 6.E are not entitled to vote to accept or reject this Plan.

# ARTICLE III.

## ACCEPTANCE OR REJECTION OF THIS PLAN

**A.**       **Impaired Classes of Claims Entitled to Vote**

Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Classes 2.A, 2.B, 2.C, 2.D, 2.E and 2.F (General Unsecured Claims) and Class 3 (Wachovia Claims) shall be entitled to vote to accept or reject this Plan. If and to the extent any other Class identified as being unimpaired is impaired (whether as a result of the terms of this Plan or any modification or amendment thereto), upon such a determination, such Class shall then be entitled to vote to accept or reject this Plan.

**B.**       **Classes Deemed to Accept this Plan**

Classes 1.A, 1.B, 1.C, 1.D and 1.E (Priority Claims) and Classes 4.A, 4.B, 4.C, 4.D and 4.E (Convenience Claims) are unimpaired by this Plan. Pursuant to section 1126(f) of the Bankruptcy Code, Classes 1.A, 1.B, 1.C, 1.D and 1.E and Classes 4.A, 4.B, 4.C, 4.D and 4.E are therefore conclusively presumed to have accepted this Plan, and the votes of Holders of Claims in Classes 1.A, 1.B, 1.C, 1.D, and 1.E and Classes 4.A, 4.B, 4.C, 4.D and 4.E will therefore not be solicited.

**C.**       **Classes Deemed to Reject this Plan**

Holders of Classes 5.A, 5.B, 5.C, 5.D, and 5.E (Intercompany Claims) and Classes 6.A, 6.B, 6.C, 6.D and 6.E (Interests and Interest Related Claims) are not entitled to receive any distribution under this Plan. Pursuant to section 1126(g) of the Bankruptcy Code, Classes 5.A, 5.B, 5.C, 5.D, 5.E, 6.A, 6.B, 6.C, 6.D and 6.E are conclusively presumed to have rejected this Plan, and the votes of Holders of Claims in Classes 5.A, 5.B, 5.C, 5.D, 5.E, 6.A, 6.B, 6.C, 6.D and 6.E will therefore not be solicited.

**D.**       **Nonconsensual Confirmation**

If any impaired Class fails to accept this Plan, the Debtors intend to request that the Bankruptcy Court confirm this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to that Class.

# ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.  Implementation of Plan

The Debtors propose to implement and consummate this Plan on and after the Effective Date.  The First Tier Subsidiaries and Fairfield shall be substantively consolidated, but the Second Tier Subsidiaries shall not be substantively consolidated.

### B.  Formation of Newco

Newco will be formed as a new entity, which will hold, directly or indirectly, all of the equity interests of Reorganized FF Properties.  Reorganized Fairfield will retain the Reorganized Fairfield Assets.  Reorganized Fairfield will assume certain executory contracts and operating liabilities of FF Properties and its affiliates associated with the employees of the Debtors.  As of the Effective Date, Reorganized Fairfield's reasonably projected expenses would not exceed its reasonably projected revenues.

Newco shall be structured for administrative and tax efficiency consistent with its two primary businesses: (i) providing management and other services and (ii) investing as a general partner in new projects.

### C.  Governance of Newco

Newco will be governed by the Operating Agreement and initially have a five member board of managers for at least three years after the Effective Date. In the event that a New Money Investment is not completed upon the Effective Date, of the five managers, three will be selected by Holders of Creditor Membership Interests and the Other Creditors, and two will be selected by Management.  In the event of a New Money Investment prior to or on the Effective Date, the composition of the board of managers shall reflect pro rata ownership percentage; provided, however, that (i) Management shall have the right to appoint at least one Manager and (ii) for at least three years after the Effective Date, the Trust Oversight Committee shall have the right to appoint at least one manager.  The managers appointed by the Committee and the Other Creditors shall not be precluded from also serving as members of the Trust Oversight Committee.

The Operating Agreement will delegate day-to-day operating authority to Management.

### D.  Membership Interests in Newco, New Money Investment and Management Investment

Prior to the Effective Date, the Debtors shall continue to operate their businesses subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.  This Plan contemplates and is predicated upon transfer of the Liquidating Assets and the Debtors' liabilities, including Claims, into the Fairfield Trust.

On the Effective Date, if no New Money Investment has been obtained, then existing management of Fairfield shall be issued 15% of the Membership Interests in Newco in exchange for the Management Investment and the Fairfield Trust shall be issued 85% of the Membership Interests in Newco in exchange for a contribution of $9 million in cash, replacing the existing members. If a New Money Investment is consummated on the Effective Date, then (i) Management will make the Management Investment in exchange for their proportionate share of the Membership Interests and a promote interest as agreed between management of Fairfield and the New Money Investors and (ii) the New Money Investors and the Holders of Class 2B General Unsecured Claims that elect the Investment Option shall receive their proportionate share of Membership Interests (based upon the amount of the New Money Investment and the number of Holders of Class 2.B General Unsecured Claims electing the Investment Option). The Membership Interest voting rights will be commensurate with ownership, except with respect to selection of the board of managers.

Newco may acquire a New Money Investment on terms mutually agreed to by senior management of Fairfield and the New Money Investors, and would be subject to Newco's Organization Documents. The New Money Investment shall be subject to the approval of the Bankruptcy Court. In addition, the New Money Investment shall conform to the following: (i) all investments must be made in the same economic class of Membership Interest as the Creditor Membership Interests and the Membership Interests issued in connection with the Management Investment; (ii) the percentage of aggregate Membership Interests constituting Creditor Membership Interests must not be disproportionately diluted except as it relates to Membership Interests received in connection with the Management Investment; and (iii) Holders of Class 2.B General Unsecured Claims must be entitled to representation on the board of managers of Newco as least proportionate to their aggregate equity interest.

The Membership Interests will be designed to facilitate transferability, including without limitation, rights of assignment, reporting, tag-along/drag-along, and other comparable protections; provided, however, that, in the absence of a New Money Investment, Membership Interests may not be transferred (except among Holders of Membership Interests on the Effective Date) for a period of one year after the Effective Date. The Membership Interests will contain other investor protections customary for a transaction of this nature.

Entry of the Confirmation Order shall constitute the approval, pursuant to sections 105(a), 1123(a)(5)(B) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the transfer of the Liquidating Assets and the Debtors' liabilities, including Claims, to the Fairfield Trust.

Notwithstanding the reorganization provided for herein, each and every Debtor shall remain responsible for the payment of quarterly fees pursuant to 28 U.S.C. §1930 to the Office of the United States Trustee until such time as a particular case is closed pursuant to a Final Decree or other order of the Bankruptcy Court, dismissed, or converted.

