# EXHIBIT A

**(Stipulation Motion)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                                             :  Chapter 11
                                                             :
In re                                                        :  Case No. 09-14378 (BLS)
                                                             :
Fairfield Residential LLC, et al.,¹                          :  (Jointly Administered)
                                                             :
            Debtors.                                         :
                                                             :  Proposed Hearing Date: 2/1/2010 @ 1:30 p.m. (EST)
                                                             :  Proposed Obj. Deadline: 1/28/2010 at 4:00 p.m. (EST)
-------------------------------------------------------------x
```

## MOTION FOR APPROVAL OF STIPULATION WITH U.S. BANK NATIONAL ASSOCIATION REGARDING PROCEDURES FOR DIRECT PAYMENT OF SUBCONTRACTORS

FF Development L.P., a Delaware limited partnership dba Fairfield Development L.P.

("Development"), one of the debtors in the above-captioned jointly administered bankruptcy case

(collectively, the "Debtors"), files this motion (the "Motion") seeking approval of its Stipulation

(the "Stipulation") with U.S. Bank National Association ("Bank") Regarding Procedures for

Direct Payment of Subcontractors. A copy of the Stipulation is attached hereto as Exhibit A. In

support of the Motion, the Debtors respectfully represent as follows:

---

¹  The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Fairfield Residential LLC, a Delaware limited liability company (8277), Fairview Homes, Inc., a Delaware corporation (9930), FF Development L.P., a Delaware limited partnership (2310), FF Properties L.P., a Delaware limited partnership (5355), Fairview Residential LLC, a Delaware limited liability company (5416), FF Realty LLC, a Delaware limited liability company (5941), Fairfield Financial A LLC, a Delaware limited liability company (7014), FF Investments LLC, a Delaware limited liability company (7066), Fairview Investments LLC, a Delaware limited liability company (9605), Fairfield Affordable Housing LLC, a Delaware limited liability company (7111), FF Development, Inc., a Delaware corporation (2308), FF Properties, Inc., a Delaware corporation (5354), Fairview Residential L.P., a Delaware limited partnership (9788), Fairview Residential WA LLC, a Delaware limited liability company (9703) and Fairview Residential CA L.P., a Delaware limited partnership (9972). The mailing address of each of the Debtors is 5510 Morehouse Drive, Suite 200, San Diego, California 92121.

## Jurisdiction and Venue

1.  This Court has jurisdiction to consider and determine the Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.  The statutory basis for the relief requested herein is section 105(a) of title 11 of the United States Code (the "Bankruptcy Code").

## General Background

3.  On December 13, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases (the "Bankruptcy Cases").

4.  On December 15, 2009, the Court entered an order directing joint administration of these cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). On December 23, 2009, the Office of the United States Trustee ("UST") appointed an official committee of unsecured creditors (the "Committee").

5.  Fairfield Residential LLC ("FFR") is a fully integrated multifamily housing company that through its various subsidiaries provides a diverse mix of services to a wide range of investors, joint venture partners and clients. In addition, FFR either directly or indirectly, acts as a general partner or managing member of, and owns varying stakes in, a number of project level operating companies, none of which is a debtor in these chapter 11 cases. In total, the Debtors, along with wholly owned and certain non-wholly owned non-debtor subsidiaries (collectively, with the Debtors, the "Company") have an interest in approximately 200 separate multifamily properties in stages varying from "raw land," to under construction and finally to fully operational new construction and redevelopment communities.

2

6.    With approximately 2,000 employees, the Company currently operates in 40 diverse markets across the United States, including Boston, Massachusetts; Washington, D.C.; Charlotte, North Carolina; Atlanta, Georgia; Dallas, Texas; Denver, Colorado; Las Vegas, Nevada; Phoenix, Arizona; Los Angeles, California; San Francisco, California; and Seattle, Washington. For 2008, the Company had total revenues of $952.9 million and $107.5 million in net losses. As of December 31, 2008, the Company had approximately $1.2 billion in total assets and approximately $978 million in total liabilities, exclusive of approximately $3 billion of contingent guaranty liabilities. Additional information regarding the Company's financial performance and debt situation is set forth in the Affidavit of Andrew Hinkelman in Support of First Day Pleadings (the "Hinkelman Affidavit").

7.    The Company was built around providing a core group of complementary services to its investors and customers, including:

