UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:

FAIRFIELD RESIDENTIAL LLC, ET AL.,

Debtors.

(includes:

**JOINTLY ADMINISTERED CASE NO. 09-14378**

| | |
|---|---|
| FF Development, Inc.; | **09-14385** |
| FF Development L.P.; | **09-14386** |
| FF Properties, Inc.; | **09-14381** |
| FF Properties L.P.; | **09-14382** |
| Fairview Residential LLC; | **09-14379** |
| FF Realty LLC; | **09-14392** |
| Fairfield Financial A LLC; | **09-14389** |
| FF Investments LLC; | **09-14383** |
| Fairview Investments LLC; | **09-14387** |
| Fairfield Affordable Housing LLC; | **09-14380** |
| Fairview Homes, Inc.; | **09-14388** |
| Fairview Residential L.P.; | **09-14384** |
| Fairview Residential WA LLC; | **09-14391** |
| Fairview Residential CA L.P.) | **09-14390** |

Chapter 11 Cases
Judge Brendan Linehan Shannon

**THE DEBTORS' ~~SECOND~~THIRD AMENDED JOINT PLAN OF REORGANIZATION UNDER
CHAPTER 11 OF THE BANKRUPTCY CODE**

**RICHARDS, LAYTON & FINGER, P.A**.

Daniel J. DeFranceschi (DE 2732)
Paul N. Heath (DE 3704)
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

**PAUL, HASTINGS, JANOFSKY
 & WALKER LLP**

Richard A. Chesley (Ill. Bar No. 6240877)
Kimberly D. Newmarch (DE 4340)
191 North Wacker Drive, 30th Floor
Chicago, Illinois  60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100

Counsel for the Debtors and Debtors in Possession

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................ 1

ARTICLE I.        DEFINITIONS.................................................................................... 1

    A.    Defined Terms ....................................................................................... 1

    B.    Other Terms ......................................................................................... 15

    C.    Exhibits ............................................................................................... 15

ARTICLE II.        CLASSIFICATION AND TREATMENT OF CLAIMS ................. 15

    A.    Summary ............................................................................................. 15

    B.    Classification....................................................................................... ~~15~~16

    C.    Unclassified Claims: Administrative Claims and Priority Tax Claims .............. 17

    D.    Classes of Claims and Interests: Classification, Treatment and Voting Rights ................................................................................................... 19

ARTICLE III.        ACCEPTANCE OR REJECTION OF THIS PLAN ................................. ~~25~~26

    A.    Impaired Classes of Claims Entitled to Vote ................................................. ~~25~~26

    B.    Classes Deemed to Accept this Plan .............................................................. ~~25~~26

    C.    Classes Deemed to Reject this Plan ................................................................ ~~25~~26

    D.    Nonconsensual Confirmation.......................................................................... ~~25~~26

ARTICLE IV.        MEANS FOR IMPLEMENTATION OF THE PLAN............................ ~~25~~26

    A.    Implementation of Plan.................................................................................. ~~25~~26

    B.    Formation of the ~~Fairfield~~FFR Trust ........................................................... ~~26~~27

    C.    Formation of Newco ...................................................................................... ~~27~~28

    D.    Governance of Newco.................................................................................... ~~27~~28

    E.    Terms of New Money Investment and Management Investment................... ~~28~~29

    F.    ~~Alternative Transaction~~......................................................................... ~~28~~G. Other Issues

    ~~H~~G.    Causes of Action ............................................................................................ 29

    ~~I~~H.    Appointment and Term of the Liquidating Trustee ....................................... 30

    ~~J~~I.    Duties of the Liquidating Trustee .................................................................. 31

    ~~K.~~ J. No Recourse to ~~Liquidation~~Liquidating Trustee ..................................... 34

    ~~L.~~ K. Transfer Free and Clear of Taxes ....................................................... 34

    ~~M~~L.    Liability, Indemnification .............................................................................. 34

    ~~N~~M.    ~~Administrator,~~ Asset Management Agreement and Expense and Receivable Allocation Agreement ................................................................ 35

# TABLE OF CONTENTS
### (continued)

**Page**

~~O~~N. Co-Investment Rights and Obligations ................................................................ 36

~~P~~O. Discharge of Debtors' Professionals ...................................................................... 36

P. Dissolution of the Committee ............................................................................... 36

Q. ~~Dissolution of the Committee~~ ................................................................ 37R. Trust Oversigh

~~S.~~ R. Funding of the Plan ........................................................................................... ~~38~~37

~~T.~~ S. Wind-down Reserve Account ............................................................................. 38

~~U.~~ T. Distributable Cash ............................................................................................. ~~39~~38

~~V.~~ U. Employee Programs .......................................................................................... ~~39~~38

~~W.~~ V. Corporate and Limited Liability Company Action ............................................ 39

W. Dissolution of the FFR Trust ............................................................................... 39

X. ~~Dissolution of the Fairfield Trust~~ ...................................................... 39Y. Saturday, Sund

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................................................................................... ~~40~~39

    A. Rejection of Remaining Executory Contracts and Unexpired Leases ............. ~~40~~39

    B. Assumption and Cure of Executory Contracts .................................................. ~~40~~39

    C. Cure of Defaults of Assumed Executory Contracts .......................................... ~~41~~40

    D. Effect of Assumption Assignment ..................................................................... 41

    E. Rejection Damages Bar Date ............................................................................ ~~42~~41

    F. Insurance Policies ............................................................................................. ~~42~~41

ARTICLE VI. DISTRIBUTIONS ..................................................................................... ~~43~~42

    A. General Provisions Concerning Distributions .................................................. ~~43~~42

    B. Disbursing Agent .............................................................................................. 43

    C. Time and Manner of Distributions .................................................................... ~~44~~43

    D. Delivery of Distributions .................................................................................. 44

    E. Undeliverable Distributions .............................................................................. ~~45~~44

    F. Claims Administration Responsibility ............................................................. ~~45~~44

    G. Procedures for Treating and Resolving Disputed and Contingent Claims ...... ~~46~~45

    H. Setoffs and Recoupment ................................................................................... 46

    I. Allowance and Disallowance of Claims Subject to Section 502 of the Bankruptcy Code ............................................................................................. ~~47~~46

    J. Cancellation of Instruments and Agreements ................................................... ~~47~~46

| | | | |
|---|---|---|---|
| K. | No Interest on Claims | | ~~47~~46 |
| L. | Withholding Taxes | | 47 |
| M. | Reports | | ~~48~~47 |
| ARTICLE VII. | EFFECT OF CONFIRMATION | | ~~48~~47 |
| A. | Vesting of Assets | | ~~48~~47 |
| B. | Binding Effect | | 48 |
| C. | Discharge of Claims and Termination of Interests | | 48 |
| D. | Injunction | | ~~49~~48 |
| E. | Term of Injunctions or Stays | | 49 |
| F. | Exculpation and Releases | | 49 |
| G. | Reservation of Causes of Action/Reservation of Rights | | 50 |
| H. | Avoidance Actions/Objections | | 50 |
| ARTICLE VIII. | CONDITIONS PRECEDENT | | ~~51~~50 |
| A. | Conditions Precedent to Effective Date | | ~~51~~50 |
| B. | Revocation, Withdrawal or Non-Consummation of Plan | | 51 |
| ARTICLE IX. | ADMINISTRATIVE PROVISIONS | | ~~52~~51 |
| A. | Retention of Jurisdiction by the Bankruptcy Court | | ~~52~~51 |
| B. | Payment of Statutory Fees | | 53 |
| C. | Headings | | ~~54~~53 |
| D. | Binding Effect of Plan | | ~~54~~53 |
| E. | Final Order | | ~~54~~53 |
| F. | Withholding and Reporting Requirements | | 54 |
| G. | Tax Exemption and Expedited Tax Determination | | 54 |
| H. | Governing Law | | ~~55~~54 |
| I. | Continuing Corporate Existence and Corporate Action | | 55 |
| J. | Plan Supplement | | ~~56~~55 |
| K. | Severability | | ~~56~~55 |
| L. | Revocation | | 56 |
| M. | Substantial Consummation | | 56 |
| N. | Construction | | 56 |

# TABLE OF CONTENTS
(continued)

**Page**

O.  Conflict ........................................................................................................ 56

P.  Amendments and Modifications .................................................................... ~~57~~56

Q.  Notices .......................................................................................................... 57

R.  Filing of Additional Documents ................................................................... 58

S.  Direction to a Party ....................................................................................... 58

T.  Successors and Assigns.................................................................................. 58

U.  Waiver of ~~Subordination~~Subrogation ...................................................... 58

# INTRODUCTION

Debtors Fairfield Residential LLC, FF Development, Inc., FF Development L.P., FF Properties, Inc., FF Properties L.P., Fairview Residential LLC, FF Realty LLC, Fairfield Financial A LLC, FF Investments LLC, Fairview Investments LLC, Fairfield Affordable Housing LLC, Fairview Homes, Inc., Fairview Residential L.P., Fairview Residential WA LLC, and Fairview Residential CA L.P. propose this ~~Second~~Third Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code. The Plan effects a substantive reorganization of certain of the Debtors and a liquidation of the remaining Debtors as more fully set forth in this Plan. The estates of the First Tier Subsidiaries and the estate of Fairfield shall be substantively consolidated, but the estates of the Second Tier Subsidiaries shall not be substantively consolidated.

## ARTICLE I.

## DEFINITIONS

**A.     Defined Terms**

Unless otherwise provided in this Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code or the Bankruptcy Rules. For the purposes of this Plan, the following terms (which appear in this Plan in capitalized form) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context otherwise requires.

1.     **"ACH"** shall mean an automated clearing house transaction through a domestic bank.

2.     **"Administrative Budget"** shall mean (i) the initial budget for the period from the Effective Date to December 31, 2010, setting forth in reasonable detail the anticipated Post-Confirmation Expenses of the ~~Fairfield~~FFR Trust, as prepared by the Liquidating Trustee and approved by the Trust Oversight Committee pursuant to Article IV.O of this Plan; and (ii) any budget for a subsequent six-month period, setting forth in reasonable detail the anticipated Post-Confirmation Expenses of the ~~Fairfield~~FFR Trust, together with any amendments or modifications thereto, as prepared by the Liquidating Trustee and approved by the Trust Oversight Committee pursuant to Article IV.O of this Plan.

3.     **"Administrative Claim"** shall mean any Claim for costs and expenses of administration of these Chapter 11 Cases incurred during the period up to and including the Effective Date with priority under Bankruptcy Code section 507(a)(2), including, without limitation, costs and expenses allowed under Bankruptcy Code section 503(b), the actual and necessary costs and expenses of preserving the Estates of the Debtors, any Claim arising under Bankruptcy Code section 503(b)(9) with respect to which an Administrative Expense Request was filed on or prior to the Bar Date established for Claims or the Administrative Expense Request Deadline, as applicable, any claim relating to the right of reclamation to the extent afforded such priority under the Bankruptcy Code, any Professional Fee Claims, and any fees or charges assessed against the Estates of the Debtors under 28 U.S.C. § 1930.

4.    **"Administrative Expense Request"** shall mean a request or motion for allowance and/or payment of an Administrative Claim.

5.    **"Administrative Expense Request Deadline"** shall mean the date set by the Confirmation Order as the deadline for filing Administrative Expense Requests for Administrative Claims (excluding Professional Fee Claims) that are not subject to the Bar Date Order, which deadline shall be thirty (30) days after the Effective Date unless otherwise ordered by the Bankruptcy Court.

~~6.    **"Administration Agreement"** shall mean the Administration Agreement between the Administrator, the Fairfield Trust and Newco included in the Plan Supplement as Exhibit A.~~

~~7.    **"Administrator"** shall have the meaning set forth in the Plan Supplement.~~

6.    ~~8.~~ **"Affiliate"** has the meaning set forth at section 101(2) of the Bankruptcy Code.

7.    ~~9.~~ **"Allowed Claim"** or **"Allowed Interest"** shall mean, respectively, a Claim or Interest that: (a) has been allowed by a Final Order of the Bankruptcy Court; (b) has been Scheduled, other than a Claim that is scheduled as disputed, contingent or unliquidated; (c) is the subject of a timely Proof of Claim that has been filed as of the relevant Bar Date and no objection thereto, or motion or proceeding to subordinate, disallow or otherwise limit recovery, has been filed and (i) the deadline to file an objection or motion or proceeding to subordinate, disallow or otherwise limit recovery has expired or (ii) the Liquidating Trustee has reviewed the Claim and determined that the claim is valid and no objection to such claim will be filed; or (d) has been allowed in accordance with the Guaranty Claims Protocol. An Allowed Claim shall not include interest on the amount of any Claim except (i) with respect to an Allowed Claim filed pursuant to Bankruptcy Code section 506(b), (ii) as specifically provided in this Plan, (iii) as contemplated and allowed in accordance with the Guaranty Claims Protocol, or (iv) as provided by Final Order of the Bankruptcy Court. If the Debtors, the Committee, a Responsible Person, the Trust Oversight Committee or the Liquidating Trustee shall object to any Claim in accordance with section 502(d) of the Bankruptcy Code, such Claim shall not be an Allowed Claim until the avoidable transfer is returned, a Final Order has been entered that no avoidable transfer exists, or an agreement or settlement is reached that is approved by the Bankruptcy Court or pursuant to provisions in the Plan.

8.    ~~10.~~ **"Allowed [_____] Claim"** or **"Allowed [_____] Interest"** shall mean an Allowed Claim or Allowed Interest, as the case may be, of a specified Class or an Allowed Claim that is an Administrative Claim, Priority Tax Claim, Priority Claim, Capmark Claim, General Unsecured Claim, Convenience Class Claim or Interest Related Claim, as the case may be.

~~11.    **"Alternative Transaction"** means a transaction or series of related transactions involving an equity or debt investment or sale of all or substantially all of Fairfield's assets that is approved by the Bankruptcy Court as a higher or otherwise better alternative to the New Money Investment.~~

9.    ~~12.~~ "**Applicable Outstanding Loan Balance**" means the aggregate principal loan balance (at the project level without double counting) of loans outstanding with regard to all real estate assets in which the ~~Fairfield~~FFR Trust has any direct or indirect ownership or economic interest~~. The~~, excluding the loan balance of such loans (a) with regard to assets in which the ~~Fairfield~~FFR Trust no longer has any direct or indirect ownership or economic interest (as a result of a sale, other disposal of such assets or other termination of the ~~Fairfield~~FFR Trust's interest in such assets or entity, or from the appointment of a receiver or fiduciary that ceases to pay fees or disposes of the Project~~) shall be excluded; provided that such loans that have been amended, modified, refinanced or restructured shall be included to the extent they remain outstanding as long as the Fairfield Trust retains an ownership or economic interest in the underlying asset or entity. For purposes of~~ calculating the Applicable Outstanding ~~Loan Balance, the amended, modified, refinanced or restructured principal balance shall not exceed the original principal balance prior to such amendment, modification, refinance or restructure~~ Level Entity), (b) in excess of the balance (including committed amounts) as of the date of the Asset Management Agreement or such increased balance (including committed amounts) as the FFR Trust may approve in writing from time to time, (c) held by an Affiliate of Servicer (as such term is defined in the Asset Management Agreement), or (d)(x) where a Fairfield Trust Entity is no longer the general partner of the Project Level Entity, or no longer performs general partner services for the Project Level Entity or with respect to the assets and (y) the FFR Trust no longer has any direct or indirect interest in such Project Level Entity or assets. The Applicable Outstanding Loan Balance shall be recalculated for each calendar quarter (for purposes of determining all ~~servicing fees payable under~~Servicing Fees (as such term is defined in the Asset Management Agreement~~)~~ payable during such calendar quarter) as of the close of business on the last Business Day of the immediately preceding calendar quarter.  For purposes of clarification and illustration, the loans that would be included in calculating the Applicable Outstanding Loan Balance as of March 31, 2010 are included on Schedule H of the Asset Management Agreement.

10.    ~~13.~~ "**Asset Management Agreement**" shall mean that certain asset management agreement by and between the ~~Fairfield~~FFR Trust and Reorganized Fairfield included in the Plan Supplement as Exhibit B pursuant to which Reorganized Fairfield will provide management services to the ~~Fairfield~~FFR Trust in exchange for an asset management fee and Reorganized Fairfield will provide a royalty-free, paid up, non-exclusive, non-transferable license to the ~~Fairfield~~FFR Trust to use the Intellectual Property and unrestricted access to and copies of the books and records of Fairfield and the Retained Subsidiary Debtors as necessary to conduct the business of the ~~Fairfield~~FFR Trust, or investigate, assert and pursue the Causes of Action, including all Avoidance Actions, or defend against any Claims.

11.    ~~14.~~ "**Asset Purchase Agreement**" shall mean that certain asset purchase agreement by and among FF Properties, Inc. and Fairfield, on one hand, and Newco, on the other hand, included in the Plan Supplement as Exhibit C, pursuant to which FF Properties, Inc. and Fairfield sell the Reorganized Fairfield Assets to Newco.

12.    ~~15.~~ "**Assumed Contracts Schedule**" shall mean the list of Executory Contracts assumed by the ~~Fairfield~~FFR Trust, which list is included in the Plan Supplement as Exhibit D.

13. ~~16.~~ **"Assumed Liabilities"** shall mean the liabilities assumed by Newco under the Asset Purchase Agreement.

14. ~~17.~~ **"Assumption Objection Deadline"** shall mean the day that is seven (7) days after the Debtors file and serve the Newco Contracts Schedule or the Assumed Contracts Schedule, as applicable.

15. ~~18.~~ **"Avoidance Action(s)"** shall mean all claims and Causes of Action arising under chapter 5 of the Bankruptcy Code, including without limitation, any Avoidance Action related to the Tax Election Claim.

16. ~~19.~~ **"Bankruptcy Code"** shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, as in effect on the Petition Date or thereafter amended and applicable to the Chapter 11 Cases, as the case may be.

17. ~~20.~~ **"Bankruptcy Court"** shall mean the United States District Court for the District of Delaware with jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the District of Delaware, or any court having competent jurisdiction to enter the Confirmation Order.

18. ~~21.~~ **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure effective in accordance with the provisions of 28 U.S.C. § 2075, as in effect on the Petition Date or thereafter amended and applicable to the Chapter 11 Cases, as the case may be.

19. ~~22.~~ **"Bar Date"** shall mean March 15, 2010, and such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, excluding governmental units, asserting a Claim must have filed a Proof of Claim or be forever barred from asserting such Claim.

20. ~~23.~~ **"Bar Date Order"** shall mean that certain order of the Bankruptcy Court dated as of February 1, 2010, establishing March 15, 2010 as the Bar Date for filing Proofs of Claim, with only those exceptions permitted thereby.