## E.     Causes of Action

Except for those Causes of Action listed on Exhibit A to the Plan, all Causes of Action shall be transferred into the Fairfield Trust. Pursuant to section 1123 of the Bankruptcy

Code, the Liquidating Trustee shall be authorized to commence all Causes of Action on behalf of all of the Debtors (except for any Cause of Action that may be released pursuant to this Plan) with the consent of the Trust Oversight Committee. After the Effective Date, Causes of Action may be prosecuted, settled or abandoned with or without Court approval by the Liquidating Trustee with the consent of the Trust Oversight Committee. Notwithstanding anything to the contrary herein, no Distribution shall be made to the Holder of any Claim, including by way of setoff or recoupment by such claimant, if the Debtors, the Committee, or the Liquidating Trustee has taken action to recover, or given notice to the applicable party of intent to take such action, on a Cause of Action against the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such Cause of Action is resolved by Final Order or otherwise in accordance with this section. The Liquidating Trustee will be substituted as the party in interest instead of the Debtors or the Committee for all Causes of Action pending on the Effective Date.

Nothing in this Plan or the Confirmation Order shall limit, impair or otherwise restrict the rights of the Liquidating Trustee, with the consent of the Trust Oversight Committee, to bring any claim or Cause of Action against any Person (not otherwise released pursuant to this Plan) for any reason whatsoever, including, without limitation, the failure of this Plan to identify and/or describe such potential claim(s) or causes of action(s) with specificity. In addition to the general reservation of rights and notwithstanding the language in section 1127(b) of the Bankruptcy Code, the Liquidating Trustee and the Trust Oversight Committee reserve the right to modify the Plan at any time prior to or after substantial consummation of the Plan to include such specificity, if necessary, or otherwise desirable; provided, however, that the Liquidating Trustee and the Trust Oversight Committee would comply with the notice requirements set forth in section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 2002 in connection with any such modifications.

## F. Formation of the Fairfield Trust

The Fairfield Trust shall be established as a Delaware common law trust for the sole purpose of liquidating the Estates (other than FF Properties) and making distributions to Holders of Allowed Claims and Interests, in accordance with this Plan and Treasury Regulation § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Subject to definitive guidance from the IRS, all parties shall treat the Fairfield Trust as a liquidating trust for all federal income tax purposes.

The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Liquidating Trustee and to ensure the treatment of the Fairfield Trust as a liquidating trust for federal income tax purposes, all consistent with the Plan.

As set forth herein, the liquidation and winding up of the Fairfield Trust shall become the responsibility of the Liquidating Trustee who shall thereafter have responsibility for the management, control and operation thereof, and who may use, acquire and dispose of the Liquidating Assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to any necessary oversight or approvals of the Trust Oversight Committee as may be required pursuant to the Plan. Subject to further order of the Bankruptcy Court, the Liquidating

Trustee shall act as liquidating agent of and for the Fairfield Trust and the Estates (except for the Reorganized Fairfield Assets) from and after the Effective Date, subject to any necessary oversight or approvals of the Trust Oversight Committee as may be required pursuant to this Plan.

The Liquidating Trustee, at the direction of the Trust Oversight Committee, shall be permitted to make any investments that a liquidating trust, within the meaning of Treasury Regulation § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise. The Liquidating Trustee, at the direction of the Trust Oversight Committee, may expend the Cash of the Fairfield Trust (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Fairfield Trust during liquidation, (b) to pay the respective reasonable administrative expenses (including, but not limited to, any United States Trustee fees, Liquidating Trustee fees, professional fees and taxes imposed on the Fairfield Trust), and (c) to satisfy other respective liabilities incurred by the Fairfield Trust in accordance with the Plan or the Liquidating Trust Agreement.

For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and Holders of Allowed Claims) shall treat the transfer of the Liquidating Assets and the Debtors' liabilities to the Fairfield Trust in accordance with the terms of this Plan, as a transfer to Holders of Allowed Claims followed by a transfer by such Holders to the Fairfield Trust, and the beneficiaries of the Fairfield Trust shall be treated as the grantors and owners thereof. The beneficiaries of the Fairfield Trust shall be the Creditors of the Estates.

The Fairfield Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that within a period of three (3) months prior to such termination date, the Bankruptcy Court, upon motion by a party in interest in consultation with the Trust Oversight Committee, may extend the term of the Fairfield Trust if it is necessary to facilitate or complete the liquidation of the Fairfield Trust's assets. Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained within three (3) months prior to the expiration of each extended term; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Fairfield Trust as a liquidating trust within the meaning of Treasury Regulation § 301.7701-4(d) for federal income tax purposes.

## G. Appointment and Term of the Liquidating Trustee

A super-majority of the Committee, the Other Creditors, and the Capmark Lenders shall appoint and designate the initial Liquidating Trustee. The Committee and the initial Liquidating Trustee shall have entered into a Liquidating Trustee employment agreement to be filed with the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing. The initial Liquidating Trustee, and each successor Liquidating Trustee, shall serve until the earlier of (i) the later to occur of (a) the entry of the Final Decree, (b) the dissolution of the Fairfield Trust, and (c) the payment of the final distributions to Holders of Allowed General Unsecured Claims, Allowed Wachovia Claims and Allowed Convenience Class Claims pursuant to the Plan; or (ii) the expiration of the term of such Liquidating Trustee's employment

agreement or such Liquidating Trustee's resignation, death, incapacity, removal or termination by the Trust Oversight Committee pursuant to the Liquidating Trust Agreement or order of the Bankruptcy Court. The Liquidating Trustee may also be removed by the Bankruptcy Court upon motion for good cause shown by any Creditor.

Upon creation of the Fairfield Trust, the Liquidating Trustee shall be the trustee of the Fairfield Trust for all purposes and in all respects, with all necessary and appropriate power to act for, on behalf of and in the name of the Fairfield Trust.

## H.    Duties of the Liquidating Trustee

In addition to the duties as set forth elsewhere in this Plan and the Liquidating Trust Agreement, and his or her duties as the trustee of the Fairfield Trust, the Liquidating Trustee, in consultation with and, to the extent required by Article IV.N of this Plan or otherwise specifically set forth in this Plan, at the direction of the Trust Oversight Committee, shall have the following duties:

1.    to manage all of the Fairfield Trust's assets, including but not limited to the low income housing tax credit portfolio, in order to maximize value for the beneficiaries of the Fairfield Trust (such management may include the continued operation of any asset and all income derived therefrom) until such time as the Liquidating Trustee determines, in its reasonable business judgment and given market conditions and other timing considerations determined to be appropriate, that a sale of such asset would produce the maximum value for the beneficiaries of the Fairfield Trust; for greater clarity, the Liquidating Trustee in consultation with the Trust Oversight Committee and Newco (in its capacity as asset manager pursuant to the Asset Management Agreement) will periodically review the value and liquidity of the assets in the low income housing tax credit portfolio in determining whether a sale or other disposition and the timing of such sale or other disposition of one or more of such assets would produce the maximum value for the beneficiaries of the Trust.