> ***Development and New Construction*** – Relying upon a skilled team of professionals, the Company is one of the largest developers and builders of market rate and affordable multifamily apartment home properties, as well as student housing properties and for-sale condominium homes. Since inception in late 1997, the Company has started over 200 new construction projects consisting of over 68,000 attached homes and representing approximately $8.5 billion in total project costs.

> ***Acquisitions and Redevelopment*** – As a core element of its strategy, the Company has a well-defined program of acquiring and redeveloping multifamily properties in markets that are either supply-constrained or in which redevelopment costs are substantially below new construction costs. In addition, the Company has had a strategy focused on acquiring properties in markets that appear to be emerging from economic displacement. Since 1997, the Company has acquired nearly 300 properties, consisting of almost 78,000 attached homes and representing approximately $8.2 billion in project costs.

> ***Affordable Housing*** – Since its inception, the Company has been developing, building, redeveloping and managing affordable and workforce housing. The Company is an experienced authority in the intricacies of using Low Income Housing Tax Credits

3

(LIHTCs) and tax exempt municipal bonds to finance affordable apartment homes communities.

The Company has created/ managed over 12,000 affordable apartment homes in over 100 properties throughout the U.S. including almost 6,400 apartment homes in 28 properties financed through Low Income Housing Tax Credits.

*Property Management* – The Company is also one of the largest, full service property management companies in the United States and was ranked by the National Multi Housing Council as the 11th largest apartment manager and 17th largest apartment owner in the country as of year end 2008. As of November 1, 2009, the Company managed over 55,000 apartment homes in new construction, stabilized, turnaround properties and fee-managed properties.

*Asset Management and Disposition* – The Company's internal Asset Management group is responsible for the execution and monitoring of the full business plan of an asset, from the point of acquisition to the sale and realization of the maximum value of the asset and, in turn, the returns to investors. The Company maintains an in-house sales team that, in conjunction with selected brokerage firms, markets and sells properties to maximize the return to the Company's investors.

Since inception, including assets in which it had an ownership interest and those in which it did not, the Company has sold over 360 properties totaling more than 102,000 attached homes for a sales value in excess of $11.7 billion.

8.      Historically, the Company's diverse business lines have allowed the Company to pursue a wide range of opportunities and to respond quickly to changes in the real estate and finance markets. Because the multifamily development, construction, lease-up and asset disposition cycles have been complementary, the Company has been able to include each of its business units as part of a comprehensive group of services to its investors focusing on investment profitability.

9.      Needless to say, the chaos in the domestic and international real estate and finance markets has had a deleterious effect on FFR and each of its operating businesses. While the demand for multifamily homes remains generally strong and FFR's operating businesses

4

continue to perform well, the Company has become ensnared in the collapse of the real estate finance markets. The unprecedented shuttering of these markets has prevented the Company from refinancing its significant debt that has matured (or will shortly mature) and has choked off the market for potential purchasers of the Company's properties.

10.    In late 2008, the Company recognized the need to restructure its parent-level debt and began working with the lenders at FFR on an individual basis. By early 2009, those negotiations came to include, both on an individual basis and, later, through a steering committee of project lenders (the "Steering Committee"), those lenders at the non-debtor project level entities who hold contingent guarantees from certain of the other Debtors. These efforts continued throughout 2009, and recently concluded with the Debtors reaching agreement with their core creditor constituencies on the framework of a consensual plan of reorganization that should allow the Debtors to emerge from chapter 11 during early 2010, as one of the leading multifamily home operating companies.

### Relief Requested

11.    By this Motion, the Debtors request approval of the Stipulation establishing a procedure whereby Bank may disburse funds directly to certain Subcontractors (defined below) who have entered into contracts with Development to provide services and/or materials in connection with the Projects (defined below).