21. **"Brookfield"** shall mean Brookfield Asset Management, Inc. or its designated affiliate; provided, however, that such affiliate must provide evidence reasonably acceptable to the Committee and the Capmark Lenders (or otherwise approved by the Bankruptcy Court) of adequate capitalization to fund the New Money Investment and satisfy its obligations under the New Money Definitive Documents.

22. ~~24.~~ **"Business Day"** shall mean a day other than Saturday, Sunday, a legal holiday as defined in Bankruptcy Rule 9006(a) or other day on which the Bankruptcy Court is authorized or required by law to close.

23. ~~25.~~ **"CalSTRS"** means the California State Teachers' Retirement System or its designated affiliate; provided, however, that such affiliate must provide evidence reasonably acceptable to the Committee and the Capmark Lenders (or otherwise approved by the Bankruptcy Court) of adequate capitalization to fund the New Money Investment and satisfy its obligations under the New Money Definitive Documents.

24. 26. **"Capmark Claims"** shall mean all Claims of any of the Capmark Lenders in such capacity against any of the Debtors and/or their Estates, which arise solely from the Capmark Facility and which shall be Allowed in the aggregate amount of $79,509,741, plus (a) reasonable third-party professional fees ~~of Dechert LLP, J. H. Cohn and Connolly Bove~~ and reasonable actual expenses of ~~Dechert LLP, J. H. Cohn and Connolly Bove~~the Capmark Professionals incurred through and including the Effective Date ~~that~~in an aggregate amount of up to $1.25 million, which shall be paid solely from the Capmark Retainer and (b) additional reasonable third-party professional fees and reasonable actual expenses of the Capmark Professionals incurred through and including the Effective Date in an aggregate amount not to exceed $500,000 (the **"Fee Cap"**), provided that such additional fees and expenses shall only be Allowed if Capmark Finance provides an accounting and Backup documentation of such third party fees and expenses to the Debtors and the Committee. In the event that the Effective Date occurs after August 1, 2010, Capmark Finance reserves the right to seek Bankruptcy Court approval of additional fees and expenses in excess of the Fee Cap.

25. 27. **"Capmark Facility"** shall mean that certain credit agreement dated December 27, 2005 by and among Fairfield, as borrower, the First Tier Subsidiaries, as guarantors, Capmark Finance as administrative agent, and the Capmark Lenders, as amended or supplemented from time to time**.** The obligations under the Capmark Facility are secured *inter alia* by a pledge of Fairfield's equity ownership of the First Tier Subsidiaries.

26. 28. **"Capmark Finance"** shall mean Capmark Finance Inc.

27. 29. **"Capmark Lenders"** shall mean Capmark Finance and the other lenders party to the Capmark Facility.

28. **"Capmark Professionals"** shall mean Dechert LLP, J.H. Cohn and Connolly Bove.

29. 30. **"Capmark Retainer"** shall mean the retainer in the amount of $~~1.3~~1.25 million held by Capmark Finance which was paid by the Debtors prior to the Petition Date.

30. 31. **"Cash"** shall mean cash and cash equivalents (including, but not limited to, bank deposits, security deposits paid by any Debtor that are maintained in a segregated or ear-marked account, security deposits paid to any Debtor that have been comingled, checks, similar items and securities or instruments of the type permitted under section 345 of the Bankruptcy Code) in certified or immediately available funds.

31. 32. **"Causes of Action"** shall mean, without limitation, all actions, proceedings, controversies, rights, suits, damages, claims, causes of action, rights of payment or recovery, third-party claims, counterclaims, crossclaims, judgments and demands (including but not limited to any Causes of Action described in the Disclosure Statement) of the Debtors and/or their Estates that accrued as of, are pending on the Effective Date or may be instituted after the Effective Date against any Person.

32. ~~33.~~ **"Chapter 11 Cases"** shall mean the above-captioned chapter 11 cases of the Debtors pending in the Bankruptcy Court and jointly administered under Case No. 09-14378 (BLS).

33. ~~34.~~ **"Claims"** shall mean any claim(s) against the Debtors or any of them as such term is defined in section 101(5) of the Bankruptcy Code.

34. ~~35.~~ **"Class"** shall mean each category of Holders of Claims or Interests specified in Article II.B of this Plan.

35. ~~36.~~ **"Closing Payment"** shall mean ~~(i)~~ the $~~10~~19.25 million cash payment that Newco shall make to FF Properties, Inc. and Fairfield pursuant to the Asset Purchase Agreement as consideration for the Reorganized Fairfield Assets, which funds shall become Distributable Cash ~~and (ii) the $1 million Cash payment that Newco shall make to the Fairfield Trust that shall be used exclusively to pay the Professional Fee Claims of MJC and Imperial Capital~~.

36. ~~37.~~ **"Committee"** shall mean the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Cases, as its composition may change from time to time.

37. ~~38.~~ **"Confirmation Date"** shall mean the date on which the Confirmation Order is entered on the docket in the Chapter 11 Cases by the Bankruptcy Court.

38. ~~39.~~ **"Confirmation Hearing"** shall mean the hearing at which the Bankruptcy Court considers confirmation of this Plan.

39. ~~40.~~ **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming this Plan and approving the transactions contemplated herein, pursuant to section 1129 of the Bankruptcy Code.

40. ~~41.~~ **"Convenience Class Claims"** are General Unsecured Claims of a single holder of a type that (A) would otherwise be included in Class 2.A or 2.B that are either (i) $1,000 or less in the aggregate or (ii) greater than $1,000 in the aggregate, but as to which the holder thereof has made a Convenience Class Election or (B) would otherwise be included in Class 2.C, 2.D, 2.E or 2.F that are either (i) $100 or less in the aggregate or (ii) greater than $100 in the aggregate, but as to which the holder thereof has made a Convenience Class Election.

41. ~~42.~~ **"Convenience Class Election"** shall mean the election on the ballot for voting to accept this Plan by a single holder of General Unsecured Claims that are greater than $1,000 in the aggregate (for Claims in Classes 2.A or 2.B) or $100 in the aggregate (for Claims in Classes 2.C, 2.D, 2.E or 2.F) to have such General Unsecured Claims treated as a Convenience Class Claim.

42. ~~43.~~ **"Creditor"** shall have the meaning set forth in section 101(10) of the Bankruptcy Code.

43. ~~44.~~ **"Debtors"** shall mean, collectively, Fairfield Residential LLC, FF Development, Inc., FF Development L.P., FF Properties, Inc., FF Properties L.P., Fairview Residential LLC, FF Realty LLC, Fairfield Financial A LLC, FF Investments LLC, Fairview Investments LLC, Fairfield Affordable Housing LLC, Fairview Homes, Inc., Fairview Residential L.P., Fairview Residential WA LLC, and Fairview Residential CA L.P.

44. ~~45.~~ **"Development Fees"** shall mean those fees earned by FF Development L.P. pursuant to contracts as the developer ~~of~~for the ~~Projects~~Project Level Entities.

45. ~~46.~~ **"Disallowed Claim"** shall mean a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is Scheduled as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or Administrative Expense Request has been timely filed or deemed timely filed with the Bankruptcy Court, (c) is not Scheduled and as to which no Proof of Claim or Administrative Expense Request has been timely filed or deemed timely filed with the Bankruptcy Court, (d) has been withdrawn by agreement of the Holder thereof and the Debtors or the ~~Fairfield~~FFR Trust, or (e) has been withdrawn by the Holder thereof.

46. ~~47.~~ **"Disbursing Agent"** shall mean the Liquidating Trustee, unless another Person is designated to be the Disbursing Agent by the Trust Oversight Committee.

47. ~~48.~~ **"Disclosure Statement"** shall mean the First Amended Disclosure Statement dated March 9, 2010, and all exhibits thereto, filed in connection with the Plan pursuant to section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court.

48. ~~49.~~ **"Disputed Claim"** shall mean a Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim, including, without limitation, all Claims that (i) have not been Scheduled by the Debtors or have been Scheduled as unknown, contingent, unliquidated, disputed or at zero, and no Proof of Claim has been filed with respect to such Claim, or (ii) are the subject of an objection, Cause of Action or other challenge filed with the Bankruptcy Court, which has not been withdrawn or overruled by a Final Order of the Bankruptcy Court; provided, however, that a Claim shall not be a Disputed Claim to the extent it becomes an Allowed Claim or a Disallowed Claim.

49. ~~50.~~ **"Distributable Cash"** shall mean the amount of available Cash in the ~~Fairfield~~FFR Trust (y) with respect to the Effective Date ~~Distribution~~Distributions that ~~exceeds~~exceed as of the Effective Date the Minimum Cash Balance after (i) payment of the Allowed Administrative Claims, Allowed Priority Claims, Allowed Convenience Class Claims and Allowed Priority Tax Claims, (ii) retention of amounts determined by the Liquidating Trustee after consultation with the Trust Oversight Committee needed to (a) reserve for Disputed Claims, and (b) pay or reserve for the Administrative Budget for the initial period of the Effective Date through December 31, 2010, and ~~(iii) payment of Distributions to Holders of Allowed Claims in accordance with this Plan including, without limitation, Effective Date Distributions and (~~z) with respect to Subsequent Distributions that exceed as of January 1, 2011 and from time to time thereafter the Minimum Cash Balance after (i~~) payment of the Allowed Administrative Claims, Allowed Priority Claims, Allowed Convenience Class Claims and Allowed Priority Tax Claims, (ii~~) retention of amounts determined by the Liquidating Trustee

after consultation with the Trust Oversight Committee needed to (a) reserve for Disputed Claims, and (b) pay or reserve for the Administrative Budget for the then current period, and (iiiii) payment of prior Distributions to Holders of Allowed Claims in accordance with this Plan including, without limitation, Effective Date Distributions.

50.    51. **"Distribution"** shall mean the distribution, in accordance with this Plan, of Cash or other property, as the case may be, or the Cash or other property as distributed.

51.    52. **"Distribution Fund"** shall mean the fund which shall be established on the Effective Date by the Liquidation Trustee to pay (in the event any payments are to be made to holders of such Claims) Class 1.A, 1.B, 1.C, 1.D, and 1.E Priority Claims, Class 2.A Capmark Claims, Class 2.B, 2.C, 2.D, 2.E and 2.F General Unsecured Claims and Class 4.A, 4.B, 4.C, 4.D and 4.E Convenience Class Claims.  After the Effective Date, Distributable Cash shall be held in the Distribution Fund.

52.    53. **"Effective Date"** shall mean the earlier of (i) the first Business Day after the Confirmation Order has become a Final Order or (ii) the date that the Debtors, after obtaining the consent of the Committee, Capmark Finance and Brookfield, file a notice with the Bankruptcy Court indicating that all conditions precedent to the Plan becoming effective have been satisfied or waived and that such date shall be the Effective Date.

53.    54. **"Effective Date Distribution"** shall mean the Distribution of Distributable Cash by the FairfieldFFR Trust to Holders of Class 2.A Capmark Claims and Class 2.B General Unsecured Claims on the Effective Date.

54.    55. **"Estates"** shall mean the estates of the Debtors created by section 541 of the Bankruptcy Code.

55.    56. **"Executory Contract"** shall mean any executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, between any Debtor and any other Person.

56.    57. **"Expense and Receivable Allocation Agreement"** shall mean the Expense and Receivable Allocation Agreement dated as of the Effective Date between the FairfieldFFR Trust and Newco attached to the Plan Supplement as Exhibit E whereby those parties agree to true-up expenses paid (including without limitation expenses relating to taxes, payroll, prepaid accounts (excluding prepaid accounts of FF Properties) and Post-Confirmation Expenses for the Reorganized Fairfield Assets paid by the FairfieldFFR Trust or Newco) and receivables collected during a 90360-day period beginning on the Effective Date.

57.    58. **"FF Properties"** shall mean FF Properties L.P.

58.    59. **"Face Amount"** shall mean (i) when used in reference to a Disputed or Disallowed Claim, the full stated liquidated amount, not including interest, claimed by the Holder of such Claim in any Proof of Claim timely filed with the Claims Agent or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (ii) when used in reference to an Allowed Claim, the allowed amount of such Claim.

59. 60. **"Fairfield"** shall mean Fairfield Residential LLC.

60. 61. **"~~Fairfield~~FFR Trust"** shall mean a Delaware statutory trust described more fully in Article IV.B of the Plan.

61. 62. **"Fairview CA"** shall mean Fairview Residential CA L.P.

62. 63. **"Fairview L.P."** shall mean Fairview Residential L.P.

63. 64. **"Fairview WA"** shall mean Fairview Residential WA LLC.

64. 65. **"Final Decree"** shall mean the decree contemplated under Bankruptcy Rule 3022.

65. 66. **"Final Order"** shall mean an order or judgment of the Bankruptcy Court as entered on the docket of the Chapter 11 Cases that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or to seek reargument, reconsideration, amended findings or conclusions, or rehearing has run or as to which any right to appeal, reargue, petition for certiorari or to seek rehearing, reconsideration, amended findings or conclusions, has been waived in writing or, if an appeal, petition for certiorari, request for reargument, reconsideration, amended findings or conclusions, or rehearing thereof has been pursued or granted then such an appeal, reargument, reconsideration, request for amended findings or conclusions, petition for certiorari or rehearing has been denied, and the time to take any further appeal or to seek certiorari or further reargument, reconsideration, amended findings or conclusions, or rehearing has expired. Notwithstanding, and in lieu of the foregoing, insofar as the Confirmation Order confirming this Plan is concerned, Final Order means such order or judgment with respect to which no stay is in effect.

66. 67. **"First Tier Subsidiaries"** shall mean the following Fairfield first-tier subsidiaries: FF Development, Inc., FF Development L.P., FF Properties, Inc., FF Properties L.P., Fairview Residential LLC, FF Realty LLC, Fairfield Financial A LLC, FF Investments LLC, Fairview Investments LLC, and Fairfield Affordable Housing LLC.

67. 68. **"First Tier Subsidiary Claims"** means the Allowed General Unsecured Claims of all Creditors of the First Tier Subsidiaries other than the Capmark Lenders or Wachovia, except for Holders who receive or elect to receive treatment under the Plan as a Convenience Class Claim.

68. 69. **"General Contractor Fees"** shall mean those fees earned by FF Development L.P. pursuant to contracts to perform general contractor services for the ~~Projects~~Project Level Entities.

69. 70. **"General Unsecured Claim"** shall mean any Claim that is not an Administrative Claim, Priority Claim, Priority Tax Claim, Capmark Claim, Wachovia Claim, Convenience Class Claim, Intercompany Claim or Interest Related Claim, including without limitation Fairfield/First Tier Subsidiary Claims.

70. ~~71.~~ **"Governmental Bar Date"** shall mean June 11, 2010 at 5:00 p.m. prevailing Eastern ~~time~~Time.

71. ~~72.~~ **"Guaranty Claims"** are Claims (excluding the Capmark Claims) based upon guaranty or surety obligations undertaken with respect to ~~Projects~~Project Level Entities, including without limitation loan payment guaranties, nonrecourse carve out guaranties, and construction completion guaranties.

72. ~~73.~~ **"Guaranty Claims Protocol"** shall mean the procedures established for the liquidation of the Claims of Creditors holding Guaranty Claims against the Debtors as set forth in the Plan Supplement as Exhibit F.

73. ~~74.~~ **"Holder"** shall mean the owner or holder of any Claim, Membership Interest or Interest.

74. ~~75.~~ **"Homes"** shall mean Fairview Homes, Inc.

75. ~~76.~~ **"Impaired"** shall have the meaning set forth in section 1124 of the Bankruptcy Code.

76. ~~77.~~ **"Imperial Capital"** shall mean Imperial Capital, LLC.

77. ~~78.~~ **"Intellectual Property"** shall mean collectively, patents, copyrights, trademarks, service marks, tradenames, trademark registrations, service mark registrations, licenses and know-how and the right to use the Fairfield name.

78. ~~79.~~ **"Intercompany Claim"** shall mean a Claim of any Debtor against any other Debtor, regardless of whether such Claim arose before, on or after the Petition Date.

79. ~~80.~~ **"Interest"** shall mean, with respect to any Debtor, any "equity security" as such term is defined in section 101(16) of the Bankruptcy Code. Interest shall also include, without limitation, all stock, partnership, membership interest, warrants, options or other rights to purchase or acquire any equity interests in the Debtors.

80. ~~81.~~ **"Interest Related Claim"** shall mean any Claim, including pursuant to section 510(b) of the Bankruptcy Code, against the Debtors arising from the purchase or sale of an Interest in the Debtors, or any Claim against the Debtors by a Person that asserts equitable or contractual rights of reimbursement, contribution or indemnification arising from such Claim.

81. ~~82.~~ **"IRS"** shall mean the Internal Revenue Service.

82. ~~83.~~ **"Lien"** shall mean any lien, mortgage, charge, security interest, right of first refusal, option, nonexecutory purchase agreement, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

83. ~~84.~~ **"Liquidating Assets"** shall mean the assets of Fairfield, including without limitation its equity interests in the First Tier Subsidiaries, and their respective assets, excluding the Reorganized Fairfield Assets, and including, but not limited to, all Causes of

Action, including all Avoidance Actions, the Tax Election Claim and the contracts listed on the Assumed Contracts Schedule and any other assets acquired by the ~~Fairfield~~FFR Trust after the Effective Date or pursuant to this Plan.

84. 85. **"Liquidating Trust Agreement"** shall mean the liquidating trust agreement for the ~~Fairfield~~FFR Trust, which is included in the Plan Supplement as Exhibit G.

85. 86. **"Liquidating Trustee"** shall mean that individual appointed by the Committee and Capmark Finance, solely in his ~~or her~~ capacity as the trustee of the ~~Fairfield~~FFR Trust or any of his ~~or her~~ successors.

86. 87. **"Local Rules"** shall mean Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

87. 88. **"Management"** shall mean Chris Hashioka, Greg Pinkalla, Ted Bradford, Jim Hribar, Perry Raptis and Don Byerly.

88. 89. **"Management Investment"** shall mean the investment of not less than $1.5 million in Newco by Management or a Person collectively owned by Management in exchange for Membership Interests on the Effective Date.

89. 90. **"Membership Interests"** shall mean the membership interests in Newco to be issued on the Effective Date.

90. 91. **"Minimum Cash Balance"** shall be the following Cash to be held by the ~~Fairfield~~FFR Trust: (i) $~~30~~35 million beginning on the Effective Date through December 20, 2010; (ii) $25 million beginning on December 21, 2010 through December 20, 2011; (iii) $15 million beginning on December 21, 2011 through December 20, 2012; and (iv) $10 million thereafter until such time as the Liquidating Trustee makes the final Distribution from the ~~Fairfield~~FFR Trust; provided, however, that the Liquidating Trustee, with the consent of the Trust Oversight Committee, may reduce the Minimum Cash Balance beginning on January 1, 2013, so long as anticipated liquidated and contingent liabilities of the Liquidating Trustee are adequately provided for by such lesser amount.