2.    to recover any and all Liquidating Assets;

3.    to manage, control and operate the Fairfield Trust;

4.    to investigate and, if necessary and appropriate, to prosecute, enforce (or not prosecute or enforce), or to compromise, release or settle any Causes of Action on behalf of the Estates and the Fairfield Trust;

5.    to invest the Liquidating Assets;

6.    to create the Wind-down Reserve and allocate funds to such reserve;

7.    to file any and all reports, pleadings and other documents necessary to carry out the provisions of this Plan;

8.    to make any and all distributions required or permitted to be made under this Plan;

9.        to pay out of the Fairfield Trust any and all Claims, liabilities, losses, damages, costs and expenses incurred in connection therewith or as a result thereof, including all Post-Confirmation Expenses accruing from and after the Effective Date, in accordance with the Administrative Budget;

10.        to employ, supervise and compensate any employees of the Fairfield Trust;

11.        to carry out all member duties and obligations in connection with the operating agreement of Newco until the Fairfield Trust's interest in Newco has been liquidated;

12.        to make and file tax returns for any of the Debtors and the Fairfield Trust;

13.        to commence and pursue dissolution or winding up proceedings for the Fairfield Trust;

14.        to request the entry of a Final Decree;

15.        to take any and all actions, including any action set forth in Article IV.T hereof, necessary to dissolve and cancel the existence of each of the Debtors in the State of Delaware and in any other jurisdiction in which a Debtor is qualified to do business; and

16.        to take any and all other actions necessary or appropriate to implement this Plan and the reorganization of the Debtors and the liquidation of the Fairfield Trust in accordance with applicable law, provided, that nothing herein shall permit the Liquidating Trustee to terminate or cancel the Debtors' director and officer liability insurance coverage relating to the period following the Petition Date; and provided further that, the Liquidating Trustee shall not renew or extend such insurance coverage, or other new or substitute coverage, without the approval of the Trust Oversight Committee.

In connection with the execution of his or her duties under this Plan, the Liquidating Trustee, in consultation with and at the direction of the Trust Oversight Committee, shall be authorized:

a.        to execute such documents and to take such other actions as are necessary to effectuate this Plan and perform his or her duties as liquidating agent of and for the Estates and the Fairfield Trust, including to execute such documents and take such other action on behalf of the Fairfield Trust or any of the Debtors;

b.        to open, close and manage bank accounts, and to enter into business transactions within or without the ordinary course of business;

c.        to authorize and benefit from any insurance policies and rights of indemnification;

d.        to retain and pay professionals (including any of the Debtors' or the Committee's Professionals) or other Persons to assist the Liquidating Trustee in the liquidation of the Liquidating Assets, without prior Bankruptcy Court approval, and to designate another

Person to be the Disbursing Agent, subject to the consent of the Trust Oversight Committee as set forth in Article VI of the Plan;

e.  to incur any reasonable and necessary expenses (up to the amounts set forth in the Administrative Budget) in the performance of his or her duties as liquidating agent of and for the Estates and the Fairfield Trust;

f.  to prepare and deliver to the Trust Oversight Committee the Administrative Budget of the Fairfield Trust with respect to each six-month period following the Effective Date and any amendments or modifications thereto;

g.  to settle any Claim or Cause of Action where the Claim or Cause of Action has an asserted value of $_____ or less;

h.  to seek an order of the Bankruptcy Court approving the compromise, release or settlement of any Cause of Action that has an asserted value of greater than $_____ or the sale or disposition of any Asset, provided that nothing herein shall require the Liquidating Trustee to seek any such order; and

i.  to employ such other procedures, not inconsistent with this Plan, necessary for the Liquidating Trustee to perform his or her duties hereunder.

The Liquidating Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under sections 1106 of the Bankruptcy Code (including, without limitation, commencing, prosecuting or settling Causes of Action and asserting claims, defenses, offsets and privileges), to the extent not inconsistent with this Plan or the status of the Fairfield Trust as a liquidating trust within the meaning of Treasury Regulation § 301.7701-4(d) for federal income tax purposes. In discharging the foregoing responsibilities, the Liquidating Trustee shall be entitled to exercise and rely upon his or her business judgment. The Liquidating Trustee shall not be obligated to take any action or to pursue any Causes of Action unless justified in his or her reasonable determination by fact and law, nor shall the Liquidating Trustee be obligated to take any action that could reasonably cause him or her personal liability. Without limiting the generality of the foregoing, the Liquidating Trustee may consider the interests of Holders of Allowed Claims in receiving prompt distributions and such other factors as may be reasonable in the exercise of his or her business judgment. Such authorization and benefits shall also extend to any, each and every successor Liquidating Trustee, without reservation or limitation.

The reasonable and necessary fees and actual and necessary expenses of the Fairfield Trust, the Liquidating Trustee, the Trust Oversight Committee and the professionals retained by the Liquidating Trustee and the Trust Oversight Committee shall be paid by the Liquidating Trustee in accordance with the procedures established by the Trust Oversight Committee.

## I. No Recourse to Liquidation Trustee

Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is allowed in an amount for which there is insufficient Cash in the relevant fund or reserve to provide a recovery equal to that received by other holders of Allowed Claims in the relevant Class, no Holder of a Claim shall have recourse to the Protected Parties, or their successors or assigns, or the Holder of any other Claim, or any of their respective property. However, nothing in the Plan shall modify any right of a Holder of a Claim under section 502(j) of the Bankruptcy Code. THUS, THE COURT'S ENTRY OF AN ESTIMATION ORDER MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

## J. Liability, Indemnification

No Protected Party shall be liable for the act or omission of any other Protected Party. The Liquidating Trustee or any member of the Trust Oversight Committee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as Liquidating Trustee or as a member of the Trust Oversight Committee, as the case may be, other than acts or omissions resulting from the Liquidating Trustee's or Trust Oversight Committee member's willful misconduct, gross negligence or fraud. The Liquidating Trustee and the Trust Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors and agents, and the Liquidating Trustee and the Trust Oversight Committee shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons other than acts or omissions resulting from the willful misconduct, gross negligence or fraud of the Liquidating Trustee or the members of the Trust Oversight Committee, as the case may be. Notwithstanding such authority, the Liquidating Trustee and the Trust Oversight Committee shall not be under any obligation to consult with their respective attorneys, accountants, financial advisors or agents, and any determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or the members of the Trust Oversight Committee, as the case may be, and their respective designees, unless such determination is based on willful misconduct, gross negligence or fraud. The Fairfield Trust shall indemnify, defend and hold harmless the Liquidating Trustee, the Trust Oversight Committee and their respective designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, but not limited to, attorneys' fees and costs) arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of the duties of the Liquidating Trustee or the Trust Oversight Committee, as the case may be, or the implementation or administration of this Plan; provided, however, that no such indemnification will be available to such Persons for such actions or omissions if a court of competent jurisdiction has determined by final order that the challenged conduct occurred as a result of willful misconduct, gross negligence or fraud.