12.    Direct payment to the Subcontractors, whether for pre-petition or post-petition work, will not diminish Development's estate. Pursuant to the applicable General Contractor Agreements (as defined below), Development is required to provide releases of mechanic lien rights from the Subcontractors. The Subcontractors will not provide lien releases, and the Bank will not fund construction draws, unless the Subcontractors are paid. Thus, unless the Subcontractors are paid, Development will not receive its contractor's and developer's fees

5

under the General Contractor Agreements. Thus, direct payment of the Subcontractors will facilitate payment of not only amounts owing to the Subcontractors, but also the contractor's and developer's fees to which Development is entitled. Moreover, certain Debtors own equity interests in the Projects, and therefore completion of the Projects will further enhance the estates of the Debtors.

13.     Since the funding is being made directly by Bank, the funds do not constitute property of any of the Debtors' estates. However, to satisfy Bank that it is permissible to fund payments directly to the Subcontractors, the Debtors seek an order of the court authorizing the Stipulation which establishes a procedure for such payments to be made.

## A.     The Projects and General Contractor Agreements

14.     Development is a general contractor on the following projects, (collectively, the "Projects"): (1) Lakeshore Landing Phase I ("Phase I"); (2) Lakeshore Landing Phase II ("Phase II"); and (3) Fairfield Green at Norwalk ("Fairfield Green"). Phase I is owned and being developed by Fairfield Sanctuary L.P. ("Sanctuary"), Phase II is owned and being developed by Fairfield Lakeshore I L.P. ("Lakeshore"), and Fairfield Green is owned and being developed by Fairfield Norwalk Limited Partnership and Fairfield Norwalk II Limited Partnership ("Norwalk" and together with Sanctuary and Lakeshore, "Borrowers"). Bank has been financing all of the Projects.

15.     Development entered into construction contracts to act as general contractor for each of the Projects (the "General Contractor Agreements"). As the general contractor, Development has entered into contracts with building framers, roofers, window suppliers, plumbers, electricians, landscapers, appliance manufacturers or other similarly situated parties (collectively, the "Subcontractors") to provide services and/or materials for the Projects.

6

16.     Under the General Contractor Agreements, Development is entitled to receive "Contractor's Fees" and/or "Development Fees." The General Contractor Agreements also require Development to obtain releases of mechanic's and materialmen's lien rights from the Subcontractors. The Subcontractors will not provide lien releases, and the Bank will not fund the pending construction draws, unless the Subcontractors are paid.

17.     Thus, unless the Bank is permitted to pay the amounts owing to the Subcontractors (including the payment of all pre- and post-petition amounts due), and lien releases are obtained, Development will not receive its fees under the General Contractor Agreements.

## B.     Bank's Funding Procedures

18.     To facilitate the financing of the Projects, Bank has established or will establish fund control escrows (the "Fund Controls") with First American Title Company or other company(ies) providing fund control services (collectively, "Title Company"). Under the procedures established by the Fund Controls, funds are disbursed by Title Company directly to the Subcontractors on the Projects upon Title Company's receipt of releases of mechanic's and materialmen's lien rights. In addition, Development receives the earned portion of its fees under the General Contractor Agreements.

19.     Although funds disbursed by Bank are used to pay both pre- and post-petition amounts owing to the Subcontractors, absent payment of these amounts, the Subcontractors would not provide releases of their lien rights, and hence Development would not receive payment of its fees under the General Contractor Agreements. Furthermore, Development is not a party to the Fund Controls, and thus, the Subcontractors are paid by Bank, not Development. As a result, use of the Fund Controls will not diminish the Debtors' estates, but rather will be accretive (a) to Development's estate, by permitting it to receive its fees under the General

7

Contractor Agreements, and (b) to the other Debtors' estates, to the extent that any ownership interests they may have in Borrowers are enhanced by the development of the Projects.

## Basis for Relief Requested

**A.      No Property of the Estate is Implicated by Use of the Fund Controls; Payment Made in the Ordinary Course of Business**

20.      Under the Fund Controls, Bank, not Development, will fund payments to the Subcontractors. Since the funding is being made directly by Bank, the funds do not constitute property of any of the Debtors' estates. *See In re Modular Structures, Inc*, 27 F.3d 72 (3d Cir. 1994).

21.      In addition, prior to the Petition Date, payments were being made through the Fund Controls on Phases I and II and on many of the Debtors' other projects.[2] Thus, payment of the Subcontractors through the Fund Controls is in the ordinary course of business of the Debtors. *See* 11 U.S.C. 363(c); *See In re James A. Phillips, Inc*, 29 B.R. 391 (Bankr. S.D.N.Y. 1983) (payments to suppliers with potential lien rights may be within the ordinary course of business).