~~92. "MJC" shall mean MJC Associates LLC.~~

91. 93. **"New Money Definitive Documents"** shall mean the Operating Agreement, the Asset Purchase Agreement, the Asset Management Agreement and any applicable employment agreements, each as acceptable in form and substance to each of the New Money Investors.

92. 94. **"New Money Investment"** shall mean the New Money Investors' investment in Newco in exchange for Membership Interests in accordance with the New Money Definitive Documents.

93. 95. **"New Money Investors"** shall mean ~~OZ~~Brookfield, or ~~OZ~~Brookfield and CalSTRS.

94. ~~96.~~ "**Newco**" means, collectively, New Fairfield LLC, which shall hold, directly or indirectly, all of the equity interests of Reorganized FF Properties, and a separate affiliate of New Fairfield LLC, which shall hold any new joint venture projects of Reorganized Fairfield.

95. ~~97.~~ "**Newco Contracts Schedule**" shall mean the list of assumed and assigned Executory Contracts to be included in the Reorganized Fairfield Assets, which list is included in the Plan Supplement as Exhibit H. The Newco Contracts Schedule shall be subject to the approval of each of the New Money Investors.

96. ~~98.~~ "**Non-Debtor Affiliate**" shall mean any entity in which any of the Debtors, either directly or indirectly, has an ownership interest or voting right.

97. ~~99.~~ "**Operating Agreement**" shall mean the Operating Agreements of Newco attached as Exhibit I to the Plan Supplement.

98. ~~100.~~ "**Organization Documents**" shall mean any certificate filed with the Secretary of State prior to the Effective Date, including any certificate of incorporation or certificate of formation, and any amendments or restatements thereto, and the bylaws or limited liability company agreements, as applicable, and any amendments and restatements thereto, of each of the Debtors.

~~101.    "OZ" means Och-Ziff Real Estate Acquisitions LP or its designated affiliate; provided, however, that such affiliate must provide evidence reasonably acceptable to the Committee and the Capmark Lenders (or otherwise approved by the Bankruptcy Court) of adequate capitalization to fund the New Money Investment and satisfy its obligations under the New Money Definitive Documents.~~

99. ~~102.~~ "**Person**" shall mean any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or other entity.

100. ~~103.~~ "**Petition Date**" shall mean December 13, 2009, the date the Debtors commenced the Chapter 11 Cases.

101. ~~104.~~ "**Plan**" shall mean this ~~Second~~Third Amended Joint Chapter 11 Plan of Reorganization (as the same may be modified or amended by the Debtors and the Committee in accordance with the Bankruptcy Code and the Bankruptcy Rules) and any exhibits hereto and any documents incorporated herein by reference.

102. ~~105.~~ "**Plan Supplement**" means the supplement or supplements to the Plan containing certain documents relevant to the implementation of the Plan, including without limitation the ~~Administration Agreement, the~~ Guaranty Claims Protocol, the Liquidating Trust Agreement, the New Money Definitive Documents, the Newco Contracts Schedule, the Assumed Contracts Schedule, First Amendment to Second Amended and Restated Operating Agreement of Fairfield California Housing Fund LLC, Guaranty of Second Amended and Restated

Operating Agreement and Related Documents and the Expense and Receivable Allocation Agreement.

103.   106.   **"Post-Confirmation Expense"** shall mean any fees, costs and expenses (including, without limitation, United States Trustee fees, Liquidating Trustee fees, attorneys' fees, the fees of other professionals, and any taxes imposed on the ~~Fairfield~~FFR Trust or in respect of the Liquidating Assets) necessary to complete the reorganization of the Debtors, their Estates and the liquidation of the Liquidating Assets and ~~Fairfield~~FFR Trust after the Effective Date.

104.   107.   **"Priority Claim"** shall mean a Claim entitled to priority pursuant to section 507 of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

105.   108.   **"Priority Tax Claim"** shall mean a Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code or a tax Claim afforded secured status pursuant to section 506 of the Bankruptcy Code.

106.   109.   **"Professional"** shall mean a Person (i) employed by the Debtors and/or the Committee pursuant to a Final Order in accordance with sections 327, 328 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been Allowed under section 503(b)(4) of the Bankruptcy Code by the Bankruptcy Court pursuant to a Final Order.  This term excludes Persons that may be selected and employed by the Liquidating Trustee, the ~~Fairfield~~FFR Trust or the Trust Oversight Committee on and after the Effective Date.

107.   110.   **"Professional Fee Claim"** shall mean (i) all fees and expenses claimed by Professionals accrued on or before the Effective Date which remain unpaid as of the Effective Date and (ii) any fees and expenses accrued by counsel to the Debtors or counsel to the Committee subsequent to the Effective Date in connection with the prosecution, including prosecution or resolution of any dispute or objection, of any final application for fees and expenses.

~~111.   **"Project"** shall mean real estate owned in whole or in part by a Debtor or an entity in which a Debtor owns an interest, directly or indirectly.~~

108.   **"Project Level Entity"** shall mean the entities listed on Exhibit D to the Plan; provided, however, that an entity listed on Exhibit D shall cease to be a Project Level Entity when the FFR Trust no longer holds any direct or indirect ownership or economic in such entity, at which time such entity will no longer be subject to the Asset Management Agreement.

109.   112.   **"Proof of Claim"** shall mean a proof of claim filed in the Chapter 11 Cases pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

110.   113.   **"Pro Rata"** shall mean the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims

(including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

111. ~~114.~~ **"Protected Party"** shall mean any of the Debtors, the Liquidating Trustee, the Capmark Lenders, any Holders of Guaranty Claims that agree to the Allowance of Guaranty Claims pursuant to the Guaranty Claims Protocol (provided that such Holders have funded to the Project ~~entity~~Level Entity amounts owing to the Debtors as of the Effective Date for Development Fees or General Contractor Fees), the Steering Committee, the Estates, the ~~Fairfield~~FFR Trust, the Committee, Reorganized Fairfield, each of the New Money Investors and the Trust Oversight Committee and each of their respective officers, directors, current (but not former) employees, members, shareholders, advisors, attorneys, representatives, professionals and other agents.

112. ~~115.~~ **"Reorganized Fairfield"** shall mean Reorganized FF Properties and Newco, collectively.

113. ~~116.~~ **"Reorganized Fairfield Assets"** shall mean: (i) all of the assets of FF Properties, which shall be effected through the acquisition by Newco of all the limited partnership and general partnership interests in FF Properties, (provided, however, that FF Properties' Cash, accounts receivable, short-term investments due from Affiliates, ~~and~~ intercompany receivables, and Causes of Action, including all Avoidance Actions, as of the Effective Date will be transferred to the ~~Fairfield~~FFR Trust on the Effective Date), (ii) any ~~contracts for~~ (ii) any contracts entered into by any Fairfield Trust Entity for construction supervision, development management and/or design services entered into on or after on or after May 17, 2010, and any other rights of Fairfield and FF Properties, Inc. or any Fairfield Trust Entity with respect to rehabilitation, construction or development ~~work executed by FF Development on or after March 1, 2010 on projects that Newco will not be paid a trust asset management fee, (iii) all employees of FF Properties (other than those employees to be terminated pursuant to the Debtors' staffing plan or otherwise approved by each of the New Money Investors, the Capmark Lenders and the Committee), (iv~~projects commenced on or after May 17, 2010, (iii) all furniture, fixtures and equipment and ~~all other tangible and intangible personal property of any Debtor (including~~ Intellectual Property (subject to ~~the~~a royalty-free, paid- up, non-exclusive, non-transferable license ~~granted~~ to the ~~Fairfield~~FFR Trust to use ~~the~~ Intellectual Property~~)~~ on the terms provided in the Asset Management Agreement) of any Debtor, but exclusive of Cash on hand as of the Effective Date~~)~~, (iv) all property management agreements to which Fairfield or FF Properties, Inc. or any Affiliate of Fairfield or FF Properties, Inc. is a party, (v) those Executory Contracts listed on the Newco Contracts Schedule, (vi) an unrestricted right of access to and copies of all plans, specifications, drawings and other work-product, work for hire or similar material produced or provided by employees, contractors, professionals, consultants, or other third parties in connection with the development, redevelopment or potential future development or redevelopment of real estate that are not otherwise contained on the Newco Contracts Schedule ~~and~~, provided however, that Newco shall bear all costs associated with access to and copies of such information, (vii) an unrestricted right of access to and copies of all books and records of Fairfield and the Retained Subsidiary Debtors as necessary to conduct the business of Newco, provided however, that Newco shall bear all costs with Newco accessing and coping such information, and (viii) the right to receive the investment management fee described in Section 6.07 of the Amended and Restated Agreement

of Limited Partnership of Bouwfunds U.S. Residential Fund, L.P., a Delaware limited partnership, dated as of _____, 2006, accruing on or after the Effective Date (for the avoidance of doubt, Fairfield and FF Properties, Inc. shall only be obligated to pay to Newco any amounts actually received by them on account of such investment management fee).

114.    117.  **"Reorganized FF Properties"** shall mean FF Properties in the form that it shall have on the Effective Date after implementation of this Plan.

115.    118.  **"Responsible Person"** shall have the meaning set forth under the Internal Revenue Code Section 6672(a).

116.    119.  **"Retained Subsidiary Debtors"** shall mean all Debtors except Fairfield and FF Properties.

117.    120.  **"Scheduled"** with respect to any Claim, shall mean listed on the Schedules.

118.    121.  **"Schedules"** shall mean the Statements of Financial Affairs and Schedules of Assets and Liabilities filed by the Debtors with the Bankruptcy Court in the Chapter 11 Cases under Bankruptcy Rule 1007, as such Statements of Financial Affairs and Schedules of Assets and Liabilities have been or may be amended or supplemented from time to time.

119.    122.  **"Second Tier Subsidiaries"** shall mean Fairview Homes, Inc., Fairfield Residential L.P., Fairview Residential WA LLC, and Fairview Residential CA L.P.

120.    123.  **"Secretary of State"** shall mean the Secretary of State of the State of Delaware.

121.    124.  **"Steering Committee"** shall mean the steering committee of unsecured creditors that existed prior to the Petition Date.

122.    125.  **"Subordinated Intercompany Claim"** shall mean a Claim of any Non-Debtor Affiliate against a Debtor.

123.    126.  **"Subsequent Distribution"** means any Distribution made after the Effective Date Distribution.

124.    127.  **"Tax Election Claim"** shall mean a Cause of Action, to the extent that any exists under applicable law, arising from an adverse tax or financial consequence to the Fairfield FFR Trust (including any tax liabilities of Fairfield as a result of the election that have the effect of reducing the amount of the Liquidating Assets as compared to what such assets would have been absent the election) as a result of Fairfield's election as of May 31, 2009 to be treated as a corporation for federal income tax purposes.  A Tax Election Claim may only be asserted to avoid the election or against a Person that received a direct financial benefit (including a reduction in tax liabilities as compared to what such liabilities would have been absent the election) as a result of Fairfield's election as of May 31, 2009 to be treated as a corporation for federal tax purposes.

125.    128.  **"Trust Oversight Committee"** shall mean the trust oversight committee of Creditors formed on the Effective Date upon the dissolution of the Committee and composed of five (5) Persons, consisting of four (4) Persons selected by the Committee and one (1) Person who is selected by Capmark Finance.  Such members will be identified in the Plan Supplement filed prior to the Confirmation Hearing.

126.    129.  **"Voting and Claims Agent"** shall mean Kurtzman Carson Consultants LLC, the Court appointed claims, noticing and balloting agent in these jointly administered Chapter 11 Cases.

127.    130. **"Wachovia"** shall mean Wachovia Finance Co.

128.    131. **"Wachovia Facility"** shall mean that certain credit agreement dated December 14, 2007 by and among Fairfield and Wachovia, as amended or supplemented from time to time.

129.    132. **"Wachovia Claim"** shall mean all claims of Wachovia against any of the Debtors and/or their Estates that arise from or relate to the Wachovia Facility.

130.    133. **"Wachovia Real Estate"** shall mean the real estate securing the Wachovia Facility.

131.    134. **"Wind-down Reserve Account"** shall mean one or more reserve accounts to be established on the Effective Date by the Liquidating Trustee in accordance with Article IV.BS of this Plan, to hold at least the Minimum Cash Balance.

## B.    Other Terms

The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to this Plan as a whole and not to any particular article, section or clause contained in this Plan.  A reference to an "Article" refers to an Article, or referenced portion thereof, of this Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in or by the Bankruptcy Code.  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply in constructing this Plan.

## C.    Exhibits

All Exhibits to this Plan and the Plan Supplement are incorporated by reference into and are made a part of this Plan as if set forth in full herein.

## ARTICLE II.

## CLASSIFICATION AND TREATMENT OF CLAIMS

## A.    Summary

This Plan constitutes a separate chapter 11 plan of liquidation or reorganization for each of the following categories of Debtors:  (i) Fairfield and the First Tier Subsidiaries; (ii)

Homes; (iii) Fairview L.P.; (iv) Fairview WA; and (v) Fairview CA. Except for Administrative Claims, and Priority Tax Claims, all Claims against and Interests in a particular category of Debtors are placed in Classes for each category of the Debtors described above. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims or Priority Tax Claims, as described below.

**B.    Classification**

The table below classifies Claims against and Interests of all Debtors for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and a Claim or Interest shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| CLASS | STATUS | ENTITLED TO VOTE |
|---|---|---|
| Class 1.A: Fairfield/First Tier Subsidiary Priority Claims | Not Impaired | No |
| Class 1.B: Homes Priority Claims | Not Impaired | No |
| Class 1.C: Fairview L.P. Priority Claims | Not Impaired | No |
| Class 1.D: Fairview WA Priority Claims | Not Impaired | No |
| Class 1.E: Fairview CA Priority Claims | Not Impaired | No |
| Class 2.A: Capmark Claims | Impaired | Yes |
| Class 2.B: Fairfield/First Tier Subsidiary General Unsecured Claims | Impaired | Yes |
| Class 2.C: Homes General Unsecured Claims | Impaired | Yes |
| Class 2.D: Fairview L.P. General Unsecured Claims | Impaired | Yes |
| Class 2.E: Fairview WA General Unsecured Claims | Impaired | Yes |
| Class 2.F: Fairview CA General Unsecured Claims | Impaired | Yes |
| Class 3:  Wachovia Claims | Impaired | Yes |
| Class 4.A: Fairfield/First Tier Subsidiary Convenience Class Claims | Not Impaired or Impaired by Agreement | No |
| Class 4.B: Homes Convenience Class Claims | Not Impaired or Impaired by Agreement | No |
| Class 4.C: Fairview L.P. Convenience Class Claims | Not Impaired or Impaired by Agreement | No |
| Class 4.D: Fairview WA Convenience Class Claims | Not Impaired or Impaired by Agreement | No |

| CLASS | STATUS | ENTITLED TO VOTE |
|---|---|---|
| Class 4.E: Fairview CA Convenience Class Claims | Not Impaired or Impaired by Agreement | No |
| Class 5.A: Fairfield/First Tier Subsidiary Intercompany Claims | Impaired | No |
| Class 5.B: Homes Intercompany Claims | Impaired | No |
| Class 5.C: Fairview L.P. Intercompany Claims | Impaired | No |
| Class 5.D: Fairview WA Intercompany Claims | Impaired | No |
| Class 5.E: Fairview CA Intercompany Claims | Impaired | No |
| Class 6.A: Fairfield /First Tier Subsidiary Subordinated Intercompany Claims | Impaired | No |
| Class 6.B: Homes Subordinated Intercompany Claims | Impaired | No |
| Class 6.C: Fairview L.P. Subordinated Intercompany Claims | Impaired | No |
| Class 6.D: Fairview WA Subordinated Intercompany Claims | Impaired | No |
| Class 6.E: Fairview CA Subordinated Intercompany Claims | Impaired | No |
| Class 7.A: Fairfield/First Tier Subsidiary Interest Claims | Impaired | No |
| Class 7.B: Homes Interest Claims | Impaired | No |
| Class 7.C: Fairview L.P. Interest Claims | Impaired | No |
| Class 7.D: Fairview WA Interest Claims | Impaired | No |
| Class 7.E: Fairview CA Interest Claims | Impaired | No |

## C.     Unclassified Claims: Administrative Claims and Priority Tax Claims

As provided in Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under this Plan.  Rather, all such Claims shall be treated separately as unclassified Claims in accordance with the terms set forth in this Article II.C.

### 1.     Administrative Claims

#### a.     (i)  Non-Professional Fee Claims

The Liquidating Trustee shall pay each Holder of an Allowed Administrative Claim against any Debtor (excluding Professional Fee Claims) the full amount of such Allowed Administrative Claim, without interest, in Cash, (a) as soon as practicable after the Effective Date but no later than twenty (20) days after the Effective Date, (b) within thirty (30) days after such Administrative Claim becomes an Allowed Claim or (c) when due in the ordinary course. Notwithstanding anything herein to the contrary, a Holder of an Allowed Administrative Claim against any Debtor may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Liquidating Trustee.  Without limiting the foregoing, all outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930 that

have not been paid as of the Effective Date shall be paid by the Liquidating Trustee no later than thirty (30) days after the Effective Date or when due in the ordinary course.

### (ii)  Administrative Claims and Administrative Expense Request Deadline

Each Holder of an Administrative Claim must file an Administrative Expense Request requesting payment of such Administrative Claim with the Bankruptcy Court by no later than the Administrative Expense Request Deadline for all ~~other~~ Administrative Claims that are not subject to the Bar Date Order; provided, however, that any such Administrative Expense Request need not be filed with a hearing date.  Nothing herein extends a Bar Date established in the Bar Date Order.  Capmark Finance and the Capmark Lenders shall not be required to file an Administrative Expense Request by the Administrative Expense Request Deadline in connection with any claims related to, arising under, or in connection with the Capmark Facility; provided however that any Administrative Expense Request by Capmark Finance and the Capmark Lenders shall not exceed the amount of the Capmark Retainer and the Fee Cap.