**K.   Administrator**

The Administrator will be formed by the management of Fairfield to be available to act as the new administrative general partner (or administrative member) of the existing joint ventures in which the Fairfield Trust has an indirect interest. The Administrator's engagement as new administrative general partner (or administrative member) of a particular joint venture would occur only upon the joint request of the particular joint venture's existing partners (or members) and the particular joint venture's existing project lenders. Such engagement would be made pursuant to an administration agreement entered into among those parties and the Administrator. There will be no economics associated with such engagement. The Administrator would be independent of the Fairfield Trust and Reorganized Fairfield.

**L.   Investment Rights and Obligations**

Whether or not there is a New Money Investment on the Effective Date, Newco shall have the right to invest in any project-level acquisitions or joint ventures, subject to the following restrictions. For a period commencing on the Effective Date and ending upon the earlier of (i) December 31, 2010 or (ii) the date on which certificates of occupancy have been issued for those joint venture projects under construction on the Effective Date and listed on Schedule B to the Operating Agreement amounting to more than 90% of the aggregate number of units under construction on the Effective Date as listed on Schedule B to the Operating Agreement (but excluding joint venture projects with respect to which the project lenders have ceased funding):

(a)   Prior to any New Money Investment, the capitalization (debt and equity) of new joint venture projects of Newco shall not exceed $200 million in the aggregate as to all such projects. That capitalization may consist of: (A) new money equity investments made at the project level, (B) a portion of the initial $10.0 million in cash equity capitalization made in Newco (to the extent not needed for reasonable liquidity); and (C) project-level debt (nonrecourse to Newco);

(b)   After an initial New Money Investment, the capitalization (including both debt and equity) of new joint venture projects provided by Newco shall not exceed $500 million in the aggregate as to all such projects. Such capitalization may consist of: (A) new money equity investments made at the joint venture project level; (B) a portion of the cash equity capitalization made in Newco (to the extent not needed for reasonable liquidity); and (C) joint venture project-level debt (nonrecourse to Newco); and

(c)   In the case of any investment in a joint venture project owned in part by the Fairfield Trust, Newco will be permitted to make such investment only if such investment does not amend any rights or obligations under the governance documents of the joint venture project. Such investment would not be subject to (or counted towards) the capitalization limits described in paragraphs (a) and (b) above.

In the event that the Fairfield Trust makes an investment in any existing joint venture project so as not to experience a foreclosure or forfeiture of such interest, it will be required to maintain the Minimum Cash Balance.

## M.      Dissolution of the Committee

Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; (ii) applications for Professional Fee Claims; (iii) requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases; and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order.  The Professionals retained by the Committee and the respective members thereof shall not be entitled to compensation and reimbursement of expenses for services rendered to the Committee after the Effective Date, except for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date; provided, however, that to the extent any such fees and expenses are incurred after the date that is fifteen business days prior to the deadline to file final fee applications, any such fees and expenses must be submitted to the Liquidating Trustee and the Trust Oversight Committee in accordance with Article IV.H of the Plan.

## N.      Trust Oversight Committee

On the Effective Date, the Committee, the Other Creditors and the Capmark Lenders shall appoint the Trust Oversight Committee; provided that the Capmark Lenders shall have the right to appoint one member of the Trust Oversight Committee. The Trust Oversight Committee shall have the duties set forth herein to maximize distributions to Holders of Allowed Claims.  On the Effective Date, the Trust Oversight Committee shall succeed in all respects to all of the rights, privileges and immunities of the Committee, including, without limitation, the attorney-client privileges and any other evidentiary privileges of the Committee.

The Trust Oversight Committee shall have the duty to take actions in accordance with the provisions of this Plan and in furtherance of the execution of this Plan.  The Trust Oversight Committee shall implement a business plan as soon as possible, and thereafter shall operate substantially in accordance with such business plan.  Such business plan shall conform to the pro forma financial statements to the extent possible.  Additionally, the Trust Oversight Committee shall have the following rights and duties:

1.      to approve any release or indemnity in favor of any third party granted or agreed to by the Liquidating Trustee and

2.      to authorize the Liquidating Trustee to commence any Cause of Action or Avoidance Action.

The duties and powers of the Trust Oversight Committee shall terminate upon the later to occur of (i) the entry of the Final Decree, (ii) the dissolution of the Fairfield Trust, and

(iii) the payment of the final distributions to Holders of Allowed General Unsecured Claims, Allowed Wachovia Claims and Allowed Convenience Class Claims pursuant to the Plan.

## O.     Funding of the Plan

The Cash Distributions to be made pursuant to the Plan will be made and the Cash necessary to fund the Fairfield Trust and the Wind-down Reserve will be derived from (i) Excess Cash on hand on the Effective Date; (ii) cash proceeds received by the Debtors from the liquidation of the Liquidating Assets as of the Effective Date and other funds then available and (iii) any payments to be received by the Debtors from the prosecution and enforcement of Causes of Action, revenues from the Liquidating Assets and other funds available after the Effective Date.

To the extent not otherwise provided for herein or ordered by the Court, the Liquidating Trustee, with the consent of the Trust Oversight Committee, shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for accrued expenses and for the payment of prospective expenses and liabilities of the Estates and the Fairfield Trust after the Effective Date.  Without limitation, these reserves shall include funds for the Wind-down Reserve, Professional Fee Claims, Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, Convenience Claims, Disputed Claims and all amounts due pursuant to 28 U.S.C. §1930.

Notwithstanding any contrary provision contained herein, the Liquidating Trustee shall not be obligated to physically segregate and maintain separate accounts for reserves or for the Distribution Fund. Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Liquidating Trustee to determine Distributable Cash, reserves and amounts to be paid to parties in interest.

## P.     Wind-down Reserve

On the Effective Date, or as soon thereafter as reasonably practicable, the Liquidating Trustee shall create the Wind-down Reserve and shall transfer an appropriate amount into such reserve from the assets transferred by the Debtors to the Fairfield Trust.  The Liquidating Trustee shall pay Plan administration costs and costs of holding and liquidating any non-Cash property, including but not limited to taxes and professional fees, from the Wind-down Reserve.  To the extent that the Liquidating Trustee, in consultation with the Trust Oversight Committee, determines that funds allocated to the Wind-down Reserve are insufficient for such purposes, the net proceeds of the continuing liquidation of the Liquidating Assets and any other Distributable Cash shall, to the extent necessary for such purposes, be allocated to the Wind-down Reserve. After all costs associated with the Wind-down Reserve have been paid, and/or upon the reasonable determination of the Liquidation Trustee, in consultation with the Trust Oversight Committee, that the funds in the Wind-down Reserve exceed the amounts necessary to pay the expenses for which such fund is established, the remaining or excess funds, as applicable, in the Wind-down Reserve shall be designated as available cash.