22.      Because Bank's property (not the Debtors' property) is being used to pay the pre- and post-petition amounts due to the Subcontractors, and because these payments have been and will continue to be made in the ordinary course of business, the proposed payments by the Bank to the Subcontractors are appropriate.

**B.      Payment is Permitted under the "Doctrine of Necessity"**

23.      Although the Debtors believe that payment by Bank of the Subcontractors through the Fund Controls does not involve property of the estate, Bank has informed the

---

2      The Debtors are in the process of establishing a Fund Control for Fairfield Green.

Debtors that it will not fund construction draws through the Fund Controls unless the Debtors seek approval from this Court of the Bank's use of the Fund Controls.

24.     The Debtors believe in the exercise of their business judgment that the use of the Fund Controls benefits their estates. Absent payment of the pre- and post-petition amounts owing to the Subcontractors, the Subcontractors will not provide necessary lien releases. In fact, several vendors have already placed, or threatened to place, liens on various Projects. Unless the Bank is permitted to pay the Subcontractors and lien releases are obtained, Bank will not fund, and Development will not receive the fees due to it under the General Contractor Agreements. If this occurs, the Debtors face the prospect of being forced to discontinue development of the Projects because the Bank will not fund until all liens are released. In addition, because certain Debtors own equity interests in the Projects the estates are further benefited by the payments to the Subcontractors.

25.     Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code under equitable common law principles.

26.     The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the

9

ordinary course of business. Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

27. The Debtors seek approval of the Stipulation so that Bank will utilize the Fund Controls to pay the Subcontractors for work performed or materials supplied to the Projects. Unless the Subcontractors are paid and lien releases obtained, Bank will not fund the Projects. As such, in order for Development to collect the amounts to which it is entitled, it is essential that Bank be authorized to continue to pay the Subcontractors for services and materials provided and to be provided for the Projects. Moreover, because certain Debtors have equity interests in the Projects, the ultimate completion of the Projects will benefit those Debtors' estates. As such, payment of the pre- and post-petition amounts owing to the Subcontractors is necessary to enable payment of fees to Development and completion of the Projects, both of which will protect and preserve the value of the Debtors' estates.

### Notice

28. Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to the Committee, (c) Bank, (d) Borrowers and (e) any parties requesting notice in these cases pursuant to Bankruptcy Rule 2002. In light of the relief requested, the Debtors respectfully submit that no further notice of this Motion is required.

### Conclusion

For the reasons set forth above, the Court should approve the Stipulation so that Bank will use the Fund Controls to fund the Projects, including the payment of pre- and post-petition obligations of the Subcontractors with respect to the Projects. Such payment will permit Development to collect significant fees, enable certain of the Debtors to benefit from the

10

increased value of the Projects, and contribute to the success of the Debtors' ongoing business operations and ultimate reorganization.

WHEREFORE the Debtors respectfully request that the Court enter its order, substantially in the form attached hereto as Exhibit B, approving the Stipulation.

Dated: January 22, 2010
Wilmington, Delaware

Respectfully submitted,

Daniel J. DeFranceschi (DE 2732)
Paul N. Heath (DE 3704)
Travis A. McRoberts (DE 5274)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: defranceschi@rlf.com
        heath@rlf.com
        mcroberts@rlf.com

-and-

Richard A. Chesley (IL 6240877)
Kimberly D. Newmarch (DE 4340)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
191 North Wacker Drive, 30th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email:   richardchesley@paulhastings.com
         kimberlynewmarch@paulhastings.com

ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION

11

# EXHIBIT A

**Stipulation**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------- x
                                                       :
In re                                                  :   Chapter 11
                                                       :
Fairfield Residential LLC, et al.,[1]                  :   Case No. 09-14378 (BLS)
                                                       :
        Debtors.                                       :   (Jointly Administered)
                                                       :
----------------------------------------------------- x
```