### b.  Professional Fee Claims

The Liquidating Trustee shall pay Professionals who are entitled to reimbursement or allowance of fees and expenses from each of the Debtors' Estates pursuant to ~~Bankruptcy Code~~ sections 327-330 and 503(b)(2) - (b)(6) of the Bankruptcy Code, in Cash, in the amount awarded to such Professionals by the interim fee application order or by Final Order of the Bankruptcy Court, as soon as practicable after the later of the Effective Date and the date upon which any order awarding fees and expenses becomes a Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Cases, and after application of any retainer received by the Professionals.  ~~The New Money Investors have provided that $1 million from the Closing Payment shall be used exclusively to pay, in part, the Professional Fee Claims of MJC and Imperial Capital.~~

~~The~~Exhibit A to the Plan Supplement shall include an estimate of fees and expenses for Professionals, including all retainers, holdbacks and fees and expenses accrued through the Effective Date in order to permit there to be an Effective Date Distribution.

Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date must be filed with the Bankruptcy Court and served on counsel for the ~~Fairfield~~FFR Trust, the Trust Oversight Committee and the Liquidating Trustee at the addresses listed in Article IX.Q of this Plan and on the Office of the United States Trustee so that it is received no later than forty-five (45) days after the Effective Date, unless otherwise extended by agreement of the claimant and the Liquidating Trustee, or such Professional Fee Claim shall be forever barred and shall not be enforceable against the Debtors, their Estates, the ~~Fairfield~~FFR Trust, the Liquidating Trustee and their successors, their assigns, the Liquidating Assets or the Reorganized Fairfield Assets.  Allowed Professional Fee Claims must be paid in full or reserved in full in Cash pending allowance by the Bankruptcy Court prior to any payment to Holders of Allowed Claims in Class 2.A Capmark Claims and Classes 2.B through 2.F (General Unsecured Claims).

### 2. Priority Tax Claims

The Liquidating Trustee shall pay, at the Liquidating Trustee's discretion, each Holder of an Allowed Priority Tax Claim against any Debtor in full in Cash at the later of (a) as soon as practicable after the Effective Date, or (b) within thirty (30) days after such Priority Tax Claim becomes an Allowed Claim. Notwithstanding the immediately preceding sentence, with respect to claims of a kind specified in section 507(a)(8) of the Bankruptcy Code, the Liquidating Trustee, may at his/her discretion elect to make payment on such claims in a series of periodic payments, the last of which payments shall be made on or before December 13, 2014, provided, however, that if the Liquidating Trustee elects to make payments in this manner, such claimants shall receive interest from the Effective Date through and including the date of the last periodic payment at the federal judgment interest rate in effect on the Effective Date. All Allowed Priority Tax Claims against the Debtors which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. The Liquidating Trustee can prepay any Allowed Priority Tax Claim at any time after the Effective Date without any penalty or charge.

Holders of Allowed Priority Tax Claims will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with such Claims. Any Claim for any such penalty, or demand for any such penalty, will be deemed disallowed by confirmation of this Plan.

### D. Classes of Claims and Interests: Classification, Treatment and Voting Rights

Holders of Claims and Interests are divided into Classes and treated as follows:

### 1. Classes 1.A through 1.E – Priority Claims –Not Impaired

#### a. Classification

Classes 1.A, 1.B, 1.C, 1.D and 1.E consist of all Allowed Priority Claims for such respective classes.

#### b. Treatment

The Liquidating Trustee shall pay each Holder of an Allowed Class 1.A Claim, Allowed Class 1.B Claim, Allowed Class 1.C Claim, Allowed Class 1.D Claim, or Allowed Class 1.E Claim in relative order of priority pursuant to Bankruptcy Code section 507, in full, in Cash, without interest, as soon as practicable but not later than thirty (30) days after the Effective Date.

#### c. Voting

Classes 1.A, 1.B, 1.C, 1.D and 1.E are not Impaired. Holders of Claims in Classes 1.A, 1.B, 1.C, 1.D and 1.E are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Claims in Classes 1.A, 1.B, 1.C, 1.D and 1.E are not entitled to vote to accept or reject this Plan.

2. **Class 2.A Capmark Claims and Classes 2.B through 2.F – General Unsecured Claims – Impaired**

    a. **Classification**

Class 2.A Capmark Claims consist solely of all Capmark Claims, and Classes 2.B, 2.C, 2.D, 2.E and 2.F consist of all General Unsecured Claims for such respective classes.

    b. **Treatment**

In full and final satisfaction of the Capmark Claims in Class 2.A and the Allowed General Unsecured Claims in Classes 2.B (which shall be counted as a pool), 2.C, 2.D, 2.E and 2.F, Holders of Capmark Claims and Holders of Allowed General Unsecured Claims in such classes shall receive:

(i) Class 2.A (Capmark Claims): the Holders of the Capmark Claims shall be entitled to:

    A. Effective Date Distributions:

        a. 50% of the Closing Payment relating to the $~~10~~19.25 million Cash payment that Newco shall make to FF Properties, Inc. and Fairfield ~~(or any larger amount received as a closing payment relating to an Alternative Transaction)~~; then

        b. 60% of the Effective Date Distributions of all Distributable Cash until an aggregate of $38.2 million has been distributed pursuant to this Article II~~(D)(2)(b)~~.D.2.b(i)~~(A)(~~,b~~)~~ and Article II~~(D)(2)(b)~~.D.2.b(ii)~~(A)(~~,b~~)~~ collectively (excluding any amounts paid from the $19.25 million cash Closing Payment described above); then

        c. thereafter, 50% of the Effective Date Distributions of all Distributable Cash; and

    B. Subsequent Distributions:

        a. 60% of Subsequent Distributions of Distributable Cash by the ~~Fairfield~~FFR Trust until the Holders of Capmark Claims have received an aggregate of $39.75 million; then

        b. 55% of the Subsequent Distributions of Distributable Cash by the ~~Fairfield~~FFR Trust thereafter until such time as the aggregate value of all Distributions made to Holders of Capmark Claims equals the amount of such Allowed Claims~~.~~; and

    C. Once all Class 2.B Claims have been paid in full, 50% of all Distributable Cash.

The timing and amount of the Distributions of Distributable Cash will be determined by the Liquidating Trustee after consultation with the Trust Oversight Committee. The aggregate value of all Distributions received by the Holders of Capmark Claims shall not exceed the Allowed Claims owed by the Debtors under the Capmark Facility, until all Class 2.B Claims have been paid in full. Thereafter, Holders of Class 2.A Capmark Claims shall receive 50% of all Subsequent Distributions.

On the Effective Date, ~~provided that~~ ~~Capmark Finance provides an accounting to the Debtors and the Committee,~~ Capmark Finance shall be authorized to apply the Capmark Retainer to the amount equal to all reasonable third-party professional fees ~~of Dechert LLP, J.H. Cohn and Connolly Bove~~ and reasonable actual expenses of ~~Dechert LLP, J. H. Cohn and Connolly Bove~~ the Capmark Professionals incurred in connection with the Chapter 11 Cases through the Effective Date ~~as well as an amount equal to the reasonably anticipated post-Effective Date~~. In addition, the Capmark Lenders shall be entitled to receive additional (i) reasonable and documented third-party professional fees and ~~expenses of Dechert LLP, J.H. Cohn and Connolly Bove directly related thereto (collectively, the "Fee Amount"). The balance, if any, of the Capmark Retainer in excess of the Fee Amount shall be applied as a setoff to the amount of the Effective Date Distribution otherwise payable on account of the Capmark Claim. In no event shall the Fee Amount exceed the amount of the Capmark Retainer.~~ reasonable actual expenses of the Capmark Professionals incurred through and including the Effective Date and (ii) reasonable and documented third-party professional fees and reasonable actual expenses of the Capmark Professionals accrued by the Capmark Professionals subsequent to the Effective Date solely in connection with the prosecution, including prosecution or resolution of any dispute or objection, of any additional fee request, in an aggregate amount not to exceed the Fee Cap, proved that such additional fees and expenses shall only be Allowed if Capmark Finance provides an accounting and backup documentation of such third-party fees and expenses to the Debtors and the Committee (or the Liquidating Trustee and the Trust Oversight Committee, as applicable). The Debtors and the Committee (or the Liquidating Trustee and the Trust Oversight Committee, as applicable) shall have fifteen (15) days from the delivery of such documentation to object thereto in writing and must set forth in detail the specific fees objected to and the basis for the objection. Any objection that remains unresolved ten (10) days after it is made shall be filed with the Bankruptcy Court by the objecting party and shall be heard by the Bankruptcy Court at the next regularly scheduled omnibus hearing. The uncontested portion of each invoice shall be paid within twenty (20) days after its delivery to the Debtors and the Committee (or the Liquidating Trustee and the Trust Oversight Committee, as applicable). The amount of the Fee Cap shall be reserved by the Liquidating Trustee until the later of (i) sixty (60) days after the Effective Date, or (ii) until all objections to the fee request have been resolved, and shall be paid pursuant to the procedures set forth above. Capmark Finance shall retain the right to seek Bankruptcy Court approval of additional fees and expenses in excess of the Fee Cap solely in the event that Effective Date occurs after August 1, 2010.

(ii) Class 2.B (Fairfield/First Tier Subsidiary General Unsecured Claims): with respect to Holders of Class 2.B Claims (except for those who receive or elect to receive treatment and payment under a Convenience Class), a Pro Rata Distribution of Cash, based upon the amount of their Allowed Claim, of the following:

A. Effective Date Distributions:

a. 50% of the Closing Payment relating to the $~~10~~19.25 million Cash payment that Newco shall make to FF Properties, Inc. and Fairfield ~~(or any larger amount received as a closing payment relating to an Alternative Transaction)~~; then

b. 40% of the Effective Date Distributions of all Distributable Cash until an aggregate of $38.2 million has been distributed pursuant to Article II~~(D)(2)(b).~~D.2.b(i)(A)~~(,~~b) and this Article II~~(D)(2)(b).~~D.2.b(ii)(A)~~(,~~b) collectively~~;~~ <u>(excluding any amounts paid from the $19.25 million cash Closing Payment described above); then</u>

c. thereafter, 50% of the Effective Date Distributions of all Distributable Cash as of such Effective Date; <u>and</u>

B. Subsequent Distributions:

a. 40% of Subsequent Distributions of Distributable Cash by the ~~Fairfield~~<u>FFR</u> Trust until the Holders of Capmark Claims have received an aggregate of $39.75 million;<u> then</u>

b. 45% of all Subsequent Distributions of Distributable Cash by the ~~Fairfield~~<u>FFR</u> Trust (provided, however, that such percentage shall increase to 100% when the aggregate value of all Distributions made to the Holders of Capmark Claims equals the amount of the Capmark Lenders Allowed Claims)~~.~~<u>; and</u>

C. Once all Class ~~2~~2.B Claims have been paid in full, 50% of all Distributable Cash.

Holders of Guaranty Claims shall have the amount of their Claims determined and Allowed by the Guaranty Claims Protocol. Each of the Debtors and the ~~Fairfield~~<u>FFR</u> Trust waives and releases any and all rights of reimbursement, contribution, indemnity and subrogation with respect to any and all of the Guaranty Claims and agrees that none of them shall have any such rights against any Person with respect to any or all of the Guaranty Claims.

All accrued, undisputed and unpaid Development Fees will be paid on or before the Effective Date and included in Distributable Cash to be distributed on the Effective Date. All accrued, undisputed and unpaid General Contractor Fees will be paid on or before the Effective Date and included in Distributable Cash to be distributed on the Effective Date. In the event that a Holder of Class 2.B Claims fails to fund the Project ~~entity~~<u>Level Entity</u> for accrued, undisputed and unpaid Development Fees and/or General Contractor Fees that are otherwise due and owing to the Debtors, the amount of such unfunded fees with respect to such Project <u>Level Entities</u> shall be set off against such Creditor's right to receive a Distribution on account of such Class 2.B Claim.

(iii)    Class 2.C (Homes General Unsecured Claims):  the Holders of Class 2.C Claims shall receive a Pro Rata Distribution in Cash of the proceeds received from the liquidation of Homes in respect of their claims against Homes.

(iv)    Class 2.D (Fairview L.P. General Unsecured Claims):  the Holders of Class 2.D Claims shall receive a Pro Rata Distribution in Cash of the proceeds received from the liquidation of Fairview L.P. in respect of their claims against Fairview L.P.

(v)    Class 2.E (Fairview WA General Unsecured Claims): the Holders of Class 2.E Claims shall receive a Pro Rata Distribution in Cash of the proceeds received from the liquidation of Fairview WA in respect of their claims against Fairview WA.

(vi)    Class 2.F (Fairview CA General Unsecured Claims): the Holders of Class 2.F Claims will receive a Pro Rata Distribution in Cash of the proceeds received from the liquidation of Fairview CA in respect of their claims against Fairview CA.

**c.    Voting**

Classes 2.A, 2.B, 2.C, 2.D, 2.E and 2.F are Impaired.  Therefore, Holders of Allowed Class 2.A Claims and Allowed Class 2.B Claims are entitled to vote to accept or reject the substantively consolidated Plan for Fairfield and the First Tier Subsidiaries or choose the Convenience Class Election.  Allowed Class 2.C Claims, Allowed Class 2.D Claims, Allowed Class 2.E Claims and Allowed Class 2.F Claims are entitled to vote to accept or reject this Plan for their respective Estates or choose the Convenience Class Election.

**3.    Class 3 – Wachovia Claims – _Impaired_**

**a.    Classification**

Class 3 consists of the Wachovia Claims.

**b.    Treatment**

In full and final satisfaction of Wachovia's Allowed Class 3 Claim, Wachovia shall be entitled to both (A) a recovery on ~~their~~the secured portion of its Claim through, at ~~their~~its option, (i) all proceeds of a sale of the Wachovia Real Estate to a third-party or (ii) the transfer of the Wachovia Real Estate to Wachovia or its designee or assignee; and (B) an Allowed General Unsecured Claim in Class 2B in the amount of the difference between the outstanding balance under the Wachovia Facility on the Petition Date and the value (as determined by the Bankruptcy Court or as otherwise mutually agreed between the Debtors and Wachovia, as may be reasonably acceptable to the Committee and the Capmark Lenders) of the ~~collateral securing the Wachovia Facility~~Wachovia Real Estate securing the Wachovia Facility. Wachovia shall maintain all liens or security interests in the Wachovia Real Estate securing the Wachovia Facility until such time as the collateral is transferred to a third party or Wachovia releases such liens.

### c. Voting

Class 3 is Impaired. Therefore, Wachovia is entitled to vote to accept or reject the substantively consolidated Plan for Fairfield and the First Tier Subsidiaries.

**4.** **Classes 4.A through 4.E – Convenience Class Claims (Includes Those Electing the Convenience Class Election) – Not Impaired or Impaired by Agreement**

### a. Classification

Classes 4.A, 4.B, 4.C, 4.D and 4.E consist of all Convenience Class Claims for such respective classes, including Claims of a single Holder of a type that (A) would otherwise be included in Class 2.A or 2.B that are either (i) $1,000 or less in the aggregate or (ii) greater than $1,000 in the aggregate, but as to which the holder thereof has made a Convenience Class Election or (B) would otherwise be included in Class 2.C, 2.D, 2.E or 2.F that are either (i) $100 or less in the aggregate or (ii) greater than $100 in the aggregate, but as to which the holder thereof has made a Convenience Class Election.

### b. Treatment

The Disbursing Agent shall distribute to each Holder of an Allowed Class 4.A Claim, an Allowed Class 4.B Claim, an Allowed Class 4.C Claim, an Allowed Class 4.D Claim or an Allowed Class 4.E Claim, Cash equal to 100% of the Face Amount thereof up to a maximum of $1,000 total payout in full and final satisfaction of such Claim for Allowed Class 4.A Claims or Allowed Class 4.B Claims and a maximum of $100 total payout in full and final satisfaction of such Claim for an Allowed Class 4.C Claim, an Allowed Class 4.D Claim or an Allowed Class 4.E Claim.

### c. Voting

Holders of Class 4.A Claims, Class 4.B Claims, Class 4.C Claims, Class 4.D Claims and Class 4.E Claims are conclusively deemed to have accepted the Plan either (i) pursuant to section 1126(f) of the Bankruptcy Code for such Claims within Article II.D.4(4.a)(A)(i) or Article II.D.4(4.a)(B)(i) of this Plan, or (ii) pursuant to an affirmative vote to accept the Plan for such Claims within Article II.D.4(4.a)(A)(ii) or Article II.D.4(4.a)(B)(ii) of this Plan who chose the Convenience Class Election.

**5.** **Classes 5.A through 5.E – Intercompany Claims – Impaired**

### a. Classification

Classes 5.A, 5.B, 5.C, 5.D and 5.E consist of all Intercompany Claims for such respective class.

### b. Treatment

Intercompany Claims in Classes 5.A, 5.B, 5.C, 5.D and 5.E shall be settled and forever discharged.

### c. Voting

Holders of Intercompany Claims in Classes 5.A, 5.B, 5.C, 5.D and 5.E shall receive no distribution under this Plan and are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

### 6. Classes 6.A through 6.E – Subordinated Intercompany Claims – Impaired

#### a. Classification

Classes 6.A, 6.B, 6.C, 6.D and 6.E consist of all Subordinated Intercompany Claims for such respective class.

#### b. Treatment

Subordinated Intercompany Claims in Classes 6.A, 6.B, 6.C, 6.D and 6.E shall be settled and forever discharged.

#### c. Voting

Holders of Subordinated Intercompany Claims in Classes 6.A, 6.B, 6.C, 6.D and 6.E shall receive no distribution under this Plan and are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

### 7. Classes 7.A through 7.E – Interests and Interest Related Claims –Impaired

#### a. Classification

Classes 7.A, 7.B, 7.C, 7.D and 7.E consist of all Interests and Interest Related Claims for such respective class.

#### b. Treatment

On the Effective Date, all Interests in any of the Debtors shall be deemed canceled, null and void, and of no force and effect, and Holders of Interest Related Claims in Classes 7.A, 7.B, 7.C, 7.D and 7.E shall receive no Distributions with respect to such Claims; provided, however, that (i) the Interests in the First Tier Subsidiaries (excluding FF Properties) held by Fairfield shall be transferred to the ~~Fairfield~~FFR Trust as Liquidating Assets and (ii) the Interests in the Second Tier Subsidiaries held by the First Tier Subsidiaries shall survive and continue to be held by the applicable First Tier Subsidiary.

### c. Voting

Classes 7.A, 7.B, 7.C, 7.D and 7.E will receive no distribution under this Plan. Holders of Interests and Interest Related Claims in Classes 7.A, 7.B, 7.C, 7.D and 7.E are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Interests and Allowed Interest Related Claims in Classes 7.A, 7.B, 7.C, 7.D and 7.E are not entitled to vote to accept or reject this Plan.