**Q.  Distribution Fund**

After all payments have been made or properly reserved for holders of Administrative Expense Claims, Priority Tax Claims, Priority Claims, and Convenience Claims, and all costs associated with the Wind-down Reserve have been paid, and/or upon the reasonable determination of the Liquidating Trustee that the funds in the Wind-down Reserve and any other reserves established by the Liquidating Trustee exceed the amounts necessary for such reserves, the remaining Distributable Cash shall be allocated to the Distribution Fund.  Distribution of Cash, if any, to Holders of Classes 1.A, 1.B, 1.C, 1.D and 1.E Priority Claims and Classes 2.A, 2.B, 2.C, 2.D, 2.E and 2.F General Unsecured Claims shall be made solely from the Distribution Fund.

**R.  Employee Programs**

To the extent not earlier terminated in accordance with their terms or assumed by Reorganized Fairfield, all employee programs, including but not limited to any retirement plans or agreements and health benefits and disability plans are deemed terminated as of the Effective Date in accordance with their terms with no further action required by the Debtors or the Liquidating Trustee, and to the extent any of such employee programs constitute distinct executory contracts with individual employees or otherwise, such contracts are deemed rejected and terminated in accordance with Article V.A hereof. The Liquidating Trustee is authorized to take any actions and make payment of the actual amount, if any, required to be contributed to or on account of an employee program to permit the termination of such programs and discharge all benefit liabilities to participants and beneficiaries of such programs, including, without limitation, continuation of the termination of the Debtors' 401(k) plan.  Employee programs approved by the Court will not terminate on the Effective Date. The Debtors do not maintain any programs for retirees.

**S.  Corporate and Limited Liability Company Action**

On the Effective Date, the matters under this Plan involving or requiring corporate or limited liability company action of the Debtors, including, but not limited to, actions requiring a vote or other approval of the board of directors, members or shareholders, as applicable, and execution of all documentation incident to this Plan, notwithstanding any otherwise applicable non-bankruptcy law or the Organization Documents of the Debtors, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, members or shareholders, as applicable, of the Debtors.

**T.  Dissolution of the Fairfield Trust**

After the liquidation and the winding up of the various Estates, the completion of distributions under this Plan and the entry of the Final Decree, the Liquidating Trustee shall file any documents necessary and proper pursuant to applicable state law to dissolve the Fairfield Trust, and the Fairfield Trust shall dissolve and cease to exist.

## U.      Saturday, Sunday or Legal Holiday

If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.      Rejection of Remaining Executory Contracts and Unexpired Leases

On the Confirmation Date, except for any Executory Contract that previously expired by its own terms or that was previously assumed or rejected by an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code or pursuant to this Plan, any Executory Contract that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, effective as of the Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to Bankruptcy Code sections 365 and 1123 as of the Confirmation Date.

## B.      Rejection Damages Bar Date

Except to the extent another Bar Date applies pursuant to an order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under this Plan must be filed with the Voting and Claims Agent at the following applicable address:

> Kurtzman Carson Consultants LLC
> 2335 Alaska Avenue
> El Segundo, CA 90245
> Attn: Fairfield Claims Processing Center

and a copy served on counsel for the Debtors, counsel for the Committee, the Trust Oversight Committee and the Liquidating Trustee, within thirty (30) days from the entry of the Confirmation Order, or such Claim shall be forever barred and shall not be entitled to a Distribution or be enforceable against the Debtors, their Estates, the Fairfield Trust, the Liquidating Trustee, their successors, their assigns, the Liquidating Assets or the Reorganized Fairfield Assets. Any Claim arising from the rejection of an Executory Contract shall be treated as a Claim in the applicable Class 2.A, 2.B, 2.C, 2.D, 2.E or 2.F (General Unsecured Claims). Nothing in this Plan extends or modifies any previously applicable Bar Date.

## C.      Insurance Policies

To the extent any or all of the insurance policies set forth on Exhibit B to this Plan are considered to be Executory Contracts, then notwithstanding anything contained in this Plan

to the contrary, this Plan shall constitute a motion to assume and assign the insurance policies set forth on Exhibit B to this Plan to Reorganized Fairfield. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to Bankruptcy Code section 365(a) and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, the Estates and all parties in interest in these Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy set forth on Exhibit B to this Plan. To the extent the Bankruptcy Court determines otherwise with respect to any insurance policy, the Debtors reserve the right to seek rejection of such insurance policy or other available relief. This Plan shall not affect contracts that have been assumed and assigned by order of the Bankruptcy Court prior to the Confirmation Date. For the avoidance of doubt, the certain insurance policies (including any insurance policies that are not executory contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on Exhibit B and all rights thereunder and rights under any other insurance policies under which the Debtors may be beneficiaries (including the rights to make, amend, prosecute and benefit from claims) are retained by the Debtors and will be included in the Reorganized Fairfield Assets and handled accordingly pursuant to this Plan.

## ARTICLE VI.

### DISTRIBUTIONS

**A.      General Provisions Concerning Distributions**

All Allowed Unsecured Claims held by a single creditor against a Debtor shall be aggregated and treated as a single Claim against that Debtor. At the written request of the Fairfield Trust, any creditor holding multiple Allowed Unsecured Claims shall provide the Fairfield Trust a single address to which any Distributions shall be sent.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

The Debtors may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Reorganized Fairfield or the Fairfield Trust of any such claim they may have against such claimant.

To the extent that any Allowed Claim entitled to a Distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such Distribution shall be allocated first to the principal amount of the Claim (as determined for

federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

## B.    Disbursing Agent

### 1.    Liquidating Trustee as Disbursing Agent

The Liquidating Trustee shall be the Disbursing Agent, and the Disbursing Agent shall make all distributions under this Plan.

### 2.    Alternative Disbursing Agent Qualification

No Person other than the Liquidating Trustee (or any successor Liquidating Trustee) shall be authorized by the Bankruptcy Court to serve as Disbursing Agent unless and until the Liquidating Trustee and the Trust Oversight Committee consent in writing to that Person serving as Disbursing Agent and that Person (i) executes and files a statement with the Bankruptcy Court agreeing to perform all of the duties of the Disbursing Agent under this Plan and (ii) consents to the jurisdiction of the Bankruptcy Court in respect to all matters relating to the performance of his or her duties as the Disbursing Agent under this Plan or order of the Bankruptcy Court.

## C.    Time and Manner of Distributions

The Liquidating Trustee shall make initial distributions under the Plan not to exceed the Excess Cash on account of Allowed Claims not later than 30 days after the Effective Date, except as otherwise ordered by the Bankruptcy Court. The Liquidating Trustee shall have the power, subject to Trust Oversight Committee consent, to make interim distributions to Holders of Allowed General Unsecured Claims if the Liquidating Trustee determines that such interim distributions are warranted and economical; provided that the Liquidating Trustee shall make interim distributions at least annually. Notwithstanding the foregoing, the Liquidating Trustee shall not make distributions that exceed the amount of Excess Cash. If the Liquidating Trustee determines to make interim distributions to Holders of Allowed General Unsecured Claims, the Liquidating Trustee will determine the amount to be distributed by taking into account such factors as ongoing expenses and costs, taxes and reserves necessary to provide for the resolution of Disputed Claims. Amounts withheld will be placed in an interest-bearing account which shall fund ongoing expenses and costs relating to such reserves, including, without limitation, taxes in respect of Disputed Claims, if any.