## STIPULATION WITH U.S. BANK NATIONAL ASSOCIATION REGARDING
## PROCEDURES FOR DIRECT PAYMENT OF SUBCONTRACTORS

**WHEREAS,** FF Development L.P., a Delaware limited partnership dba Fairfield

Development L.P. ("<u>Development</u>"), one of the debtors in the above-captioned jointly

administered bankruptcy case (collectively, the "<u>Debtors</u>") is a general contractor on the

following projects, (collectively, the "<u>Projects</u>"): (1) Lakeshore Landing Phase I ("<u>Phase I</u>"); (2)

Lakeshore Landing Phase II ("<u>Phase II</u>"); and (3) Fairfield Green at Norwalk ("<u>Fairfield</u>

<u>Green</u>");

**WHEREAS,** Phase I is owned and being developed by Fairfield Sanctuary L.P.

("<u>Sanctuary</u>"), Phase II is owned and being developed by Fairfield Lakeshore I L.P.

("<u>Lakeshore</u>"), and Fairfield Green is owned and being developed by Fairfield Norwalk Limited

---

[1]     The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Fairfield Residential LLC, a Delaware limited liability company (8277), Fairview Homes, Inc., a Delaware corporation (9930), FF Development L.P., a Delaware limited partnership (2310), FF Properties L.P., a Delaware limited partnership (5355), Fairview Residential LLC, a Delaware limited liability company (5416), FF Realty LLC, a Delaware limited liability company (5941), Fairfield Financial A LLC, a Delaware limited liability company (7014), FF Investments LLC, a Delaware limited liability company (7066), Fairview Investments LLC, a Delaware limited liability company (9605), Fairfield Affordable Housing LLC, a Delaware limited liability company (7111), FF Development, Inc., a Delaware corporation (2308), FF Properties, Inc., a Delaware corporation (5354), Fairview Residential L.P., a Delaware limited partnership (9788), Fairview Residential WA LLC, a Delaware limited liability company (9703) and Fairview Residential CA L.P., a Delaware limited partnership (9972). The mailing address of each of the Debtors is 5510 Morehouse Drive, Suite 200, San Diego, California 92121.

Partnership and Fairfield Norwalk II Limited Partnership ("Norwalk" and together with Sanctuary and Lakeshore, "Borrowers"); and U.S. Bank National Association and any other Lenders under the loan documents with the Borrowers (collectively, "Bank") have been financing all of the Projects;

**WHEREAS,** Development entered into construction contracts to act as general contractor for each of the Projects (the "General Contractor Agreements");

**WHEREAS,** as the general contractor, Development has entered into contracts with building framers, roofers, window suppliers, plumbers, electricians, landscapers, appliance manufacturers or other similarly situated parties (collectively, the "Subcontractors") to provide services and/or materials for the Projects;

**WHEREAS,** under the General Contractor Agreements, Development is entitled to receive "Contractor's Fees" and/or "Development Fees" and is required to obtain releases of mechanic's and materialmen's lien rights from the Subcontractors;

**WHEREAS,** the Subcontractors will not provide lien releases if they are not paid, and Bank will not fund the pending construction draw requests unless the Subcontractors are paid;

**WHEREAS,** as a result, unless Bank is permitted to pay the amounts owing to the Subcontractors (including the payment of all pre- and post-petition amounts due) and lien releases are obtained, Development will not receive its fees under the General Contractor Agreements;

**WHEREAS,** to facilitate the financing of the Projects, Bank has established or will establish fund control escrows (the "Fund Controls") with First American Title Company or one or more other company(ies) providing fund control services (collectively, "Title Company");

2

**WHEREAS,** under the procedures established by the Fund Controls, funds are disbursed by Title Company directly to the Subcontractors on the Projects upon Title Company's receipt of releases of mechanic's and materialmen's lien rights, and Development receives the earned portion of its fees under the General Contractor Agreements;

**WHEREAS,** under the Fund Controls, the Subcontractors are paid by Bank, not Development.

**NOW THEREFORE**, Development and Bank hereby stipulate, consent, and agree as follows:

1.      Bank may use and continue to use the Fund Controls to pay the Subcontractors directly (whether for pre- or post-petition amounts owed) for work performed and materials supplied in connection with the Projects; and

2.      All disbursements by Bank to the Subcontractors through the Fund Controls shall be applied against amounts otherwise payable under the General Contractor Agreements.