## ARTICLE III.

## ACCEPTANCE OR REJECTION OF THIS PLAN

### A. Impaired Classes of Claims Entitled to Vote

Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Class 2.A (Capmark Claims), Classes 2.B, 2.C, 2.D, 2.E and 2.F (General Unsecured Claims) and Class 3 (Wachovia Claims) shall be entitled to vote to accept or reject this Plan. If and to the extent any other Class identified as being unimpaired is impaired (whether as a result of the terms of this Plan or any modification or amendment thereto), upon such determination, such Class shall then be entitled to vote to accept or reject this Plan.

### B. Classes Deemed to Accept this Plan

Classes 1.A, 1.B, 1.C, 1.D and 1.E (Priority Claims) and Classes 4.A, 4.B, 4.C, 4.D and 4.E (Convenience Class Claims) are unimpaired by this Plan. Pursuant to section 1126(f) of the Bankruptcy Code, Classes 1.A, 1.B, 1.C, 1.D and 1.E and Classes 4.A, 4.B, 4.C, 4.D and 4.E are therefore conclusively presumed to have accepted this Plan, and the votes of Holders of Claims in Classes 1.A, 1.B, 1.C, 1.D, and 1.E and Classes 4.A, 4.B, 4.C, 4.D and 4.E will therefore not be solicited.

### C. Classes Deemed to Reject this Plan

Holders of Classes 5.A, 5.B, 5.C, 5.D, and 5.E (Intercompany Claims), Classes 6.A, 6.B, 6.C, 6.D and 6.E (Subordinated Intercompany Claims) and Classes 7.A, 7.B, 7.C, 7.D and 7.E (Interests and Interest Related Claims) are not entitled to receive any distribution under this Plan. Pursuant to section 1126(g) of the Bankruptcy Code, Classes 5.A, 5.B, 5.C, 5.D, 5.E, 6.A, 6.B, 6.C, 6.D, 6.E, 7.A, 7.B, 7.C. 7.D and 7.E are conclusively presumed to have rejected this Plan, and the votes of Holders of Claims in Classes 5.A, 5.B, 5.C, 5.D, 5.E, 6.A, 6.B, 6.C, 6.D, 6.E, 7.A, 7.B, 7.C, 7.D and 7.E therefore will not be solicited.

### D. Nonconsensual Confirmation

The Debtors intend to request that the Bankruptcy Court confirm this Plan pursuant to section 1129(b) of the Bankruptcy Code.

# ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.      Implementation of Plan**

The Debtors propose to implement and consummate this Plan on and after the Effective Date.  The Plan is premised upon the substantive consolidation of the First Tier Subsidiaries and Fairfield for all purposes related to this Plan, including for purposes of voting, confirmation and distribution.  The Second Tier Subsidiaries, however, shall not be substantively consolidated.

Prior to the Effective Date, the Debtors shall continue to operate their businesses subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.  This Plan contemplates and is predicated upon transfer of the Liquidating Assets and certain of the Debtors' liabilities (other than Assumed Liabilities under the Asset Purchase Agreement that shall be assumed by Newco), including Claims, into the ~~Fairfield~~FFR Trust.

**B.      Formation of the ~~Fairfield~~FFR Trust**

The ~~Fairfield~~FFR Trust shall be established as a Delaware statutory trust for the sole purpose of liquidating the Estates (except for the Reorganized Fairfield Assets) and making distributions to Holders of Allowed Claims and Interests, in accordance with this Plan with no objective to continue or engage in the conduct of a trade or business.  Subject to definitive guidance from the IRS, all parties shall treat the ~~Fairfield~~FFR Trust as a partnership for federal income tax purposes.  To the extent necessary, the ~~Fairfield~~FFR Trust shall make an election pursuant to Treasury Regulation 301.7701-3 to be treated as partnership for federal income tax purposes and the Liquidating Trustee (and any other required signatories) shall timely file IRS Form 8832 to ensure such classification from the date of formation of the ~~Fairfield~~FFR Trust.

On the Effective Date, Fairfield shall sell the Reorganized Fairfield Assets to Newco pursuant to the Asset Purchase Agreement.  Immediately thereafter, Fairfield shall liquidate and all of its assets (other than the Reorganized Fairfield Assets), including without limitation its equity interests in the First Tier Subsidiaries (excluding FF Properties), shall be transferred to the ~~Fairfield~~FFR Trust.  A Responsible Person shall be appointed to file final tax returns and handle other administrative tasks on behalf of liquidated Fairfield.   The First Tier Subsidiaries (excluding FF Properties) shall continue to hold the equity interests of the Second Tier Subsidiaries.  The Second Tier Subsidiaries shall retain their respective assets and such assets will be administered by the FFR Trust and the FFR Trust will make distributions to Holders of Allowed Claims and Interests to the creditors of those respective entities in accordance with this Plan.

The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Liquidating Trustee and to ensure the treatment of the ~~Fairfield~~FFR Trust as a partnership for federal income tax purposes, all consistent with the Plan.

As set forth herein, the liquidation and winding up of the ~~Fairfield~~FFR Trust shall become the responsibility of the Liquidating Trustee, who shall thereafter have responsibility for the management, control and operation thereof, and who may use, acquire and dispose of the Liquidating Assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to any necessary oversight or approvals of the Trust Oversight Committee as may be required pursuant to the Plan and as provided in the Liquidating Trust Agreement.  Subject to further order of the Bankruptcy Court, the Liquidating Trustee shall act as liquidating agent of and for the ~~Fairfield~~FFR Trust and the Estates (except for the Reorganized Fairfield Assets) from and after the Effective Date, subject to any necessary oversight or approvals of the Trust Oversight Committee as may be required pursuant to this Plan.

The Liquidating Trustee, at the direction of the Trust Oversight Committee, shall be permitted to make any investments.  The Liquidating Trustee, at the direction of the Trust Oversight Committee, may expend the Cash of the ~~Fairfield~~FFR Trust (a) as reasonably necessary to meet liabilities and to maintain the value of the respective assets of the ~~Fairfield~~FFR Trust during liquidation, (b) to pay the respective reasonable administrative expenses (including, but not limited to, any United States Trustee fees, Liquidating Trustee fees, professional fees and taxes imposed on the ~~Fairfield~~FFR Trust), and (c) to satisfy other respective liabilities incurred by the ~~Fairfield~~FFR Trust in accordance with the Plan or the Liquidating Trust Agreement.

For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and Holders of Allowed Claims) shall treat the transfer of the Liquidating Assets and certain of the Debtors' liabilities to the ~~Fairfield~~FFR Trust in accordance with the terms of this Plan, as a transfer to Holders of Allowed Claims followed by a transfer by such Holders to the ~~Fairfield~~FFR Trust, and the beneficiaries of the ~~Fairfield~~FFR Trust shall be treated as partners and owners thereof.  The beneficiaries of the ~~Fairfield~~FFR Trust shall be the Creditors of the Estates

## C.    Formation of Newco

Newco will be formed on or before the Effective Date by the New Money Investors and Management as a new entity, which will purchase and subsequently hold, directly or indirectly, all of the Reorganized Fairfield Assets.  Newco will purchase the Reorganized Fairfield Assets from Fairfield and FF Properties, Inc. pursuant to the Asset Purchase Agreement in exchange for $~~10~~19.25 million ~~of~~, the Closing Payment.   Reorganized Fairfield will assume those Executory Contracts set forth on the Newco Contracts Schedule and operating liabilities of FF Properties, as approved by each of the New Money Investors, provided however, that the New Money Investors' approval shall be deemed to be given with respect to any Executory Contract set forth on the Newco Contracts Schedule that is approved by the Bankruptcy Court at the Confirmation Hearing.  Newco will also assume the Assumed Liabilities, as approved by each of the New Money Investors, provided however, that the New Money Investors' approval shall be deemed to be given with respect to any Executory Contract set forth on the Newco Contracts Schedule that is approved by the Bankruptcy Court at the Confirmation Hearing.  As of the Effective Date, Reorganized Fairfield's reasonably projected expenses would not exceed its reasonably projected revenues.

Newco shall be structured for administrative and tax efficiency consistent with its two primary businesses: (i) providing management and other services, including managing the completion of construction of the Debtors' legacy assets and (ii) investing as a general partner in new projects.

## D. Governance of Newco

Newco will be governed by the Operating Agreement and initially have a ~~five~~six member board of managers. Of the ~~five~~six managers, ~~three~~four will be selected by the New Money Investors (with a total of ~~five~~seven votes), one will be selected by Management (with one vote), and one will be selected by the Trust Oversight Committee (with one vote). The Trust Oversight Committee's board seat and vote will be given to CalSTRS on the last day of the first month in which the Applicable Outstanding Loan Balance is calculated to be ~~zero~~$1 billion or less (except to the extent CalSTRS no longer holds an equity interest in Newco at such time, in which case the Trust Oversight Committee's board seat and vote will be eliminated). The managers appointed by the Trust Oversight Committee shall not be precluded from also serving as members of the Trust Oversight Committee.

Major decisions, including annual budgets, business plans, capital calls and new co-investments, will require a majority vote subject to normal and customary shareholder rights, as set forth in the Operating Agreement. The Operating Agreement will delegate day-to-day operating authority, subject to the aforementioned budgets and business plans, to Management.

## E. Terms of New Money Investment and Management Investment

Newco will acquire a New Money Investment on terms mutually agreed to by Management and the New Money Investors and consistent with the New Money Definitive Documents. The New Money Investment shall be subject to the approval of the Bankruptcy Court in connection with the Confirmation Order. ~~The New Money Investors will make an investment pursuant to the New Money Definitive Documents in the aggregate of $119.5 million in the following manner: (i) the New Money Investors will initially invest $19.5 million in Newco on the Effective Date (which includes the amount necessary to make the Closing Payment); (ii) the New Money Investors will make a subsequent investment in Newco of $50 million; and (iii) the New Money Investors will commit to co-invest $50 million in acquisitions of multi-family residential real estate projects by Newco. At the same time that the New Money Investors make their initial $19.5 million investment, Management will make the Management Investment. In exchange for the New Money Investment and the Management Investment, the New Money Investors and Management shall receive their proportionate share of Membership Interests.~~

~~Notwithstanding the foregoing, the management of Fairfield shall receive 10% of the Membership Interests and a promote interest equal to 15% of annual net Cash flow from management or other service related fees (i.e., excluding preferred and promote returns on co-investment) above a 15% return on the outstanding Cash balance to investors.~~

On the Effective Date, Newco will utilize the proceeds of the New Money Investment and the Management Investment to consummate the transactions contemplated by the

Asset Purchase Agreement; provided that the New Money Investment is not being made on behalf of any existing Claims or Interests of Management.

**F.** ~~**Alternative Transaction**~~

~~The Debtors and the Committee have agreed that, in the event that (a) prior to December 31, 2010, Fairfield consummates an Alternative Transaction and (b) OZ and CalSTRS have not otherwise breached their obligations under this Plan or the New Money Definitive Documents, or otherwise terminated in violation of the terms thereof the New Money Definitive Documents, then OZ and CalSTRS shall have the right to seek, pursuant to section 503(b) of the Bankruptcy Code, (i) the payment of $2.0 million to OZ and (ii) the reimbursement of actual and documented expenses incurred by OZ and CalSTRS in connection with or relating to the negotiation of the New Money Investment in an aggregate amount that does not exceed $500,000. In the event that (x) the New Money Investment is not consummated prior to December 31, 2010 and (y) OZ and CalSTRS have not otherwise breached their obligations under this Plan or the New Money Definitive Documents, or otherwise terminated in violation of the terms thereof the New Money Definitive Documents, then OZ and CalSTRS shall have the rights to seek, pursuant to section 503(b) of the Bankruptcy Code, the reimbursement of their reasonable actual and documented expenses incurred in connection with or relating to the negotiation of the New Money Investment. The amounts described in this paragraph, if due and payable in accordance with the terms of a Bankruptcy Court order, shall be paid contemporaneously with the consummation of an Alternative Transaction or upon the effective date under a confirmed plan of reorganization or liquidation other than this Plan. Nothing set forth herein shall limit or restrict the rights of other parties to object to the payment of such amounts.~~

**F.** ~~**G.**~~ **Other Issues**

Entry of the Confirmation Order shall constitute the approval, pursuant to sections 105(a), 1123(a)(5)(B) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the transfer of the Liquidating Assets and certain of the Debtors' liabilities, including Claims, to the ~~Fairfield~~FFR Trust, the transfer of the Reorganized Fairfield Assets and Assumed Liabilities to Newco pursuant to the Asset Purchase Agreement.

Notwithstanding the reorganization provided for herein, each and every Debtor shall remain severally responsible for the payment of quarterly fees pursuant to 28 U.S.C. §1930 to the Office of the United States Trustee until such time as a particular case is closed pursuant to a Final Decree or other order of the Bankruptcy Court, dismissed, or converted.

**G.** ~~**H.**~~ **Causes of Action**

Except for those Causes of Action listed on Exhibit A to the Plan, all Causes of Action including all Avoidance Actions and Tax Election Claims shall be transferred into the ~~Fairfield~~FFR Trust. Pursuant to section 1123 of the Bankruptcy Code, the Liquidating Trustee shall be authorized to commence all Causes of Action, including all Avoidance Actions, on behalf of all of the Debtors and/or their Estates (except for any Cause of Action that may be released pursuant to this Plan) with the consent of the Trust Oversight Committee. The

authorization shall be approved without limitation, notwithstanding any other applicable law that could restrict any such transfer or authorization, all of which shall be determined by the Bankruptcy Court in the Confirmation Order to be void as against public policy. After the Effective Date, Causes of Action, including Avoidance Actions, may be prosecuted, settled or abandoned with or without Court approval by the Liquidating Trustee with the consent of the Trust Oversight Committee. Notwithstanding anything to the contrary herein, no Distribution shall be made to the Holder of any Claim, including by way of setoff or recoupment by such claimant, if the Debtors, the Committee, the Trust Oversight Committee or the Liquidating Trustee has taken action to recover, or given notice to the applicable party of intent to take such action, on a Cause of Action against the Holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such Cause of Action is resolved by Final Order or otherwise in accordance with this section. The Liquidating Trustee will~~shall~~ be substituted as the party in interest instead of the Debtors or the Committee for all Causes of Action, including all Avoidance Actions, pending on the Effective Date. The ~~Fairfield~~FFR Trust shall succeed, on the Effective Date, in all respects to all of the rights, privileges and immunities of the Debtors, including without limitation, the attorney-client privileges and any other evidentiary privileges of the Debtors except with respect to the Reorganized Fairfield Assets.

Nothing in this Plan or the Confirmation Order shall limit, impair or otherwise restrict the rights of the Liquidating Trustee, with the consent of the Trust Oversight Committee, to bring any claim or Cause of Action against any Person (not otherwise released pursuant to this Plan) for any reason whatsoever, including, without limitation, the failure of this Plan to identify and/or describe such potential claim(s) or causes of action(s) with specificity. No Person may rely on the absence of a specific reference in the Plan or Disclosure Statement to any Cause of Action against them as an indication that the Debtors or the Liquidating Trustee will not pursue any and all available Causes of Action and Avoidance Actions against them. In addition to the general reservation of rights and notwithstanding the language in section 1127(b) of the Bankruptcy Code, the Liquidating Trustee and the Trust Oversight Committee reserve the right to modify the Plan at any time prior to or after substantial consummation of the Plan to include such specificity, if necessary, or otherwise desirable; provided, however, that the Liquidating Trustee and the Trust Oversight Committee would~~shall~~ comply with the notice requirements set forth in section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 2002 in connection with any such modifications. Except as otherwise specifically released pursuant to the Confirmation Order, it is the ~~Fairfield~~FFR Trust's intent not to waive any Cause of Action.

Unless any Causes of Action or Avoidance Actions against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Liquidating Trustee expressly reserves all Causes of Action, including all Avoidance Actions, for later adjudication. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches shall apply to such Causes of Action or Avoidance Actions upon, after, or as a consequence of the Confirmation Order. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action, including all Avoidance Actions, that a Debtor may hold against a Person shall vest in the ~~Fairfield~~FFR Trust.

**H.** ~~I.~~ **Appointment and Term of the Liquidating Trustee**

A super-majority of the vote by the members of the Committee and Capmark Finance (6 votes of the 8 Persons) shall appoint and designate the initial Liquidating Trustee. The Committee and the initial Liquidating Trustee shall have entered into a Liquidating Trustee employment agreement to be filed with the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing. The Liquidating Trustee shall be compensated for its reasonable fees and actual and necessary expenses incurred prior to the Effective Date pursuant to section 330 of the Bankruptcy Code and thereafter without further order of the Court. The initial Liquidating Trustee, and each successor Liquidating Trustee, shall serve until the earlier of (i) the later to occur of (a) the entry of the Final Decree, (b) the dissolution of the ~~Fairfield~~FFR Trust, and (c) the payment of the final distributions to Holders of Allowed Capmark Claims, Allowed General Unsecured Claims, Allowed Wachovia Claims and Allowed Convenience Class Claims pursuant to the Plan; or (ii) the expiration of the term of such Liquidating Trustee's employment agreement or such Liquidating Trustee's resignation, death, incapacity, removal or termination by the Trust Oversight Committee pursuant to the Liquidating Trust Agreement or order of the Bankruptcy Court. The Liquidating Trustee may also be removed by the Bankruptcy Court upon motion for good cause shown by any Creditor.

Upon creation of the ~~Fairfield~~FFR Trust, the Liquidating Trustee shall be the trustee of the ~~Fairfield~~FFR Trust for all purposes and in all respects, with all necessary and appropriate power to act for, on behalf of and in the name of the ~~Fairfield~~FFR Trust.

**I.** ~~J.~~ **Duties of the Liquidating Trustee**

In addition to the duties as set forth elsewhere in this Plan and the Liquidating Trust Agreement, and his ~~or her~~ duties as the trustee of the ~~Fairfield~~FFR Trust, the Liquidating Trustee, in consultation with and, to the extent required by Article IV.N of this Plan or otherwise specifically set forth in this Plan, ~~at~~with the ~~direction~~approval of the Trust Oversight Committee, shall have the following duties:

1. to manage all of the ~~Fairfield~~FFR Trust's assets, including but not limited to the low income housing tax credit portfolio, in order to maximize value for the beneficiaries of the ~~Fairfield~~FFR Trust (such management may include the continued operation of any asset and all income derived therefrom) until such time as the Liquidating Trustee determines, in its reasonable business judgment and given market conditions and other timing considerations determined to be appropriate, that a sale of such asset would produce the maximum value for the beneficiaries of the ~~Fairfield~~FFR Trust; for greater clarity, the Liquidating Trustee in consultation with the Trust Oversight Committee and Newco (solely in its capacity as asset manager pursuant to the Asset Management Agreement) will periodically review the value and liquidity of the assets in the low income housing tax credit portfolio in determining whether a sale or other disposition and the timing of such sale or other disposition of one or more of such assets would produce the maximum value for the beneficiaries of the Trust.