At the option of the Liquidating Trustee, any distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer or by ACH. Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary). Any distribution of less than $25.00 will be considered de minimis, and Holders of Allowed Claims that are entitled to any distribution of less than $25.00 will not receive any distribution unless and until the aggregate of such distributions exceeds $25.00. To the extent that the aggregate of such distributions never exceeds $25.00, such funds shall remain with and vest in the Fairfield Trust for distribution to other Holders of Allowed Claims.

## D.      Delivery of Distributions

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be made by the Disbursing Agent (i) at the addresses set forth on the Proofs of Claim filed by such Holder (or at the last known addresses of such Holder if no motion requesting payment or Proof of Claim is filed or the Debtors, the Liquidating Trustee or the Voting and Claims Agent have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Liquidating Trustee has not received a written notice of a change of address.

## E.      Undeliverable Distributions

If a distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of a Claim shall be made unless and until the Liquidating Trustee is notified of the then-current address of such Holder, at which time (subject to the terms of the last sentence of this Article VI.E) all missed distributions shall be made to such Holder without interest.  Amounts in respect of undeliverable distributions shall be returned to the Liquidating Trustee until such distributions are claimed.  All funds or other undeliverable distributions returned to the Liquidating Trustee in respect of any Claim and not claimed within four (4) months of return shall be forfeited and remain with and vest in the Fairfield Trust for distribution to other Holders of Allowed Claims.  Any unclaimed funds held by the Fairfield Trust at the time the Final Decree is entered may be donated to a charity selected by the Liquidating Trustee and the Trust Oversight Committee, provided that such funds do not exceed $10,000, without further order of the Court.

## F.      Claims Administration Responsibility

### 1.      Reservation of Rights to Object to Claims

Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan, or otherwise becomes an Allowed Claim prior to or after the Effective Date, the Fairfield Trust and the Liquidating Trustee (on behalf of the Estates) reserve any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including, without limitation, any and all objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, General Unsecured Claims, Intercompany Claims, Interest Related Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.

### 2.      Objections to Claims

Prior to the Effective Date, the Debtors shall be responsible for pursuing any objection to the allowance of any Claim.  From and after the Effective Date, the Liquidating Trustee will retain responsibility for administering, disputing, objecting to, compromising or otherwise resolving and making distributions, if any, with respect to all Claims.  Unless otherwise provided in this Plan or by order of the Bankruptcy Court, any objections to Claims by

the Liquidating Trustee will be filed and served not later than 180 days after the Effective Date, provided that the Liquidating Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by filing a motion with the Bankruptcy Court, based upon a reasonable exercise of his or her business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Plan.

### 3. Filing of Objections

An objection to a Claim or Interest shall be deemed properly served on the Holder of such Claim or Interest if the Liquidating Trustee affects service in accordance with Bankruptcy Rule 3007.

### 4. Determination of Claims

Except as otherwise agreed by the Liquidating Trustee, any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination, or any revision, modification or amendment thereof, the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law, or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtors or the Liquidating Trustee on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Plan. Nothing contained in this Article VI.F shall constitute or be deemed a waiver of any claim, right or Cause of Action that the Debtors or the Liquidating Trustee may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under 28 U.S.C. § 157.

## G. Procedures for Treating and Resolving Disputed and Contingent Claims

### 1. No Distributions Pending Allowance

No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled, withdrawn, determined by a Final Order, and the Disputed Claim has become an Allowed Claim;.

### 2. Guaranty Claims Protocol

All Holders of General Unsecured Claims arising under a guaranty provided by one or more of the Debtors shall receive an Allowed Unsecured Claim in an amount determined pursuant to the Guaranty Claims Protocol included in the Plan Supplement.

3. **Unfinished Projects Protocol**

All Holders of Allowed Unsecured Prepetition Claims and valid Unsecured Post-Petition Claims, arising in connection with the ownership of joint venture projects that have not been completed as of the Petition Date shall receive an Allowed Unsecured Claim in accordance with the Unfinished Projects Protocol, which is included in the Plan Supplement.

4. **Claim Estimation**

The Debtors or the Liquidating Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code section 502(c); provided, however, that the Bankruptcy Court shall determine (i) whether such Disputed Claim is subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any.

## H. Setoffs and Recoupment

The Liquidating Trustee may, pursuant to Sections 553 and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to this Plan, any claims or Causes of Action of any nature whatsoever the Debtors may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors of any setoff or recoupment the Debtors may have against the Holder of such Claim, nor of any other claim or Cause of Action.

## I. Allowance and Disallowance of Claims Subject to Section 502 of the Bankruptcy Code

Allowance and disallowance of Claims shall be in all respects subject to the provisions of section 502 of the Bankruptcy Code, including, without limitation, subsections (b), (d), (e), (g), (h) and (i) thereof.

## J. Cancellation of Instruments and Agreements

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, stock or agreements evidencing, giving rise to or governing any Claim or Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule; the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures or agreements shall be discharged and the Holders thereof shall have no rights against the Debtors, the Liquidating Trustee, the Estates or the Fairfield Trust; and such promissory notes, share certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the distributions provided for in this Plan.

## K. No Interest on Claims

Unless otherwise specifically provided for in this Plan, the Confirmation Order or a post-petition agreement in writing between the Debtors and a Holder of a Claim that has been

approved by an order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**L.      Withholding Taxes**

The Liquidating Trustee shall be entitled to deduct any federal, state or local withholding taxes from any payments under this Plan. As a condition to making any distribution under this Plan, the Liquidating Trustee may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as the Liquidating Trustee may deem necessary to comply with applicable tax reporting and withholding laws.

**M.      Reports**

From the Effective Date, until a Final Decree is entered, the Liquidating Trustee shall submit quarterly reports to the United States Trustee setting forth all receipts and disbursements of the Fairfield Trust as required by the United States Trustee guidelines.

**ARTICLE VII.**

**<u>EFFECT OF CONFIRMATION</u>**

**A.      Vesting of Assets**

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Reorganized Fairfield Assets shall be released from the custody and jurisdiction of the Bankruptcy Court, and all of Reorganized Fairfield Assets shall vest in Reorganized Fairfield free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided in the Plan. From and after the Effective Date, Reorganized Fairfield may operate its business and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, subject to the terms and conditions of the Plan.