LEGAL_US_E # 86575846 2
RLF1 3530439v 1

Dated: _____, 2010
        Wilmington, Delaware

Respectfully submitted,

_____

Michael R. Lastowski (DE 3892)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail: mlastowski@duanemorris.com

-and-

David J. McCarty (CA Bar No. 77346)
Sheppard, Mullin, Richter & Hampton, LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Tel: 213-620-1780
Fax: 213-620-1398
E-mail: dmccarty@sheppardmullin.com

COUNSEL TO U.S. BANK NATIONAL
ASSOCIATION

4

**No Objection:**

Adam G. Landis (DE 3407)
William E. Chipman, Jr. (DE 3818)
Landis Rath & Cobb
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrc.com
           chipman@lrc.com

-and-

Brett H. Miller
Melissa A. Hager
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email: bmiller@mofo.com
           mhager@mofo.com

COUNSEL TO THE COMMITTEE

Daniel J. DeFranceschi (DE 2732)
Paul N. Heath (DE 3704)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: defranceschi@rlf.com
           heath@rlf.com

-and-

Richard A. Chesley (IL 6240877)
Kimberly D. Newmarch (DE 4340)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
191 North Wacker Drive, 30th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email:  richardchesley@paulhastings.com
           kimberlynewmarch@paulhastings.com

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

LEGAL_US_E # 86575846 2
RLF1 3530439v 1

# EXHIBIT B

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------------- x
                                                                   :
In re                                                              :   Chapter 11
                                                                   :
Fairfield Residential LLC, et al.,[1]                              :   Case No. 09-14378 (BLS)
                                                                   :
          Debtors.                                                 :   (Jointly Administered)
                                                                   :
----------------------------------------------------------------- x   Re: Docket No.____
```

## ORDER GRANTING MOTION FOR APPROVAL OF STIPULATION WITH U.S. BANK NATIONAL ASSOCIATION REGARDING PROCEDURES FOR DIRECT PAYMENT OF SUBCONTRACTORS

This matter coming before the Court on the Motion for Approval of Stipulation with U.S.

Bank National Association Regarding Procedures for Direct Payment of Subcontractors

(the "Motion"),[2] filed by the above-captioned debtors and debtors in possession (collectively,

the "Debtors"); the Court having reviewed the Motion and having scheduled a hearing before the

Court (the "Hearing"); the Court having found that (i) the Court has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C.

§§ 1408 and 1409, (iii) notice of the Motion and the Hearing was sufficient under the

---

[1]      The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Fairfield Residential LLC, a Delaware limited liability company (8277), Fairview Homes, Inc., a Delaware corporation (9930), FF Development L.P., a Delaware limited partnership (2310), FF Properties L.P., a Delaware limited partnership (5355), Fairview Residential LLC, a Delaware limited liability company (5416), FF Realty LLC, a Delaware limited liability company (5941), Fairfield Financial A LLC, a Delaware limited liability company (7014), FF Investments LLC, a Delaware limited liability company (7066), Fairview Investments LLC, a Delaware limited liability company (9605), Fairfield Affordable Housing LLC, a Delaware limited liability company (7111), FF Development, Inc., a Delaware corporation (2308), FF Properties, Inc., a Delaware corporation (5354), Fairview Residential L.P., a Delaware limited partnership (9788), Fairview Residential WA LLC, a Delaware limited liability company (9703) and Fairview Residential CA L.P., a Delaware limited partnership (9972). The mailing address of each of the Debtors is 5510 Morehouse Drive, Suite 200, San Diego, California 92121.

[2]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

circumstances and (iv) and good and sufficient cause having been shown; and after due deliberation and sufficient cause appearing therefore,

IT IS HEREBY ORDERED that:

1. The Motion is GRANTED;

2. The Stipulation attached as Exhibit A to the Motion is hereby approved;

3. The parties are authorized and directed to take all actions necessary to effectuate the terms of the Stipulation;

4. U.S. Bank National Association and any other Lenders under the loan documents with the Borrowers (as defined in the Motion) (collectively, "Bank") may use and continue to use the Fund Controls (as defined in the Motion) to pay the Subcontractors (as defined in the Motion) directly (whether for pre- or post-petition amounts owed) for work performed and materials supplied in connection with the Projects (as defined in the Motion);

5. All disbursements by Bank to the Subcontractors through the Fund Controls shall be applied against amounts otherwise payable under the General Contractor Agreements (as defined in the Motion); and

6. This Court shall retain jurisdiction to resolve any disputes arising from the Stipulation or this Order.


Dated: _____, 2010
      Wilmington, Delaware

                    _____
                    THE HONORABLE BRENDAN L. SHANNON
                    UNITED STATES BANKRUPTCY JUDGE

LEGAL_US_E # 86575846 2
RLF1 3530439v 1