2. to recover any and all Liquidating Assets;

3.    to collect and reduce to money the Liquidating Assets and close the Liquidating Trust as expeditiously as is compatible with the best interests of all the beneficiaries of the ~~Fairfield~~FFR Trust;

4.    to manage, control and operate the ~~Fairfield~~FFR Trust;

5.    to investigate and, if necessary and appropriate, to prosecute, enforce (or not prosecute or enforce), or to compromise, release or settle any Causes of Action, including Avoidance Actions, on behalf of the Estates and the ~~Fairfield~~FFR Trust;

6.    to invest the Liquidating Assets in accordance with Local Rule 4001-3;

7.    to create the Wind-down Reserve Account and deposit funds to such reserve;

8.    to file any and all reports, pleadings and other documents necessary to carry out the provisions of this Plan;

9.    to make any and all distributions required or permitted to be made under this Plan;

10.    to pay out of the ~~Fairfield~~FFR Trust any and all Distributions on account of Allowed Claims, liabilities, and losses, incurred in connection therewith;

11.    to employ, supervise and compensate any professionals and independent contractors of the ~~Fairfield~~FFR Trust;

12.    to make and file tax returns for any of the Debtors ~~and the~~(other than Fairfield) and the FFR Trust;

13.    to commence and pursue dissolution or winding up proceedings for the ~~Fairfield~~FFR Trust;

14.    to request the entry of a Final Decree;

15.    to take any and all actions, including any action set forth in Article IV.~~T~~X hereof, necessary to dissolve and cancel the existence of each of the Debtors in the State of Delaware and in any other jurisdiction in which a Debtor is qualified to do business;

16.    to determine reserve amounts for Post-Confirmation Expenses and Disputed Claims;

17.    to decrease the amounts needed for the Minimum Cash Balance, as otherwise provided in the Plan;

18.    to sign and timely file Internal Revenue Serve Form 8832 as described in Section 7.1(d) of the Liquidating Trust Agreement; and

19. ~~18.~~ to take any and all other actions necessary or appropriate to implement this Plan and the reorganization of the Debtors, and the liquidation of the ~~Fairfield~~FFR Trust in accordance with applicable law, provided, that nothing herein shall permit the Liquidating Trustee to terminate or cancel the Debtors' director and officer liability insurance coverage relating to the period following the Petition Date; and provided further that, the Liquidating Trustee shall not renew or extend such insurance coverage, or other new or substitute coverage, without the approval of the Trust Oversight Committee.

In connection with the execution of his ~~or her~~ duties under this Plan, the Liquidating Trustee, in consultation with the Trust Oversight Committee, shall be authorized:

a.  to execute such documents and to take such other actions as are necessary to effectuate this Plan and perform his ~~or her~~ duties as liquidating agent of and for the Estates and the ~~Fairfield~~FFR Trust, including to execute such documents and take such other action on behalf of the ~~Fairfield~~FFR Trust or any of the Debtors;

b.  to open, close and manage bank accounts, and to enter into business transactions within or without the ordinary course of business;

c.  to authorize and benefit from any insurance policies and rights of indemnification;

d.  to retain and pay professionals (including any of the Debtors' or the Committee's former Professionals) or other Persons to assist the Liquidating Trustee in the liquidation of the Liquidating Assets, without prior Bankruptcy Court approval, and to designate another Person to be the Disbursing Agent, subject to the consent of the Trust Oversight Committee as set forth in Article VI of the Plan;

e.  to incur any reasonable and necessary expenses (up to the amounts set forth in the Administrative Budget) in the performance of his ~~or her~~ duties as liquidating agent of and for the Estates and the ~~Fairfield~~FFR Trust;

f.  to prepare and deliver to the Trust Oversight Committee the Administrative Budget of the ~~Fairfield~~FFR Trust with respect to each six-month period following the Effective Date and any amendments or modifications thereto;

g.  to settle any Disputed Claim and implement the Guaranty Claims Protocol;

h.  to settle any Cause of Action without notice or a hearing where the Cause of Action has an estimated value of $500,000 or less or, after notice to any party affected by the settlement, and the Trust Oversight Committee, and a hearing to seek an order of the Bankruptcy Court approving the compromise, release or settlement of any Cause of Action that has an estimated value of greater than $500,000; and

i.  to employ such other procedures, not inconsistent with this Plan, necessary for the Liquidating Trustee to perform his ~~or her~~ duties hereunder.

The Liquidating Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under section 1106 of the Bankruptcy Code (including, without limitation, commencing, prosecuting or settling Causes of Action, including Avoidance Actions, and asserting claims, defenses, offsets and privileges), to the extent not inconsistent with this Plan or the status of the ~~Fairfield~~FFR Trust as a partnership for federal income tax purposes. In discharging the foregoing responsibilities, the Liquidating Trustee shall be entitled to exercise and rely upon his ~~or her~~ business judgment. The Liquidating Trustee shall not be obligated to take any action or to pursue any Causes of Action, including any Avoidance Actions, unless justified in his ~~or her~~ reasonable determination by fact and law, nor shall the Liquidating Trustee be obligated to take any action that could reasonably cause him ~~or her~~ personal liability. Without limiting the generality of the foregoing, the Liquidating Trustee may consider the interests of Holders of Allowed Claims in receiving prompt distributions and such other factors as may be reasonable in the exercise of his ~~or her~~ business judgment. Such authorization and benefits shall also extend to any, each and every successor Liquidating Trustee, without reservation or limitation.

The reasonable and necessary fees and actual and necessary expenses of the ~~Fairfield~~FFR Trust, the Liquidating Trustee, the Trust Oversight Committee and the professionals retained by the Liquidating Trustee and the Trust Oversight Committee shall be paid by the Liquidating Trustee in accordance with the procedures ~~established by~~set forth in the Liquidating Trust ~~Oversight Committee~~Agreement.

### J. ~~K.~~ No Recourse to ~~Liquidation~~Liquidating Trustee

Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which there is insufficient Cash in the relevant fund or reserve to provide a recovery equal to that received by other Holders of Allowed Claims in the relevant Class, no Holder of a Claim shall have recourse to the Protected Parties, or their successors or assigns, or the Holder of any other Claim, or any of their respective property. However, nothing in the Plan shall modify any right of a Holder of a Claim under section 502(j) of the Bankruptcy Code. THUS, THE COURT'S ENTRY OF AN ESTIMATION ORDER MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

### K. ~~L.~~ Transfer Free and Clear of Taxes

Any and all transfers of real or personal property owned by the ~~Fairfield~~FFR Trust or any Debtor shall be free of any and all state and local stamp taxes and similar taxes pursuant to section 1146(a) of the Bankruptcy Code.

### L. ~~M.~~ Liability, Indemnification

No Protected Party shall be liable for the act or omission of any other Protected Party. Neither the Liquidating Trustee nor any member of the Trust Oversight Committee shall

be liable for any act or omission taken or omitted to be taken in his ~~or her~~ capacity as Liquidating Trustee or as a member of the Trust Oversight Committee, as the case may be, other than acts or omissions resulting from the Liquidating Trustee's or Trust Oversight Committee member's willful misconduct, gross negligence or fraud. The Liquidating Trustee and the Trust Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors and agents, and the Liquidating Trustee and the Trust Oversight Committee shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons other than acts or omissions resulting from the willful misconduct, gross negligence or fraud of the Liquidating Trustee or the members of the Trust Oversight Committee, as the case may be. Notwithstanding such authority, the Liquidating Trustee and the Trust Oversight Committee shall not be under any obligation to consult with their respective attorneys, accountants, financial advisors or agents, and any determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or the members of the Trust Oversight Committee, as the case may be, and their respective designees, unless such determination is based on willful misconduct, gross negligence or fraud. The ~~Fairfield~~FFR Trust shall indemnify, defend and hold harmless the Liquidating Trustee, the Trust Oversight Committee and their respective designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, but not limited to, attorneys' fees and costs) arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of the duties of the Liquidating Trustee or the Trust Oversight Committee, as the case may be, or the implementation or administration of this Plan; provided, however, that no such indemnification will be available to such Persons for such actions or omissions if a court of competent jurisdiction has determined by final order that the challenged conduct occurred as a result of willful misconduct, gross negligence or fraud.

## **M.** ~~N. Administrator,~~ **Asset Management Agreement and Expense and Receivable Allocation Agreement**

The ~~Administrator will be formed by the Management of Fairfield to be available to act as the new administrative general partner (or administrative member) of the existing joint ventures in which the Fairfield Trust has an indirect interest. The Administrator's engagement as new administrative general partner (or administrative member) of a particular joint venture would occur only upon the joint request of the particular joint venture's existing partners (or members) and the particular joint venture's existing project lenders. Such engagement would be made pursuant to an administration agreement entered into among those parties and the Administrator. There will be no economics associated with such engagement. The Administrator would be independent of the Fairfield Trust and Reorganized Fairfield.~~The ~~Fairfield~~FFR Trust and Newco will enter into the Asset Management Agreement on the Effective Date. Pursuant to the Asset Management Agreement, Newco will provide certain administrative and operational services for the ~~Fairfield Trust. In exchange, the Fairfield Trust will pay Newco an asset management fee each month during the term of the Asset Management Agreement (i) of $1.28 million per month, payable in advance each month, during the period from the Effective Date through December 31, 2010; and (ii) commencing January 1, 2011, an amount equal to 1/12 of the amount calculated as 29 bps of the Applicable Outstanding Loan Balance.~~

Notwithstanding clause (ii) of the immediately preceding sentence, the Asset Management Agreement shall provide that the asset management fee shall be reduced by the first $2.5 million of fees coming due during each of calendar years 2011 and 2012. Such reduction shall be made against the first monthly payments that would otherwise have been payable during each such calendar year (there shall be no offsetting increase in the asset management fees payable during the remainder of each such year as a result of such reduction). If the first monthly payment due during calendar years 2011 or 2012 (i.e., on January 1, 2011 or January 1, 2012) is less than $2.5 million, then the remaining amount in such calendar year shall be reduced against the next monthly payments due by the Fairfield Trust until $2.5 million of fees for such calendar year have been reduced. The Asset Management Agreement shall also provide that in the event that the Asset Management Agreement is terminated before the asset management fees paid in 2011 and 2012 are reduced by $2.5 million in each of 2011 and 2012 or the Applicable Outstanding Loan Balance reduces so that the $2.5 million reductions to be made during 2011 and 2012 exceed the amount of fees that would have been paid prior to any reduction, a termination payment equal to the difference between $5 million and the amount of any prior reductions shall be paid by Newco to the Fairfield Trust. FFR Trust, all as set forth in the Asset Management Agreement.

On the Effective Date the Liquidating Trustee is authorized to and shall execute and deliver the Asset Management Agreement delegating certain of his duties and responsibilities to FF Properties and Management. Reorganized Fairfield, FF Properties and Management may rely on the authority of the Liquidating Trustee and the Confirmation Order respecting the delegation of duties and responsibilities under the Asset Management Agreement and the Liquidating Trustee's giving of direction, consenting to or voting favorably with respect to any solicitation by or direction to FF Properties or any representative of FF Properties, including any member of Management. With the consent of the Trust Oversight Committee, the Liquidating Trustee may amend the Asset Management Agreement to expand or limit the delegation of duties and responsibilities thereunder. .

The Fairfield FFR Trust and Newco shall also enter into the Expense and Receivable Allocation Agreement on the Effective Date, whereby they will agree to periodic true-up payments to account for expenses paid and receivables collected during a 90 360-day period after the Effective Date. Such true-up payments shall reflect the transfer of the Reorganized Fairfield Assets to Reorganized Fairfield as of the Effective Date.

## N. O. Co-Investment Rights and Obligations

The New Money Investors will provide an aggregate commitment of $50 100 million for investment in multifamily acquisitions; provided that each such acquisition must be acceptable to the New Money Investors. Any such investment will dilute the other Holders of Membership Interests except for Management pursuant to the terms and conditions of the Definitive New Money Documents.

For a period commencing on the Effective Date and ending upon the earlier of (i) December 31, 2010 or (ii) the date on which certificates of occupancy have been issued for those joint venture projects listed on Schedule B to the Operating Agreement amounting to more than 90% of the aggregate number of units under construction on December 31, 2009 as listed on

Schedule B to the Operating Agreement (but excluding joint venture projects with respect to which the project lenders have suspended or ceased funding):

(a)     The capitalization (including both debt and equity) of new joint venture projects provided by Newco shall not exceed $500 million in the aggregate as to all such projects.  Such capitalization may consist of: (A) new money equity investments made at the joint venture project level; (B) a portion of the Cash equity capitalization made in Newco (to the extent not needed for reasonable liquidity); and (C) joint venture project level debt (nonrecourse to Newco); and

(b)     In the case of any investment in a joint venture project owned in part by the Fairfield Trust, Newco will be permitted to make such investment only if such investment does not amend any rights or obligations under the governance documents of the joint venture project in a manner that is materially adverse to the Fairfield Trust.  Such investment would not be subject to (or counted towards) the capitalization limits described above.

In the event that the Fairfield Trust makes an investment in any existing joint venture project so as not to experience a foreclosure or forfeiture of such interest, it will be required to maintain or replenish the Minimum Cash Balance.

Management of Newco is required to invest in Newco's multifamily acquisitions the lesser of (i) 10% of the total amount of general partner equity required for such acquisition or (ii) $150,000 with respect to each such acquisition, up to an aggregate amount of $1.5 million.

In addition, 10% of the project level promote received by Newco on an annual basis (net of any losses) on any new project will be placed in a pool for distribution to employees of Reorganized Fairfield.

**O.** ~~P.~~ **Discharge of Debtors' Professionals**

On the Effective Date, the Debtors' Professionals and agents shall be released and discharged from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; (ii) applications for Professional Fee Claims; (iii) requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases; and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order.  The Professionals retained by the Debtors and the respective members thereof shall not be entitled to compensation and reimbursement of expenses for services rendered to or on behalf of the Debtors after the Effective Date, except for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date; provided, however, that to the extent any such fees and expenses are incurred after the date that is fifteen business days prior to the deadline to file final fee applications, any such fees and expenses must be submitted to the Liquidating Trustee and the Trust Oversight Committee in accordance with Article IV.~~H~~I of the Plan.

**P.** ~~Q.~~ **Dissolution of the Committee**

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released and discharged from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; (ii) applications for Professional Fee Claims and expense reimbursement requests for members of the Committee; (iii) requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases; and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order. The Professionals retained by the Committee and the respective members thereof shall not be entitled to compensation and reimbursement of expenses for services rendered to the Committee after the Effective Date, except for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date; provided, however, that to the extent any such fees and expenses are incurred after the date that is fifteen business days prior to the deadline to file final fee applications, any such fees and expenses must be submitted to the Liquidating Trustee and the Trust Oversight Committee in accordance with Article IV.~~HI~~I of the Plan.

**Q.** ~~R.~~ **Trust Oversight Committee**

On or prior to the Effective Date, the Committee shall select four (4) Persons to serve on the Trust Oversight Committee and Capmark Finance shall select one (1) Person to serve on the Trust Oversight Committee. The Trust Oversight Committee shall have the duties set forth herein to maximize distributions to Holders of Allowed Claims. On the Effective Date, the Trust Oversight Committee shall succeed in all respects to all of the rights, privileges and immunities of the Committee, including, without limitation, the attorney-client privileges and any other evidentiary privileges of the Committee.

The Trust Oversight Committee shall have the duty to take actions in accordance with the provisions of this Plan and in furtherance of the execution of this Plan. Additionally, the Trust Oversight Committee shall have the following rights and duties:

1.    to approve any release or indemnity in favor of any third party granted or agreed to by the Liquidating Trustee and

2.    to authorize the Liquidating Trustee to commence any Cause of Action or Avoidance Action.

The duties and powers of the Trust Oversight Committee shall terminate upon the later to occur of (i) the entry of the Final Decree, ~~and~~or (ii) the dissolution of the ~~Fairfield~~FFR Trust.

**R.** ~~S.~~ **Funding of the Plan**

The Cash Distributions to be made pursuant to the Plan will be made and the Cash necessary to maintain the Minimum Cash Balance in the Wind-down Reserve Account will be derived from (i) Cash on hand on the Effective Date, (ii) Cash proceeds received by the Debtors from the liquidation of the Liquidating Assets, including, without limitation, accounts receivable, as of the Effective Date and other funds then available, (iii) the Closing Payment and (iv) any payments to be received by the Debtors or the ~~Fairfield~~FFR Trust from the prosecution and enforcement of Causes of Action, including Avoidance Actions, revenues from the Liquidating Assets, and other funds available after the Effective Date.

To the extent not otherwise provided for herein or ordered by the Court, the Liquidating Trustee, with the consent of the Trust Oversight Committee, shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for Disputed Claims, accrued expenses and for the payment of prospective expenses and liabilities of the Estates and the ~~Fairfield~~FFR Trust after the Effective Date. Without limitation, these reserves shall include funds for the Minimum Cash Balance, Professional Fee Claims, Administrative Claims, Priority Tax Claims, Priority Claims, Convenience Class Claims, Disputed Claims and all amounts due pursuant to 28 U.S.C. §1930.

Notwithstanding any contrary provision contained herein, the Liquidating Trustee shall not be obligated to physically segregate and maintain separate accounts for reserves or for the Distribution Fund except as it relates to the Second Tier Subsidiaries. Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Liquidating Trustee to determine Distributable Cash, reserves and amounts to be paid to parties in interest.

**S.** ~~T.~~ **Wind-down Reserve Account**

On the Effective Date, or as soon thereafter as reasonably practicable, the Liquidating Trustee shall create the Wind-down Reserve Account and shall hold at least the Minimum Cash Balance in such reserve account from the assets transferred by the Debtors to the ~~Fairfield~~FFR Trust. The Liquidating Trustee shall pay Plan administration costs and costs of holding and liquidating any non-Cash property, including but not limited to taxes ~~and~~, professional fees and the fees and expenses of the Responsible Person for Fairfield, from the Wind-down Reserve Account. To the extent that the Liquidating Trustee, in consultation with the Trust Oversight Committee, determines that funds allocated to the Wind-down Reserve Account are insufficient for such purposes, the net proceeds of the continuing liquidation of the Liquidating Assets and any other Distributable Cash shall, to the extent necessary for such purposes, be allocated to the Wind-down Reserve Account. After all costs associated with the wind-down of the ~~Fairfield~~FFR Trust have been paid, and/or upon the reasonable determination of the Liquidation Trustee, in consultation with the Trust Oversight Committee, that the funds in the Wind-down Reserve Account exceed the amounts necessary to pay the expenses for which such fund is established, the remaining or excess funds, as applicable, in the Wind-down Reserve Account shall be designated as Distributable Cash.