**B.      Binding Effect**

On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, a Debtor and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

**C.      Discharge of Claims and Termination of Interests**

Except as provided in the Plan, the rights afforded in and the payments and Distributions to be made under the Plan shall terminate all Interests and discharge all existing

debts and Claims of any kind, nature or description whatsoever against or in the Debtors, or their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Interests shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims and Interests shall be precluded and enjoined from asserting against Reorganized Fairfield, its successors or assignees or any of its assets or properties, any other or further Claim or Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder has filed a Proof of Claim or proof of interest and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.

## D.     Injunction

Except as otherwise expressly provided in this Plan or in the Confirmation Order, and except in connection with the enforcement of the terms of this Plan or any documents provided for or contemplated in this Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date are permanently enjoined from:  (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against any Protected Party (other than the Fairfield Trust) or any property of any Protected Party (other than the Fairfield Trust) with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree or order against any Protected Party (other than the Fairfield Trust) or any property of any Protected Party (other than the Fairfield Trust) with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party (other than the Fairfield Trust) or any property of any Protected Party (other than the Fairfield Trust) with respect to any such Claim or Interest; (d) effecting, directly or indirectly, any setoff or recoupment of any kind against any obligation due to any Protected Party (other than the Fairfield Trust) or any property of any Protected Party (other than the Fairfield Trust) with respect to any such Claim or Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan with respect to such Claim or Interest.  Nothing contained in this Article VII.D of this Plan shall prohibit the Holder of a Claim or Interest with respect to which a Proof of Claim was timely filed from litigating its right to seek to have such Claim or Interest declared an Allowed Claim or Interest and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Interest of any of the obligations of the Debtors, the Liquidating Trustee or the Fairfield Trust under this Plan.  The Confirmation Order shall also constitute an injunction enjoining any Person from enforcing or attempting to enforce any Causes of Action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article VI.L of this Plan have been made or are not yet due under Article VI.L of this Plan.

## E. Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, this Plan or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the Fairfield Trust.

## F. Exculpation

None of the Protected Parties shall have or incur any liability for, and each Protected Party is hereby released from, any claim, cause of action or liability to any other Protected Party, to any Holder of a Claim or an Interest in their capacity as such, for any act or omission taken in connection with, arising from or relating to the Chapter 11 Cases, the formulation, negotiation and/or pursuit of confirmation of this Plan, the consummation of this Plan, the administration of this Plan and/or the property to be distributed under this Plan, except for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Protected Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Protected Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan and such reasonable reliance shall form an absolute defense to any such claim, cause of action or liability. Without limiting the generality of the foregoing, each Protected Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code.

## G. Reservation of Causes of Action/Reservation of Rights

Nothing contained in the Plan shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtors, Reorganized Fairfield or the Fairfield Trust may have or may choose to assert against any Person.

## H. Avoidance Actions/Objections

Other than any releases granted herein, by the Confirmation Order and by Final Order of the Bankruptcy Court, as applicable, from and after the Effective Date, the Liquidating Trustee shall have the right to prosecute any and all avoidance or equitable subordination actions, recovery causes of action and objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors.

## ARTICLE VIII.

## CONDITIONS PRECEDENT

## A. Conditions Precedent to Effective Date

This Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full in accordance with the provisions specified below:

1.     The Bankruptcy Court shall have approved a disclosure statement with respect to this Plan in form and substance acceptable to the Debtors in their sole and absolute discretion;

2.     The Confirmation Order shall be in form and substance acceptable to the Debtors in their absolute discretion;

3.     The Confirmation Order shall have been entered by the Bankruptcy Court and shall not be subject to any stay of effectiveness; the Confirmation Date shall have occurred and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending;

4.     The appointment of the Liquidating Trustee shall have been approved by order of the Bankruptcy Court;

5.     Reorganized Fairfield's reasonably projected expenses do not exceed its reasonably projected revenues;

6.     The Asset Management Agreement, the Administration Agreement and Liquidating Trust Agreement shall have been entered into and executed as of the Effective Date; and

7.     In the event that a New Money Investment is obtained, all necessary documentation will be executed as of the Effective Date.

## B.     Revocation, Withdrawal or Non-Consummation of Plan

If, after the Confirmation Order is entered, each of the conditions precedent to the Effective Date have not been satisfied or duly waived on or by ninety (90) days after the Confirmation Date, then upon motion by the Debtors or the Committee, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions precedent to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  A condition precedent to the Effective Date may only be waived by a writing executed by both the Debtors and the Committee.   If the Confirmation Order is vacated pursuant to this Article VIII.B, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors, (iii) prejudice in any manner the rights of the Debtors in the Chapter 11 Cases, or (iv) constitute a release, indemnification or exculpation by the Debtors, the Estates or any other party pursuant to this Plan.

# ARTICLE IX.

## ADMINISTRATIVE PROVISIONS

### A.    Retention of Jurisdiction by the Bankruptcy Court

This Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter arising out of or related to the Chapter 11 Cases and this Plan, including, without limitation, the following:

1.    all matters relating to the assumption or rejection or the assumption and assignment of Executory Contracts, or Claims or disputes relating thereto;

2.    all matters relating to the ownership of a Claim or Interest;

3.    all matters relating to the distribution to holders of Allowed Claims and to the determination of Claims;

4.    any and all matters involving the Liquidating Trustee and/or the Fairfield Trust and the Trust Oversight Committee;

5.    all matters relating to or arising in connection with the allowance or estimation of Claims filed, both before and after the Confirmation Date, including any objections to the classification of any Claim;

6.    to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

7.    all matters relating to the construction and implementation of this Plan and the provisions thereof, and to hear and determine all requests for orders in aid of execution, implementation or consummation of this Plan;

8.    all matters relating to disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

9.    to consider any modifications of this Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

10.    all applications for allowance of compensation and reimbursement of Professional Fee Claims under Bankruptcy Code sections 328, 330, 331, 503(b), 1103 and 1129(a)(4);

11.    to hear and determine all motions requesting allowance of an Administrative Claim;

12.    to determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto;

13.    all Causes of Action, Avoidance Actions and other suits and adversary proceedings to recover assets for the Fairfield Trust, as successor-in-interest to any of the Debtors and property of the Estates, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

14.    all matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

15.    any other matter not inconsistent with the Bankruptcy Code;

16.    all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

17.    to enter the Final Decree closing the Chapter 11 Cases; and

18.    to enforce all orders previously entered by the Bankruptcy Court.

## B.    Payment of Statutory Fees

All fees through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date to the extent that an invoice for such fees has been provided to the Debtors prior to the Effective Date. All fees invoiced after the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid by the Liquidating Trustee out of the Liquidating Assets.