**T.** ~~U.~~ **Distributable Cash**

Distributable Cash shall be allocated to the Distribution Fund. Distribution of Cash, if any, to Holders of Classes 1.A, 1.B, 1.C, 1.D, and 1.E Allowed Priority Claims and Class 2.A Capmark Claims and Classes 2.B, 2.C, 2.D, 2.E and 2.F Allowed General Unsecured Claims shall be made solely from the Distribution Fund. The Liquidating Trustee shall make the Effective Date Distribution and each Subsequent Distribution of Distributable Cash.

**U.** ~~V.~~ **Employee Programs**

To the extent not earlier terminated in accordance with their terms or assumed by Reorganized Fairfield, all employee programs, including but not limited to any retirement plans or agreements and health benefits and disability plans are deemed terminated as of the Effective Date in accordance with their terms with no further action required by the Debtors or the Liquidating Trustee, and to the extent any of such employee programs constitute distinct executory contracts with individual employees or otherwise, such contracts are deemed terminated as of the Effective Date. The Liquidating Trustee is not authorized to take any actions and make payment of the actual amount, if any, required to be contributed to or on account of an employee program to permit the termination of such programs and discharge all benefit liabilities to participants and beneficiaries of such programs, including, without limitation, continuation of the termination of the Debtors' 401(k) plan. Employee programs listed on the Newco Contracts Schedule will not terminate on the Effective Date and will be assumed by Newco. The Debtors do not maintain any programs for retirees. The transactions contemplated by the Asset Purchase Agreement shall not require notice or give rise to any Claim under the Worker Adjustment and Retraining Notification Act or other comparable applicable law.

**V.** ~~W.~~ **Corporate and Limited Liability Company Action**

On the Effective Date, the matters under this Plan involving or requiring corporate or limited liability company action of the Debtors, including, but not limited to, actions requiring a vote or other approval of the board of directors, members or shareholders, as applicable, and execution of all documentation incident to this Plan, notwithstanding any otherwise applicable non-bankruptcy law or the Organization Documents of the Debtors, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, members or shareholders, as applicable, of the Debtors.

**W.** ~~X.~~ **Dissolution of the ~~Fairfield~~FFR Trust**

After the liquidation and the winding up of the various Estates, the completion of Distributions under this Plan and the entry of the Final Decree, the Liquidating Trustee shall file any documents necessary and proper pursuant to applicable state law to dissolve the ~~Fairfield~~FFR Trust, and the ~~Fairfield~~FFR Trust shall dissolve and cease to exist.

**X.** ~~Y.~~ **Saturday, Sunday or Legal Holiday**

If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day.

## ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**  **Rejection of Remaining Executory Contracts and Unexpired Leases**

On the ~~Confirmation~~Effective Date, except for any Executory Contract that (i) previously expired or terminated by its own terms, (ii) was previously assumed or rejected by an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, (iii) is assumed pursuant to this Plan or (iv) is the subject of a pending motion to assume or assume and assign as of the Confirmation Date, shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, effective as of the ~~Confirmation~~Effective Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to Bankruptcy Code sections 365 and 1123 as of the ~~Confirmation~~Effective Date.

**B.**  **Assumption and Cure of Executory Contracts**

The Debtors will file the Newco Contracts Schedule identifying Executory Contracts to be assumed and assigned to Newco pursuant to the Plan and the Assumed Contracts Schedule identifying Executory Contracts to be assumed pursuant to the Plan in addition to those previously assumed by the Debtors by order of the Bankruptcy Court, <u>provided</u> that the Debtors reserve the right, subject to the consent of the New Money Investors, the Committee and the Capmark Lenders to amend both the Newco Contracts Schedule and the Assumed Contracts Schedule at any time up to three (3) Business Days before the Confirmation Hearing to delete any Executory Contract contained therein, or, with the consent of the affected counterparty, to add any Executory Contract to the Newco Contracts Schedule or the Assumed Contracts Schedule.  The Debtors will provide notice of any amendments to the Newco Contracts Schedule or the Assumed Contracts Schedule to the parties to the Executory Contracts added or removed, the New Money Investors, the Committee and the Capmark Lenders.  The Newco Contracts Schedule or the Assumed Contracts Schedule shall include a designation of the monetary cure amount the Debtors believe is owed with respect to each Executory Contract set forth in the Schedules.  Except as provided elsewhere in this Plan, any non-Debtor party to an Executory Contract shall file and serve its objection thereto in writing no later than 4:00 p.m. (prevailing Eastern Time) on the day that is seven (7) days after the Debtors file and serve the Newco Contracts Schedule or the Assumed Contracts Schedule.  The failure of any non-Debtor party to an Executory Contract to file and serve an objection to the assumption of the contract or lease, by the deadline therefore shall be deemed consent to the assumption or assumption and assignment of the contract or lease and to such cure amount.  On the Effective Date, in addition to all Executory Contracts that have been previously assumed by the Debtors by order of the Bankruptcy Court, each of the Executory Contracts of the Debtors that are identified in the Assumed Contracts Schedule, shall be deemed assumed in accordance with the provisions and

requirements of sections 365 and 1123 of the Bankruptcy Code and each of the Executory Contracts of the Debtors that are identified in the Newco Contracts Schedule shall be deemed assumed and assigned in accordance with the provisions and requirements of section 365 and 1123 of the Bankruptcy Code and the Confirmation Order shall constitute adequate assurance of the performance of such assumed contract.  A condition to the Effective Date is that the aggregate amount of the cure Claims to be paid by Debtors and/or the ~~Fairfield~~FFR Trust for the Executory Contracts listed on the Newco Contracts Schedule shall not exceed $200,000; Newco shall be responsible for all amounts of cure Claims for the Executory Contracts listed on the Newco Contracts Schedule in excess of $200,000.

## C.     Cure of Defaults of Assumed Executory Contracts

The monetary cure amounts owed under each Executory Contract to be assumed or assumed and assigned pursuant to the Plan, as set forth in the Newco Contracts Schedule and the Assumed Contracts Schedule, or as otherwise established by the Bankruptcy Court at the Confirmation Hearing, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash solely by the Debtors or the ~~Fairfield~~FFR Trust subject to a cap in the amount of $200,000 (Newco shall pay such cure Claims in excess of $200,000) with respect to the aggregate cure costs for the Executory Contracts listed in the Newco Contracts Schedule on the later of (i) the Effective Date (or as soon as practicable thereafter), (ii) as due in the ordinary course of business or (iii) on such other terms as the parties to such Executory Contracts may otherwise agree.  In the event of a dispute regarding: (1) the amount of any cure payments, (2) ability of Reorganized Fairfield, the ~~Fairfield~~FFR Trust or any other assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or assigned, or (3) any other matter pertaining to assumption, (y) the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made on later of: (A) the applicable date set forth in clause (i), (ii), or (iii) above, and (B) fifteen (15) days following the entry of a Final Order authorizing the assumption of the Executory Contracts, or (z) Newco with respect to the Newco Contracts Schedule and the ~~Fairfield~~FFR Trust with respect to the Assumed Contracts Schedule may remove such Executory Contract from such schedule in which event such Executory Contract shall be deemed rejected.

## D.     Effect of Assumption Assignment

Each Executory Contract assumed or assumed and assigned pursuant to this Article V (or pursuant to Bankruptcy Court order) shall remain in full force and effect and be fully enforceable by the applicable ~~Fairfield~~FFR Trust or Reorganized Fairfield in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment. To the extent applicable, all Executory Contracts assumed during the Chapter 11 Cases, including those assumed pursuant to ~~Section~~Article V.~~1.~~B, (i) shall be deemed modified such that the transactions contemplated by the Plan shall not be a "change of control," however such term may be defined in the relevant Executory Contract (ii) shall not constitute a breach of any anti-alienation provision thereof, and (iii) any required consent under any such contract or lease shall be deemed satisfied by the confirmation of the Plan.

## E. Rejection Damages Bar Date

Except to the extent another Bar Date applies pursuant to an order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under this Plan must be filed with the Voting and Claims Agent at the following applicable address:

> Kurtzman Carson Consultants LLC
> 2335 Alaska Avenue
> El Segundo, CA 90245
> Attn: Fairfield Claims Processing Center

and a copy served on counsel for Newco, the Debtors, counsel for the Committee, the Capmark Lenders, the Trust Oversight Committee and the Liquidating Trustee, within thirty (30) days from the entry of the Confirmation Order, or such Claim shall be forever barred and shall not be entitled to a Distribution or be enforceable against the Debtors, their Estates, the ~~Fairfield~~FFR Trust, the Liquidating Trustee, their successors, their assigns, the Liquidating Assets or the Reorganized Fairfield Assets. Any Claim arising from the rejection of an Executory Contract shall be treated as a Claim in the applicable Class 2.A Capmark Claims, and Classes 2.B, 2.C, 2.D, 2.E or 2.F (General Unsecured Claims). Nothing in this Plan extends or modifies any previously applicable Bar Date.

## F. Insurance Policies

To the extent any or all of the insurance policies set forth on ~~Exhibit~~Exhibits B or C to this Plan are considered to be Executory Contracts, then notwithstanding anything contained in this Plan to the contrary, this Plan shall constitute a motion to assume and assign the insurance policies set forth on Exhibit B to this Plan to the FFR Trust and a motion to assume and assign the insurance policies set forth on Exhibit C to this Plan to Reorganized Fairfield. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to Bankruptcy Code section 365(a) and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, the Estates and all parties in interest in these Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy set forth on Exhibit B or Exhibit C to this Plan. To the extent the Bankruptcy Court determines otherwise with respect to any insurance policy, the Debtors reserve the right to seek rejection of such insurance policy or other available relief. This Plan shall not affect contracts that have been assumed and assigned by order of the Bankruptcy Court prior to the Confirmation Date. For the avoidance of doubt, certain insurance policies (including any insurance policies that are not executory contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on Exhibit B and all rights of the Debtors thereunder and rights under any other insurance policies under which the Debtors may be beneficiaries (including the rights to make, amend, prosecute and benefit from claims), other than those insurance policies set forth on Exhibit C of this Plan, are retained and transferred to the FFR Trust pursuant to this Plan. For further avoidance of

doubt, the certain insurance policies (including any insurance policies that are not executory contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on Exhibit C and all rights of the Debtors thereunder (including the rights to make, amend, prosecute and benefit from claims) are retained by the Debtors and will be included in the Reorganized Fairfield Assets and handled accordingly pursuant to this Plan. To the extent that pending Claims that are covered by insurance exist as of the Effective Date, such coverageinsurance shall be used to reduce the amount of any Claims filed against the Debtors and such insurer may succeed to the Claim of such creditor by way of subrogation, but only to the extent, priority and class of such Claim, subject to any and all defenses and Causes of Action.

## ARTICLE VI.

### DISTRIBUTIONS

**A.**     **General Provisions Concerning Distributions**

At the written request of the FairfieldFFR Trust, any creditor holding multiple Allowed Claims shall provide the FairfieldFFR Trust a single address to which any Distributions shall be sent.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day.

The Debtors and the Liquidating Trustee may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Allowed Claim, any claims or Causes of Action, including Avoidance Actions, of any nature whatsoever that the Debtors and/or the Liquidating Trustee may have asserted against the claimant, but neither the failure to do so nor the allowance of any Disputed Claim hereunder shall constitute a waiver or release by the Debtors, Reorganized Fairfield or the FairfieldFFR Trust of any such claim or Cause of Action any may have against such claimant.

To the extent that any Allowed Claim entitled to a Distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

**B.**     **Disbursing Agent**

**1.**     **Liquidating Trustee as  Disbursing Agent**

The Liquidating Trustee shall be the Disbursing Agent, and the Disbursing Agent shall make all distributions under this Plan.

## 2. Alternative Disbursing Agent Qualification

No Person other than the Liquidating Trustee (or any successor Liquidating Trustee) shall be authorized by the Bankruptcy Court to serve as Disbursing Agent unless and until the Liquidating Trustee and the Trust Oversight Committee consent in writing to that Person serving as Disbursing Agent and that Person (i) executes and files a statement with the Bankruptcy Court agreeing to perform all of the duties of the Disbursing Agent under this Plan and (ii) consents to the jurisdiction of the Bankruptcy Court in respect to all matters relating to the performance of his ~~or her~~ duties as the Disbursing Agent under this Plan or order of the Bankruptcy Court.

## C. Time and Manner of Distributions

The Liquidating Trustee shall make ~~initial distributions~~the Effective Date Distributions under the Plan not to exceed the Distributable Cash on account of Allowed Claims not later than 30 days after the Effective Date, except as otherwise ordered by the Bankruptcy Court. The Liquidating Trustee shall have the power, subject to Trust Oversight Committee consent, to make interim distributions to Holders of Allowed Capmark Claims and Allowed General Unsecured Claims if the Liquidating Trustee determines that such interim distributions are warranted and economical; provided that the Liquidating Trustee shall make interim distributions at least annually. Notwithstanding the foregoing, the Liquidating Trustee shall not make distributions that would exceed the amount of Distributable Cash. If the Liquidating Trustee determines to make interim distributions to Holders of Allowed Claims, the Liquidating Trustee will determine the amount to be distributed by taking into account such factors as ongoing expenses and costs, taxes and reserves necessary to provide for the resolution of Disputed Claims. Amounts withheld will be placed in an interest-bearing account, which interest shall be used by the Liquidating Trustee to fund ongoing expenses and costs relating to such reserves, including, without limitation, taxes in respect of Disputed Claims, if any.

At the option of the Liquidating Trustee, any distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer or by ACH. Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary). With the exception of distributions to Holders of Allowed Convenience Class Claims, any distribution of less than $25.00 will be considered de minimis, and Holders of Allowed Claims that are entitled to any distribution of less than $25.00 may not receive any distribution unless and until the aggregate of such distributions exceeds $25.00. To the extent that the aggregate of such distributions never exceeds $25.00, such funds shall remain with and vest in the ~~Fairfield~~FFR Trust for distribution to other Holders of Allowed Claims.

## D. Delivery of Distributions

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be made by the Disbursing Agent (i) at the addresses set forth on the Proofs of Claim filed by such Holder (or at the last known addresses of such Holder if no motion requesting payment or Proof of Claim is filed or the Debtors, the Liquidating Trustee or the

Voting and Claims Agent have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Liquidating Trustee has not received a written notice of a change of address.

### E.    Undeliverable Distributions

If a distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of a Claim shall be made unless and until the Liquidating Trustee is notified of the then-current address of such Holder, at which time (subject to the terms of the last sentence of this Article VI.E) all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Liquidating Trustee until such distributions are claimed. All funds or other undeliverable distributions returned to the Liquidating Trustee in respect of any Claim and not claimed within four (4) months of return shall be forfeited and remain with and vest in the ~~Fairfield~~FFR Trust for distribution to other Holders of Allowed Claims. Any unclaimed funds held by the ~~Fairfield~~FFR Trust at the time the Final Decree is entered may be donated to a charity selected by the Liquidating Trustee and the Trust Oversight Committee, provided that such funds do not exceed $10,000, without further order of the Court.

### F.    Claims Administration Responsibility

#### 1.    Reservation of Rights to Object to Claims

Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan, or otherwise becomes an Allowed Claim prior to or after the Effective Date, the ~~Fairfield~~FFR Trust and the Liquidating Trustee (on behalf of the Estates) reserve any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including, without limitation, any and all objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, General Unsecured Claims, Intercompany Claims, Interest Related Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.

#### 2.    Objections to Claims

Prior to the Effective Date, the Debtors or any other party that filed such Claim objection shall be responsible for pursuing any objection to the allowance of any Claim. From and after the Effective Date, the Liquidating Trustee will retain responsibility for administering, disputing, objecting to, compromising or otherwise resolving and making Distributions, if any, with respect to all Claims subject to the other provisions of the Plan. Unless otherwise provided in this Plan or by order of the Bankruptcy Court, any objections to Claims by the Liquidating Trustee will be filed and served not later than 180 days after the Effective Date, provided that the Liquidating Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by filing a motion with the Bankruptcy Court, based upon a reasonable exercise of his ~~or her~~ business judgment. A motion seeking to extend the deadline to object to any Claim shall

not be deemed an amendment to this Plan. The Liquidating Trustee shall be substituted for the Debtors with respect to any objections pending as of the Effective Date.

### 3. Filing of Objections

An objection to a Claim or Interest shall be deemed properly served on the Holder of such Claim or Interest if the Debtors or Liquidating Trustee effects service in accordance with Bankruptcy Rule 3007.

### 4. Determination of Claims

Except as otherwise agreed by the Liquidating Trustee, any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases may be determined and (so long as such determination has become a Final Order) liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law, or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtors or the Liquidating Trustee on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Plan. Nothing contained in this Article VI.F shall constitute or be deemed a waiver of any claim, right or Cause of Action that the Debtors or the Liquidating Trustee may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under 28 U.S.C. § 157.

## G. Procedures for Treating and Resolving Disputed and Contingent Claims

### 1. No Distributions Pending Allowance

No payments or Distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled, withdrawn, determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

### 2. Guaranty Claims Protocol

All Holders of Guaranty Claims as determined under the Guaranty Claims Protocol shall have an Allowed General Unsecured Claim in the amount determined pursuant to the Guaranty Claims Protocol.

### 3. Claim Estimation

The Debtors or the Liquidating Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code section 502(c); provided, however, that the Bankruptcy Court shall determine (i) whether such Disputed Claim is subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any.

## H.    Setoffs and Recoupment

The Liquidating Trustee may, pursuant to Sections 502(d), 553 and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to this Plan, any claims or Causes of Action of any nature whatsoever, including Avoidance Actions, the Debtors or their Estates may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors of any setoff or recoupment the Debtors may have against the Holder of such Claim, nor of any other claim or Cause of Action.

## I.    Allowance and Disallowance of Claims Subject to Section 502 of the Bankruptcy Code

Allowance and disallowance of Claims shall be in all respects subject to the provisions of section 502 of the Bankruptcy Code, including, without limitation, subsections (b), (d), (e), (g), (h) and (i) thereof.

## J.    Cancellation of Instruments and Agreements

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, stock or agreements evidencing, giving rise to or governing any Claim or Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule; the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures or agreements shall be discharged and the Holders thereof shall have no rights against the Debtors, the Liquidating Trustee, the Estates or the FairfieldFFR Trust; and such promissory notes, share certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the distributions provided for in this Plan.