## C.    Headings

The headings of the articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

## D.    Binding Effect of Plan

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code on and after the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates, the Fairfield Trust and their respective successors or assigns, whether or not the Claim or Interest of such Holders is impaired under this Plan and whether or not such Holder has accepted this Plan. The rights, benefits and obligations of any

entity named or referred to in this Plan, whose actions may be required to effectuate the terms of this Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity (including, without limitation, the Liquidating Trustee and any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

## E. Final Order

Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtors upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

## F. Withholding and Reporting Requirements

In connection with this Plan and all instruments issued in connection herewith and distributions hereunder, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution. Any party issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

## G. Tax Exemption and Expedited Tax Determination

Pursuant to section 1146 of the Bankruptcy Code, any transfers from a Debtor or the Fairfield Trust to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' or the Fairfield Trust's real or personal property, or the issuance, transfer or exchange of any security under this Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by this Plan, including, without limitation, any transfers to the Fairfield Trust or by the Liquidating Trustee of the Debtors' or the Fairfield Trust's property in implementation of or as contemplated by this Plan (including, without limitation, any subsequent transfers of property by the Liquidating Trustee) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

The Debtors and Reorganized Fairfield are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed

for, on or behalf of, the Debtors for any or all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

## H.     Governing Law

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless specifically stated, the rights, duties and obligations arising under this Plan, any agreements, documents and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control), and, with respect to the Debtors incorporated or organized in Delaware and the Fairfield Trust, corporate and limited liability company governance matters shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles.

## I.     Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the directors of a Debtor or Reorganized Fairfield, as the case may be, shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of the State of Delaware, without any requirement of further action by the directors of the Debtors or Reorganized Fairfield. On the Effective Date, or as soon thereafter as is practicable Reorganized Fairfield shall, if required, file their amended articles of organization or certificates of incorporation, as the case may be, with the Secretary of State of Delaware, in accordance with the applicable general business law of such jurisdiction.

## J.     Plan Supplement

The Plan Supplement and the documents contained therein shall be in form, scope and substance satisfactory to the Debtors, and shall be filed with the Bankruptcy Court no later than five (5) Business Days before the deadline for voting to accept or reject the Plan, provided that the documents included therein may thereafter be amended and supplemented prior to execution, so long as no such amendment or supplement materially affects the rights of holders of Claims or Interests. The Plan Supplement and the documents contained therein are incorporated into and made a part of the Plan as if set forth in full herein.

## K.     Severability

After the Effective Date, should the Bankruptcy Court or any other court of competent jurisdiction determine that any provision in this Plan is either illegal on its face or illegal as applied to any Claim, such provisions shall be unenforceable either as to all Holders of Claims or as to the Holder of such Claim as to which the provision is illegal, respectively. Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## L.     Revocation

The Debtors reserve the right to revoke and withdraw this Plan prior to the Confirmation Date. If the Debtors revoke or withdraw this Plan, then this Plan shall be null and

void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, the Committee or any other Person or to prejudice in any manner the rights of the Debtors, the Committee or any Person in any further proceedings involving the Debtors, or be deemed an admission by the Debtors and/or the Committee.

## M.     Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## N.     Construction

The rules of construction as set forth in section 102 of the Bankruptcy Code shall apply to the construction of this Plan. All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

## O.     Conflict

In the event and to the extent any provision of this Plan is inconsistent with any provision of the Disclosure Statement, the provisions of this Plan shall control and take precedence. The terms of the Confirmation Order shall govern in the event of any inconsistency with the Plan or the summary of the Plan set forth in the Disclosure Statement.

## P.     Amendments and Modifications

The Debtors and the Committee jointly may agree to alter, amend or modify this Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to "substantial consummation" (as such term is defined in section 1101(2)) of the Bankruptcy Code of this Plan, any Debtor, the Committee or the Liquidating Trustee may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan, by the filing of a motion on notice to those parties set forth in Bankruptcy Rule 2002, and the solicitation of all Creditors and other parties-in-interest shall not be required. Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Interests.

## Q.     Notices

Any notices required under this Plan or any notices or requests of the Debtors or the Liquidating Trustee by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

To the Debtors and the Liquidating Trustee:

Fairfield Residential LLC
c/o Andrew Hinkelman
5510 Morehouse Drive, Suite 200
San Diego, California 92121
With a copy to:

Richards, Layton & Finger, P.A.
Attn: Daniel J. DeFranceschi, Esq.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Paul, Hastings, Janofsky & Walker, LLP
Attn: Kimberly D. Newmarch, Esq.
191 N. Wacker Dr., Suite 3000
Chicago, IL 60606

**[INSERT ADDRESS OF LIQUIDATING TRUSTEE]**

## R.    Filing of Additional Documents

On or before substantial consummation of this Plan, and without the need for any further order or authority, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## S.    Direction to a Party

From and after the Effective Date, the Debtors or the Liquidating Trustee may apply to the Bankruptcy Court for the entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by this Plan, and to perform any other act (including the satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of this Plan.

## T.    Successors and Assigns

The rights, duties and obligations of any Person named or referred to in this Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

## U. Waiver of Subordination

Notwithstanding any provision of this Plan to the contrary, all Holders of Claims shall be deemed to have waived any and all contractual subordination rights which they may have with respect to the distributions made pursuant to this Plan, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving distributions under this Plan.

LEGAL_US_W # 63359657.6
RLF1 3515666v.1

Dated: December 13, 2009
      Wilmington, Delaware

Respectfully submitted,

Fairfield Residential LLC

By:   /s/ [_____]
Its:   [_____]


FF Development, Inc.

By:   /s/ [_____]
Its:   [_____]


FF Development L.P.

By:   /s/ [_____]
Its:   [_____]


FF Properties, Inc.

By:   /s/ [_____]
Its:   [_____]


FF Properties L.P.

By:   /s/ [_____]
Its:   [_____]


Fairview Residential LLC

By:   /s/ [_____]
Its:   [_____]

**FF Realty LLC**

By: /s/ [_____]
Its: [_____]

**Fairfield Financial A LLC**

By: /s/ [_____]
Its: [_____]

**FF Investments LLC**

By: /s/ [_____]
Its: [_____]

**Fairview Investments LLC**

By: /s/ [_____]
Its: [_____]

**Fairfield Affordable Housing LLC**

By: /s/ [_____]
Its: [_____]

**Fairview Homes, Inc.**

By: /s/ [_____]
Its: [_____]

**Fairview Residential L.P.**

By: /s/ [_____]
Its: [_____]

Fairfield Residential WA LLC

By: /s/ [_____]
Its: [_____]


Fairfield Residential CA L.P.

By: /s/ [_____]
Its: [_____]

Prepared by:

**RICHARDS, LAYTON & FINGER, P.A**.
Daniel J. DeFranceschi (DE 2732)
Paul N. Heath (DE 3704)
One Rodney Square
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

**PAUL, HASTINGS, JANOFSKY &
WALKER LLP**
Richard A. Chesley (Ill. Bar No. 6240877)
Kimberly D. Newmarch (DE 4340)
191 North Wacker Drive, 30th Floor
Chicago, Illinois  60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100

**Counsel for the Debtors and Debtors in Possession**

Exhibit A
Causes of Action

Exhibit B
Insurance Policies