## K.    No Interest on Claims

Unless otherwise specifically provided for in this Plan, the Confirmation Order or a post-petition agreement in writing between the Debtors and a Holder of a Claim that has been approved by an order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

## L.    Withholding Taxes

The Liquidating Trustee shall be entitled to deduct any federal, state or local withholding taxes from any payments under this Plan. As a condition to making any distribution under this Plan, the Liquidating Trustee may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and

certification as the Liquidating Trustee may deem necessary to comply with applicable tax reporting and withholding laws.

**M.    Reports**

From the Effective Date, until a Final Decree is entered, the Liquidating Trustee shall submit quarterly reports to the United States Trustee setting forth all receipts and disbursements of the ~~Fairfield~~FFR Trust as required by the United States Trustee guidelines.

## ARTICLE VII.

## EFFECT OF CONFIRMATION

**A.    Vesting of Assets**

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Reorganized Fairfield Assets shall be released from the custody and jurisdiction of the Bankruptcy Court, and all of Reorganized Fairfield Assets shall vest in Reorganized Fairfield free and clear of all Claims, Liens, encumbrances, charges and other interests, including, without limitation, any Tax liens or Claims, except as provided in the Plan. From and after the Effective Date, Reorganized Fairfield may operate its business and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, subject to the terms and conditions of the Plan.

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Liquidating Assets shall be released from the custody and jurisdiction of the Bankruptcy Court, and all of the Liquidating Assets shall vest in the ~~Fairfield~~FFR Trust free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided in the Plan. From and after the Effective Date, the ~~Fairfield~~FFR Trust may operate its business and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, subject to the terms and conditions of the Plan and the Liquidating Trust Agreement.

**B.    Binding Effect**

On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, a Debtor and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not such Holder is entitled to a Distribution under the Plan.

**C.    Discharge of Claims and Termination of Interests**

Except as provided in the Plan, the rights afforded in and the payments and Distributions to be made under the Plan shall terminate all Interests and discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Debtors, or their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors

and Interests shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims and Interests shall be precluded and enjoined from asserting against Reorganized Fairfield, Newco or the Fairfield FFR Trust, their successors or assignees or any of their assets or properties, any other or further Claim or Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder has filed a Proof of Claim or proof of interest and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.

## D.    Injunction

Except as otherwise expressly provided in this Plan or in the Confirmation Order, and except in connection with the enforcement of the terms of this Plan or any documents provided for or contemplated in this Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date are permanently enjoined from:  (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against any Protected Party  or any property of any Protected Party  with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree or order against any Protected Party  or any property of any Protected Party  with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party  or any property of any Protected Party with respect to any such Claim or Interest; (d) effecting, directly or indirectly, any setoff or recoupment of any kind against any obligation due to any Protected Party  or any property of any Protected Party  with respect to any such Claim or Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan with respect to such Claim or Interest.   Nothing contained in this Article VII.D of this Plan shall prohibit the Holder of a Claim or Interest with respect to which a Proof of Claim was timely filed from litigating its right to seek to have such Claim or Interest declared an Allowed Claim or Interest and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Interest of any of the obligations of the Debtors, the Liquidating Trustee or the Fairfield FFR Trust under this Plan.   The Confirmation Order shall also constitute an injunction enjoining any Person from enforcing or attempting to enforce any Causes of Action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article VI.L of this Plan have been made or are not yet due under Article VI.L of this Plan.

## E.    Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362  of the Bankruptcy Code, this Plan or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the Fairfield FFR Trust.

## F.    Exculpation and Releases

None of the Protected Parties shall have or incur any liability for, and each Protected Party is hereby released from, any claim, Cause of Action, including Avoidance Actions, or liability to any other Protected Party, to any Holder of a Claim or an Interest only in their capacity as such, for any act or omission taken in connection with, arising from or relating to the Chapter 11 Cases, the formulation, negotiation and/or pursuit of confirmation of this Plan, the consummation of this Plan, the administration of this Plan and/or the property to be distributed under this Plan, except for claims, Causes of Action or liabilities arising from the Tax Election Claim, the gross negligence, willful misconduct or fraud of any Protected Party, in each case subject to determination of such by Final Order of a court of competent jurisdiction and provided that any Protected Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan and such reasonable reliance shall form an absolute defense to any such claim, cause of action or liability.  Without limiting the generality of the foregoing, each Protected Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code.

On the Effective Date, the Debtors, the ~~Fairfield~~FFR Trust, the Liquidating Trustee, Reorganized Fairfield, the Committee and each of its members only in their capacity as such, shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all claims and Causes of Action, including all Avoidance Actions, which they have or may have against Capmark Finance and the Capmark Lenders, and their respective directors, officers, shareholders, agents, employees, attorneys, professionals and property in connection with, related to, or arising under the Capmark Facility.

Each party to which this section applies shall be deemed to have granted the releases set forth in this section notwithstanding that it may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such party expressly waives any and all rights that it may have under any statute or common law principle, which would limit the effect of such releases to those claims or Causes of Action, including Avoidance Actions, actually known or suspected to exist at the time of execution of the release.

Notwithstanding anything set forth above or elsewhere in this Plan, nothing in this Plan discharges, releases, precludes, or enjoins:  (i) any environmental liability to any governmental unit that is not a Claim; (ii) any environmental Claim of any governmental unit arising on or after the Confirmation Date; (iii) any environmental liability to any governmental unit that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any environmental liability to the United States on the part of any Person other than the Debtor or Reorganized Debtor.

## G.    Reservation of Causes of Action/Reservation of Rights

Nothing contained in the Plan shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action or Avoidance Actions that the Debtors or their Estates, Reorganized Fairfield or the ~~Fairfield~~FFR Trust may have or may choose to assert against any Person.

## H. Avoidance Actions/Objections

Other than any releases granted herein, by the Confirmation Order and by Final Order of the Bankruptcy Court, as applicable, from and after the Effective Date, the Liquidating Trustee shall have the right to prosecute any and all avoidance or equitable subordination actions, recovery causes of action and objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or their Estates.

## ARTICLE VIII.

## CONDITIONS PRECEDENT

## A. Conditions Precedent to Effective Date

This Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full in accordance with the provisions specified below:

1. The Confirmation Order shall be in form and substance acceptable to the Debtors, the Capmark Lenders, the Committee and the New Money Investors in their absolute discretion;

2. The Confirmation Order shall have been entered by the Bankruptcy Court and shall not be subject to any stay of effectiveness; the Confirmation Date shall have occurred and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending;

3. The appointment of the Liquidating Trustee shall have been approved by order of the Bankruptcy Court;

4. The Liquidating Trust Agreement shall have been executed and all steps necessary to establish the ~~Fairfield~~FFR Trust in accordance with and pursuant to the terms of the Plan shall have occurred in a manner satisfactory to the Committee and the Capmark Lenders;

5. Reorganized Fairfield's reasonably projected expenses do not exceed its reasonably projected revenues;

6. The aggregate amount of the cure Claims for the Executory Contracts included in the Newco Contracts Schedule to be paid by the Debtors ~~of~~or the ~~Fairfield~~FFR Trust shall not exceed $200,000;

7. A finding by the Bankruptcy Court that the value of the Liquidating Assets shall be less than the adjusted tax basis of the Liquidating Assets, all as determined as of the Effective Date for federal income tax purposes;

8. The Asset Management Agreement ~~and the Administration Agreement~~ shall have been entered into and executed to become effective as of the Effective Date; and

9.     All necessary documents relating to the New Money Investment (including the Operating Agreement, any necessary employment agreements and the Asset Purchase Agreement) shall be ~~executed~~in form and substance acceptable to the New Money Investors, the Committee and the Capmark Lenders and shall be executed, and the Closing Payment shall have been made on or prior to the Effective Date.

**B.     Revocation, Withdrawal or Non-Consummation of Plan**

If, after the Confirmation Order is entered, each of the conditions precedent to the Effective Date have not been satisfied or duly waived on or by ninety (90) days after the Confirmation Date, then upon motion by the Debtors, the Capmark Lenders or the Committee, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions precedent to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  A condition precedent to the Effective Date may only be waived by a writing executed by both the Debtors and the Committee.  If the Confirmation Order is vacated pursuant to this Article VIII.B, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors, (iii) prejudice in any manner the rights of the Debtors in the Chapter 11 Cases, or (iv) constitute a release, indemnification or exculpation by the Debtors, the Estates or any other party pursuant to this Plan.

**ARTICLE IX.**

**ADMINISTRATIVE PROVISIONS**

**A.     Retention of Jurisdiction by the Bankruptcy Court**

This Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter arising out of or related to the Chapter 11 Cases and this Plan, including, without limitation, the following:

1.     all matters relating to the assumption or rejection or the assumption and assignment of Executory Contracts, or Claims or disputes relating thereto;

2.     all matters relating to the ownership of a Claim or Interest;

3.     all matters relating to the distribution to holders of Allowed Claims and to the determination of Claims;

4.     any and all matters involving the Liquidating Trustee and/or the ~~Fairfield~~FFR Trust and the Trust Oversight Committee;

5.     all matters relating to or arising in connection with the allowance or estimation of Claims filed, both before and after the Confirmation Date, including any objections to the classification of any Claim;

6.     to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

7.     all matters relating to the construction and implementation of this Plan and the provisions thereof, and to hear and determine all requests for orders in aid of execution, implementation or consummation of this Plan;

8.     all matters relating to disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

9.     to consider any modifications of this Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

10.     all applications for allowance of compensation and reimbursement of Professional Fee Claims under Bankruptcy Code sections 328, 330, 331, 503(b), 1103 and 1129(a)(4);

11.     to hear and determine all motions requesting allowance of an Administrative Claim;

12.     to determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto;

13.     all Causes of Action, Avoidance Actions and other suits and adversary proceedings to recover assets for the ~~Fairfield~~FFR Trust, as successor-in-interest to any of the Debtors and property of the Estates, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

14.     all matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

15.     any other matter not inconsistent with the Bankruptcy Code;

16.     all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

17.     to enter the Final Decree closing the Chapter 11 Cases; and

18.     to enforce all orders previously entered by the Bankruptcy Court.

**B.      Payment of Statutory Fees**

All fees  through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date to the extent that an invoice for such fees has been provided to the Debtors prior to the Effective Date.  All fees invoiced after the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid by the Liquidating Trustee out of the Liquidating Assets.

**C.      Headings**

The headings of the articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

**D.      Binding Effect of Plan**

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code on and after the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates, the ~~Fairfield~~FFR Trust and their respective successors or assigns, whether or not the Claim or Interest of such Holders is impaired under this Plan and whether or not such Holder has accepted this Plan.  The rights, benefits and obligations of any entity named or referred to in this Plan, whose actions may be required to effectuate the terms of this Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity (including, without limitation, the Liquidating Trustee and any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

**E.      Final Order**

Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtors after consultation with the Committee and Capmark Finance and upon written notice to the Bankruptcy Court, provided that the Effective Date shall occur within 48 hours of the effectiveness of such waiver.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

**F.      Withholding and Reporting Requirements**

In connection with this Plan and all instruments issued in connection herewith and distributions hereunder, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution.

Any party issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

## G. Tax Exemption and Expedited Tax Determination

Pursuant to section 1146 of the Bankruptcy Code, any transfers from a Debtor or the ~~Fairfield~~FFR Trust or any subsidiary thereof to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' or the ~~Fairfield~~FFR Trust's real or personal property, including, without limitation, the ~~Projects~~Project Level Entities, or the issuance, transfer or exchange of any security under this Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by this Plan, including, without limitation, any transfers to the ~~Fairfield~~FFR Trust or by the Liquidating Trustee of the Debtors' or the ~~Fairfield~~FFR Trust's property in implementation of or as contemplated by this Plan (including, without limitation, any subsequent transfers of property by the Liquidating Trustee), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

The Debtors and Reorganized Fairfield are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, on or behalf of, the Debtors for any or all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

## H. Governing Law

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless specifically stated, the rights, duties and obligations arising under this Plan, any agreements, documents and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control), and, with respect to the Debtors incorporated or organized in Delaware and the ~~Fairfield~~FFR Trust, corporate and limited liability company governance matters shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles.

## I. Continuing Corporate Existence and Corporate Action

Subject to the other provisions of this Plan, after the Effective Date, each Debtor shall continue to exist in accordance with the law in the jurisdiction in which it is incorporated or organized and pursuant to its certificate of incorporation and bylaws or other applicable organizational documents in effect prior to the Effective Date, except to the extent such

certificate of incorporation and bylaws or other applicable organizational documents are amended or restated under the Plan.

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the directors of a Debtor or Reorganized Fairfield, as the case may be, shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of the State of Delaware, without any requirement of further action by the directors of the Debtors or Reorganized Fairfield. On the Effective Date, or as soon thereafter as is practicable Reorganized Fairfield shall, if required, file their amended articles of organization or certificates of incorporation, as the case may be, with the Secretary of State of Delaware, in accordance with the applicable general business law of such jurisdiction.

## J. Plan Supplement

The Plan Supplement and the documents contained therein shall be in form, scope and substance satisfactory to the Debtors, the Committee and the Capmark Lenders (and, solely with respect to the New Money Investment and the New Money Definitive Documents (including, without limitation, the assumed liabilities schedule to the Asset Purchase Agreement), the New Money Investors) and shall be filed with the Bankruptcy Court no later than ten (10) Business Days before the deadline for voting to accept or reject the Plan, provided that the documents included therein may thereafter be amended and supplemented prior to execution, so long as no such amendment or supplement materially affects the rights of holders of Claims or Interests. The Plan Supplement and the documents contained therein are incorporated into and made a part of the Plan as if set forth in full herein.

## K. Severability

After the Effective Date, should the Bankruptcy Court or any other court of competent jurisdiction determine that any provision in this Plan is either illegal on its face or illegal as applied to any Claim, such provisions shall be unenforceable either as to all Holders of Claims or as to the Holder of such Claim as to which the provision is illegal, respectively. Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## L. Revocation

The Debtors reserve the right to revoke and withdraw this Plan prior to the Confirmation Date. If the Debtors revoke or withdraw this Plan, then this Plan shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, the Committee or any other Person or to prejudice in any manner the rights of the Debtors, the Committee or any Person in any further proceedings involving the Debtors, or be deemed an admission by the Debtors and/or the Committee.

## M. Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## N.      Construction

The rules of construction as set forth in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.  All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

## O.      Conflict

In the event and to the extent any provision of this Plan is inconsistent with any provision of the Disclosure Statement, the provisions of this Plan shall control and take precedence.  The terms of the Confirmation Order shall govern in the event of any inconsistency with the Plan or the summary of the Plan set forth in the Disclosure Statement.

## P.      Amendments and Modifications

The Debtors, the Capmark Lenders, the Committee and the New Money Investors jointly may agree to alter, amend or modify this Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing.  After the Confirmation Date and prior to "substantial consummation" (as such term is defined in section 1101(2)) of the Bankruptcy Code of this Plan, any Debtor, the Committee or the Liquidating Trustee may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan, by the filing of a motion on notice to those parties set forth in Bankruptcy Rule 2002, and the solicitation of all Creditors and other parties-in-interest shall not be required.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Interests.

## Q.      Notices

Any notices required under this Plan or any notices or requests of the Debtors by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

> To the Debtors:
>
> Fairfield Residential LLC
> c/o Andrew Hinkelman
> 5510 Morehouse Drive, Suite 200
> San Diego, California 92121
> With a copy to:
>
> Richards, Layton & Finger, P.A.
> Attn:  Daniel J. DeFranceschi, Esq.

One Rodney Square
920 North King Street
Wilmington, DE  19801

Paul, Hastings, Janofsky & Walker, LLP
Attn:  Richard A. Chesley, Esq. &
Attn:  Kimberly D. Newmark, Esq.
191 N. Wacker Dr., Suite 3000
Chicago, IL  60606


If to To the Liquidating Trustee:
FTI Consulting, Inc.
Attn:  Andrew Hinkelman
One Front Street, Suite 1600
San Francisco, CA 94111

With a copy to:

Morrison and Foerster LLP
Attn:  Brett H. Miller, Esq. &
Attn:  Melissa A. Hager, Esq.
1290 Avenue of the Americas
New York, NY 10104

**R.  Filing of Additional Documents**

On or before substantial consummation of this Plan, and without the need for any further order or authority, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**S.  Direction to a Party**

From and after the Effective Date, the Debtors or the Liquidating Trustee may apply to the Bankruptcy Court for the entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by this Plan, and to perform any other act (including the satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of this Plan.

**T.      Successors and Assigns**

The rights, duties and obligations of any Person named or referred to in this Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

**U.      Waiver of ~~Subordination~~<ins>Subrogation</ins>**

Notwithstanding any provision of this Plan to the contrary, all Holders of Claims shall be deemed to have waived any and all ~~contractual subordination~~<ins>subrogation</ins> rights which they may have with respect to the distributions made pursuant to this Plan, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving distributions under this Plan.

Dated: ~~March~~June __, 2010
Wilmington, Delaware

Respectfully submitted,

Fairfield Residential LLC

By:    /s/ _____
Its: _____

FF Development, Inc.

By:    /s/ _____
Its: _____

FF Development L.P.

By:    /s/ _____
Its: _____

FF Properties, Inc.

By:    /s/ _____
Its: _____

FF Properties L.P.

By:    /s/ _____
Its: _____

Fairview Residential LLC

By:    /s/ _____
Its: _____

FF Realty LLC

By: /s/ _____
Its: _____


Fairfield Financial A LLC


By: /s/ _____
Its: _____


FF Investments LLC

By: /s/ _____
Its: _____


Fairview Investments LLC

By: /s/ _____
Its: _____


Fairfield Affordable Housing LLC

By: /s/ _____
Its: _____


Fairview Homes, Inc.

By: /s/ _____
Its: _____


Fairview Residential L.P.

By: /s/ _____
Its: _____

Fairfield Residential WA LLC

By:   /s/ _____

Its: _____


Fairfield Residential CA L.P.

By:   /s/ _____

Its: _____

Prepared by:

**RICHARDS, LAYTON & FINGER, P.A**.
Daniel J. DeFranceschi (DE 2732)
Paul N. Heath (DE 3704)
One Rodney Square
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

**PAUL, HASTINGS, JANOFSKY &
WALKER LLP**
Richard A. Chesley (Ill. Bar No. 6240877)
Kimberly D. Newmarch (DE 4340)
191 North Wacker Drive, 30th Floor
Chicago, Illinois  60606
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100
**Counsel for the Debtors and Debtors in Possession**

**Exhibit A**
**Causes of Action**

[None](None)

LEGAL_US_W # ~~61654177.18~~ 61654177.58

**Exhibit B**
**Insurance Polices for FFR Trust**

# Exhibit C
## Insurance Policies for Reorganized Fairfield

**Exhibit D**
**Project Level Entities**