## EXHIBIT C

## Revised Liquidating Trust Agreement

# LIQUIDATING TRUST AGREEMENT

by and among Fairfield Residential LLC

and certain subsidiaries and

Andrew Hinkelman as Liquidating Trustee

Dated _____, 2010

ARTICLE I      DEFINITIONS.................................................................................. 2

ARTICLE II      ESTABLISHMENT OF THE FFR TRUST AND CERTAIN
DEFINITIONS.................................................................................. 4

2.1      Transfer of Property to Liquidating Trustee ......................................... 4

2.2      Title to Liquidating Assets.................................................................. 4

2.3      Causes of Action ................................................................................ 5

2.4      Assignment and Assumption of Claims................................................ 5

2.5      Valuation of Liquidating Assets .......................................................... 5

2.6      Appointment of the Liquidating Trustee............................................... 6

2.7      Trust Oversight Committee.................................................................. 6

ARTICLE III      LIQUIDATING TRUST INTERESTS............................................. 8

3.1      Identification of Beneficiaries............................................................. 8

3.2      No Limitation on Transferability ........................................................ 8

ARTICLE IV      PURPOSE, AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND
DUTIES ........................................................................................... 9

4.1      Purpose of the FFR Trust.................................................................... 9

4.2      Authority of Liquidating Trustee ........................................................ 9

4.3      Limitation of Liquidating Trustee's Authority ................................... 12

4.4      Books and Records .......................................................................... 12

4.5      Additional Powers........................................................................... 13

4.6      Wind-down Reserve Account............................................................ 13

4.7      Funding of the Plan ......................................................................... 14

4.8      Application of Liquidating Assets and Other Property........................ 14

4.9      Delivery of Distributions; Withholding ............................................ 15

4.10      Undeliverable Distributions.............................................................. 16

4.11      Fractional Dollars............................................................................ 16

4.12      De Minimis Distributions ................................................................. 16

4.13      Deposit into Reserve ....................................................................... 16

4.14      Tax Treatment of Distribution Reserve Account................................. 17

4.15      Distributions After Allowance.......................................................... 17

4.16      No Partial Distributions ................................................................... 17

4.17      Duties of the Liquidating Trustee ..................................................... 18

4.18      Segregation of First Tier Subsidiaries from Second Tier Subsidiaries............... 18

| | | | |
|---|---|---|---|
| | 4.19 | Compliance with Laws | 19 |
| ARTICLE V | | THE LIQUIDATING TRUSTEE AND TRUST OVERSIGHT COMMITTEE | 19 |
| | 5.1 | Generally | 19 |
| | 5.2 | No Recourse to Liquidating Trustee | 19 |
| | 5.3 | Liability of Liquidating Trustee; Indemnification | 19 |
| | 5.4 | Standard of Care; Indemnification; Exculpation | 20 |
| | 5.5 | Action Upon Instructions | 20 |
| | 5.6 | Reliance by Liquidating Trustee or Trust Oversight Committee and its Members | 21 |
| | 5.7 | Investment and Safekeeping of Liquidating Assets | 21 |
| | 5.8 | Authorization to Expend Liquidating Assets | 21 |
| | 5.9 | Expense Reimbursement and Indemnification | 22 |
| | 5.10 | Compensation | 22 |
| | 5.11 | No Bond | 22 |
| | 5.12 | Confidentiality | 22 |
| ARTICLE VI | | SUCCESSOR TRUSTEE | 22 |
| | 6.1 | Removal | 22 |
| | 6.2 | Resignation | 23 |
| | 6.3 | Appointment of Successor upon Removal, Resignation, or Incapacity | 23 |
| | 6.4 | Acceptance of Appointment by Successor Liquidating Trustee | 23 |
| ARTICLE VII | | REPORTS TO BENEFICIARIES | 23 |
| | 7.1 | Securities Laws, Tax and Other Reports to Beneficiaries | 23 |
| ARTICLE VIII | | TERMINATION OF FFR TRUST AND TRUSTEE | 25 |
| | 8.1 | Termination of FFR Trust | 25 |
| | 8.2 | Term of Liquidating Trustee | 25 |
| ARTICLE IX | | AMENDMENT AND WAIVER | 25 |
| | 9.1 | Amendment and Waiver | 25 |
| ARTICLE X | | MISCELLANEOUS PROVISIONS | 25 |
| | 10.1 | Preservation of Privilege and Defenses | 25 |
| | 10.2 | Cooperation | 26 |
| | 10.3 | Laws as to Construction/Governing Law | 26 |
| | 10.4 | Counterparts | 26 |

10.5    Headings ............................................................................................ 26

10.6    Interpretative Provisions ................................................................. 26

10.7    Severability ...................................................................................... 26

10.8    Notices ............................................................................................. 27

10.9    Relationship to the Plan .................................................................. 27

10.10   Successors and Permitted Assigns .................................................. 27

10.11   No Suits by Claimholders ................................................................ 27

10.12   Irrevocability .................................................................................... 28

10.13   Trust Continuance ............................................................................ 28

10.14   Enforcement and Administration ..................................................... 28

10.15   Submission to Jurisdiction; Appointment of Agent for Service of Process ......... 28

10.16   Reasonable Best Efforts; Further Assurances .................................. 29

TAX APPENDIX: ALLOCATIONS OF PROFITS AND LOSSES

<u>LIQUIDATING TRUST AGREEMENT</u>

THIS LIQUIDATING TRUST AGREEMENT (the "<u>Liquidating Trust Agreement</u>"), dated as of _____, 2010, is entered into and executed by and among Fairfield Residential LLC ("<u>Fairfield</u>"), a Delaware limited liability company, the Debtors (as defined below), as settlors, and Andrew Hinkelman, solely in his capacity as Liquidating Trustee and any of his successors (the "<u>Liquidating Trustee</u>"). All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan (defined below).

WITNESSETH

WHEREAS, this Liquidating Trust Agreement is executed in connection with THE DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE filed on June 14, 2010 (as amended, modified or supplemented, the "<u>Plan</u>"), which Plan provides for the establishment of the FFR Trust created by this Liquidating Trust Agreement, to resolve, liquidate and realize upon the Liquidating Assets, Causes of Action, Avoidance Actions and such other claims and property, as successor to and representative of the Estates of the Debtors, for the benefit of the Beneficiaries (as defined below), in accordance with the terms of the Plan;

WHEREAS, the FFR Trust is a Delaware statutory trust and is created pursuant to, and to effectuate, the Plan;

WHEREAS, the FFR Trust is created on behalf of, and for the sole benefit of, the Beneficiaries;

WHEREAS, the FFR Trust is established for the sole purpose of (a) liquidating the Estates and the Liquidating Assets, (b) investigating, litigating and/or settling Causes of Action and Avoidance Actions, (c) reviewing, reconciling and objecting to Disputed Claims, (d) selling, liquidating and/or recovering any and all Assets (as defined below) of the Estates and the Liquidating Assets, (e) making distributions of any Liquidating Assets and the proceeds thereof to the Beneficiaries, as set forth in the Plan, and (f) engaging in such other acts as are or may be customary for such a trust entity;

WHEREAS, the FFR Trust is intended solely for tax purposes to be treated as a partnership, and not as a "liquidating trust" pursuant to Treasury Regulations § 301.7701-4(d);

WHEREAS, the Liquidating Trustee's activities, powers and duties are those determined to be reasonably necessary to, and consistent with, accomplishment of these purposes;

WHEREAS, as set forth in the Plan, this Liquidating Trust Agreement is further intended to set forth (a) the terms and conditions upon which the FFR Trust will be administered by the Liquidating Trustee for the benefit of the Beneficiaries, (b) the rights and remedies of the Liquidating Trustee, on behalf of the Beneficiaries, with respect to the FFR Trust, and (c) certain other matters related thereto;

WHEREAS, under the terms of the Plan and the Confirmation Order, effective as of the Effective Date of the Plan, the Debtors' Estates shall be deemed to have irrevocably granted, transferred, conveyed, and delivered to the Liquidating Trustee, on behalf of, and for the benefit of, the Beneficiaries, control of, and all the rights, title and interests in and to, the Liquidating Assets, with no reversionary interest therein in favor of the Debtors;

WHEREAS, on [_____], 2010, the Bankruptcy Court entered the Confirmation Order; and

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Debtors and the Liquidating Trustee agree as follows:

## ARTICLE I

## DEFINITIONS

(a)    Assets means all assets of each of the Debtors, of any nature whatsoever, including, without limitation, all property of the Estates under and pursuant to Bankruptcy Code §541, Cash, Causes of Action, including Avoidance Actions, rights, interests and property, real and personal, tangible and intangible.

(b)    Bankruptcy Court means the United States Bankruptcy Court for the District of Delaware.

(c)    Beneficiaries (each a Beneficiary) means Holders of Allowed Claims (excluding Holders of Allowed Class 4.A Claims, Allowed Class 4.B Claims, Allowed Class 4.C Claims, Allowed Class 4.D Claims and Allowed Class 4.E Claims), to the extent that such Holders of Allowed Claims are entitled to share in Trust Recoveries, in accordance with the terms of the Plan.

(d)    Beneficiary List has the meaning set forth in Section 3.1 herein.

(e)    Distribution Date means a date on which the Liquidating Trustee shall make Distributions under the Plan on account of Allowed Claims.

(f)    Distribution Reserve Account means, individually and collectively, one or more bank and/or other investment accounts established and maintained by the Liquidating Trustee, into which the Liquidating Trustee shall, in accordance with Section 4.10 and Section 4.13 of this Liquidating Trust Agreement, deposit undeliverable distributions and Trust Recoveries that are not then distributable to a Beneficiary and shall be held by the Liquidating Trustee, pending a final determination as to Allowance of such Disputed Claim.

(g)    FFR Trust means the Delaware statutory trust established by this Liquidating Trust Agreement.

2

(h)     FFR Trust Entities means FFR Trust, together with such entities owned directly or indirectly by the FFR Trust.

(i)     I.R.C. means the Internal Revenue Code of 1986, as amended.

(j)     Liquidating Debtors means all of the Debtors except FF Properties L.P.

(k)     Liquidating Trust Interest has the meaning set forth in Section 2.2 herein.

(l)     Member means members, designees, professionals, counsel, financial advisors or any duly designated agents or representatives of the Trust Oversight Committee (in their capacity as such).

(m)     Net Trust Recoveries means the amount by which the aggregate amount of Trust Recoveries exceeds the aggregate amount of Trust Expenses.

(n)     Servicer has the meaning set forth in the Asset Management Agreement.

(o)     Supermajority Vote has the meaning set forth in Section 2.7(d) herein.

(p)     Transferee has the meaning set forth in Section 3.2 herein.

(q)     Trust Expenses means all reasonable costs, expenses and fees paid or incurred or to be incurred (as estimated by the Liquidating Trustee in consultation with the Trust Oversight Committee) by the Liquidating Trustee in the administration of the Liquidating Trustee's duties or as contemplated pursuant to this Liquidating Trust Agreement, including, without limitation, the compensation paid to and expenses incurred or to be incurred (as estimated by the Liquidating Trustee in consultation with the Trust Oversight Committee) by the Liquidating Trustee, the expenses incurred or to be incurred by Members of the Trust Oversight Committee (as estimated by the Trust Oversight Committee), the fees and expenses of the Liquidating Trustee's professionals and the fees and expenses of any expert witnesses or other service providers, counsel and other professionals directly retained by the Trust Oversight Committee (separate from the Liquidating Trustee's professionals), all as provided for in this Liquidating Trust Agreement.

(r)     Trust Recoveries means any and all proceeds received by the FFR Trust arising from Liquidating Assets, including, without limitation, (a) the prosecution to, and collection of, a final judgment with respect to a Cause of Action or Avoidance Action, and (b) the settlement or other compromise of a Cause of Action or Avoidance Action.

(s)     Trustee Employment Agreement has the meaning set forth in Section 5.10 herein.

3

(t)     Year-End Statements has the meaning set forth in Section 4.4(1) herein.

## ARTICLE II

## ESTABLISHMENT OF THE FFR TRUST AND CERTAIN DEFINITIONS

2.1     Transfer of Property to Liquidating Trustee.  In consideration of the confirmation of the Plan under the Bankruptcy Code, the Debtors, the Committee and the Liquidating Trustee have executed this Liquidating Trust Agreement and, effective on the Effective Date of the Plan, the Liquidating Trustee shall, in accordance with all applicable law, receive all of the Liquidating Assets.  Within the respective times determined by the Liquidating Trustee as necessary or appropriate under the circumstances (including with respect to the pursuit of Causes of Action, Avoidance Actions, or Claims in the name of the Estates), the Liquidating Debtors shall be dissolved without any further action by the former stockholders, officers, or directors of the Debtors, provided however, that the Liquidating Trustee shall not be responsible for the dissolution of Fairfield.  The Liquidating Trustee may, in his or her discretion, file all necessary certificates of dissolution and take any other actions necessary or appropriate to reflect the dissolutions of each of the Liquidating Debtors (except that the Responsible Person appointed under the Plan for Fairfield shall be responsible for dissolving Fairfield) under the state law where the respective Liquidating Debtors were incorporated.  All applicable regulatory or governmental agencies shall accept any certificates of dissolution or other papers filed by the Liquidating Trustee on behalf of the Debtors (except for Fairfield) and shall take all steps necessary to allow and reflect the prompt dissolution of the First Tier Subsidiaries and the Second Tier Subsidiaries and the wind-down of the First Tier Subsidiaries and the Second Tier Subsidiaries in a timely and reasonable manner as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates, except as the Liquidating Trustee may determine in his sole discretion.  The use and distribution of Net Trust Recoveries shall be made in accordance with this Liquidating Trust Agreement and the Plan.  In furtherance of such purposes, in consultation with and at the direction of the Trust Oversight Committee, the Liquidating Trustee shall be responsible for pursuing the aforementioned purposes of the FFR Trust with respect to the Assets, Causes of Action, Avoidance Actions, liabilities and Claims which are transferred to the FFR Trust, shall be the representative of all Beneficiaries in all litigation relating to all Causes of Action and Avoidance Actions, and shall perform all obligations specified for the Liquidating Trustee under the Plan and this Liquidating Trust Agreement.  In the event of any inconsistency between the recitation of the duties and powers of the Liquidating Trustee as set forth in the Liquidating Trust Agreement and as set forth in the Plan, the provisions of the Plan shall govern.

2.2     Title to Liquidating Assets.  The transfer of the Liquidating Assets to the Liquidating Trustee shall be made by the Debtors for the benefit and on behalf of the Beneficiaries.  In this regard, the Liquidating Assets will be treated for tax purposes as being transferred (subject to the liabilities and Allowed Claims indicated herein) by the Debtors to the Beneficiaries, and then a deemed transfer by such Beneficiaries to the FFR Trust in exchange for interests in the FFR Trust as a Capital Contribution (as defined in the Tax Appendix to this Liquidating Trust Agreement) (the "Liquidating Trust Interests") in accordance with the Plan.  Upon the transfer of the Liquidating Assets, the Liquidating Trustee shall succeed (for the sole

4

benefit of the Beneficiaries) to all of the Debtors' right, title and interest in the Liquidating Assets and the Debtors will have no further interest in or with respect to the Liquidating Assets or this FFR Trust, except as otherwise provided in the Plan or the Confirmation Order.

2.3  Causes of Action.  All Causes of Action, including Avoidance Actions, shall be transferred into the FFR Trust. Causes of Action, including Avoidance Actions, may be prosecuted, settled or abandoned with or without Bankruptcy Court approval by the Liquidating Trustee. Notwithstanding anything to the contrary herein, no Distribution shall be made to a Beneficiary, including by way of setoff or recoupment by such claimant, if the Debtors, the Committee, the Trust Oversight Committee or the Liquidating Trustee has taken action to recover, or given notice to the applicable party of intent to take such action, on a Cause of Action or Avoidance Action against such Beneficiary (or the direct or indirect transferor to, or transferee of, such Beneficiary), until such Cause of Action or Avoidance Action is resolved by Final Order or otherwise in accordance with Section 4.2 hereof. The Liquidating Trustee will be substituted as the party in interest instead of the Debtors or Committee for all Causes of Action, including Avoidance Actions, pending on the Effective Date. In addition, the Liquidating Trustee may, but has no obligation to, seek to intervene in any Cause of Action or Avoidance Action commenced after the Effective Date.

2.4  Assignment and Assumption of Claims.  In accordance with Section 2.2 hereof, the Debtors and their respective estates hereby transfer and assign the Liquidating Assets to the Liquidating Trustee, and the Liquidating Trustee on behalf of the FFR Trust hereby assumes and agrees that all such Liquidating Assets will be transferred to the Liquidating Trustee subject to certain liabilities as set forth in the Plan, in each case subject to the Liquidating Trustee's right to set off or otherwise contest such liabilities, arising out of scheduled and timely-filed claims, including: (a) Administrative Claims, Priority Tax Claims and Priority Claims that have not been Allowed as of the Effective Date but which are subsequently Allowed; (b) all fees of any U.S. Trustee until such time as the Bankruptcy Court enters a Final Decree closing each Debtors' Chapter 11 Case; (c) any expenses incurred and unpaid, or to be incurred, by the Liquidating Trustee or Disbursing Agent in the performance of their administrative duties in respect of the winding up of the Debtors' Estates (including the filing of final tax returns and the payment of any taxes shown thereon, and any tax liability determined to be due and owing pursuant to the requests for expedited determinations under Section 505 of the Bankruptcy Code except with respect to Fairfield and Fairfield Properties, L.P.); and (d) any obligations owing pursuant to the Plan and unpaid (including, without limitation, obligations incurred after the Confirmation Date and the fees and expenses of Professionals under Article II.C.1.b of the Plan); but specifically excluding any Claims which have been barred or discharged pursuant to the Plan.

2.5  Valuation of Liquidating Assets.  In consultation with the Trust Oversight Committee, as soon as possible after the Effective Date, (a) the Liquidating Trustee shall value the Liquidating Assets, using to the extent applicable the value as determined by the third party expert upon completion of the dispute resolution process in accordance with the Guaranty Claims Protocol, and (b) the Liquidating Trustee shall apprise the Beneficiaries in writing of such valuation. The valuation shall be used consistently by the Debtors, the Liquidating Trustee and the Disbursing Agent for all purposes, including federal income tax purposes.

5

2.6     Appointment of the Liquidating Trustee.  The Liquidating Trustee shall be Andrew Hinkelman.  The Liquidating Trustee may serve in a separate capacity as the Disbursing Agent and/or as the Responsible Person.

2.7     Trust Oversight Committee.

(a)     The Members of the Trust Oversight Committee shall be appointed by the Committee and Capmark Finance; provided that Capmark Finance shall have the right to appoint one Member, in its sole discretion, of the Trust Oversight Committee and the Committee shall have the right to appoint four Members, in its sole discretion, of the Trust Oversight Committee; provided, further that, notwithstanding anything to the contrary contained herein, if any Member of the Trust Oversight Committee appointed by Capmark Finance shall fail to serve for any reason, a replacement for such Member shall be elected by Capmark Finance, in its sole discretion, and if any Member of the Trust Oversight Committee appointed by the Committee shall fail to serve for any reason, a replacement for such Member shall be elected by a majority vote of those Members of the Trust Oversight Committee that were selected by the Committee or their successors, in their sole discretion.  Upon satisfaction of the Capmark Claims, Capmark Finance shall promptly notify the Liquidating Trustee of such satisfaction in writing.  Upon receipt, the Liquidating Trustee shall forward notice of such satisfaction to the remaining Members of the Trust Oversight Committee.  Upon satisfaction of the Capmark Claims, Capmark Finance shall be deemed to have resigned from the Trust Oversight Committee and its Member shall thereupon resign.  Following the resignation of Capmark Finance, if any Member of the Trust Oversight Committee shall fail to serve for any reason, such Member shall be replaced by designation of the remaining Members of the Trust Oversight Committee by affirmative vote of two-thirds of the Trust Oversight Committee.  A Member of the Trust Oversight Committee may resign for any reason or no reason.  If any position on the Trust Oversight Committee remains vacant for more than thirty (30) days, such vacancy may be filled within fifteen (15) days thereafter by the designation of the Liquidating Trustee without the requirement of a vote by the other Members of the Trust Oversight Committee.  Each replacement Member of the Trust Oversight Committee must be a representative of a Beneficiary of the FFR Trust.  The Trust Oversight Committee will continue to fully function even while a position on the Trust Oversight Committee is vacant.

(b)     Bank of America, N.A., Capmark Finance, RBC Capital Markets, Regions Bank, and Wells Fargo Bank, National Association have been appointed as the initial Members of the Trust Oversight Committee that will consult with, advise and direct the Liquidating Trustee and make certain determinations regarding the liquidation of the Liquidating Assets, and are deemed to have accepted this appointment.

(c)     The Trust Oversight Committee shall have the duty to take actions in accordance with the provisions of the Plan and this Liquidating Trust Agreement and the rights, duties and powers set forth herein.

(d)     The Trust Oversight Committee shall govern its proceedings through the adoption of by-laws, which the Trust Oversight Committee shall adopt by majority vote.  No provision of such by-laws shall supersede any express provision of the Plan or of

6

this Liquidating Trust Agreement. Without limiting the generality of the foregoing, the Trust Oversight Committee by-laws shall provide that all authorizations, directions and advice rendered by the Trust Oversight Committee to the Liquidating Trustee at any time pursuant to the Plan and this Liquidating Trust Agreement shall be by majority vote of the Trust Oversight Committee Members voting in any case and that at least a majority of the Members of the Trust Oversight Committee shall constitute a necessary quorum required to vote on any matter to be voted upon by the Trust Oversight Committee; provided, however, that, an affirmative vote of at least two-thirds of the Members of the Trust Oversight Committee (a "Supermajority Vote") shall be necessary to approve: (i) the sale of all or substantially all of the assets of FFR Trust; (ii) the removal or appointment of the Liquidating Trustee and (iii) any merger, consolidation, restructuring, reorganization, liquidation or other similar action of the FFR Trust.

(e)    In the event of a conflict of interest, the Trust Oversight Committee (as a committee and, for the avoidance of doubt, not any individual Member or sub-group of Members) shall have the right to retain its own counsel and other professionals of its choice as evidenced by a majority vote of the Members. The FFR Trust Expenses shall be paid by the Liquidating Trustee in accordance with the following procedures (unless, in consultation with the Trust Oversight Committee, the Liquidating Trustee determines to implement other procedures): upon the submission of a monthly fee and/or expense statement to the Liquidating Trustee and the Trust Oversight Committee, the Liquidating Trustee and the Trust Oversight Committee shall have ten (10) days from the delivery of a fee statement to give notice of an objection to the fee statement to the professional or Person seeking compensation or reimbursement. For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. Any objection that remains unresolved fifteen (15) days after it is made shall be filed with the Bankruptcy Court by the objecting party, served upon the professional or Person seeking compensation or reimbursement, and shall be heard by the Bankruptcy Court at the next regularly scheduled omnibus hearing. The uncontested portion of each invoice shall be paid within twenty (20) days after its delivery to the Liquidating Trustee and the Trust Oversight Committee.

(f)    Neither the Trust Oversight Committee nor any of its Members shall be liable for the act, omission, default or misconduct of any other Member of the Trust Oversight Committee, nor shall any Member be liable for anything other than such Member's own gross negligence, willful misconduct or fraud. The Trust Oversight Committee may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with the Liquidating Trustee's counsel and any other of the Liquidating Trustee's professionals and/or with counsel and other professional advisors directly retained and duly appointed by the Trust Oversight Committee, and the Trust Oversight Committee shall not be liable for anything done or omitted or suffered to be done in accordance with the advice or opinions of such professionals. The Trust Oversight Committee shall not be liable for not requiring the Liquidating Trustee to give a bond or surety or any other security for the performance of the Liquidating Trustee's duties. If the Trust Oversight Committee determines not to consult with counsel, accountants or other professionals, such failure to consult shall not be deemed to impose any liability on the Trust Oversight Committee, or its Members.

7

(g)     The Trust Oversight Committee may rely, and shall be and each Member shall be fully protected personally in acting upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Trust Oversight Committee has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions or electronic mail, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.

(h)     In performance of their duties hereunder, Members of the Trust Oversight Committee shall be entitled to receive (i) reimbursement as set forth in <u>Section 5.9</u> hereof, and (ii) compensation as provided for in <u>Section 5.10</u> hereof.

(i)     Upon the certification by the Liquidating Trustee that all Liquidating Assets have been distributed, abandoned or otherwise disposed of, the Members of the Trust Oversight Committee shall resign from their positions, whereon they shall be discharged, without any liability, from further duties and responsibilities.

ARTICLE III

LIQUIDATING TRUST INTERESTS

3.1     <u>Identification of Beneficiaries</u>. The record Beneficiaries shall be recorded and set forth in a register (the "<u>Beneficiary List</u>") maintained by the Liquidating Trustee expressly for such purpose (the Liquidating Trustee shall consult with the agents for the syndicated project level loans in connection with maintaining the Beneficiary List). All references in this Liquidating Trust Agreement to Beneficiaries shall be read to mean Beneficiaries of record as set forth in the official register maintained by the Liquidating Trustee on such official registry (including any permitted successors or assigns, as applicable). Distributions shall be accomplished as set forth in the Plan, and shall be subject to appropriate reserves. The Distributions shall be made from the Distribution Fund to the Beneficiaries and Holders of Convenience Class Claims. Pursuant to the Plan, the Distribution Fund is the fund which shall be established on the Effective Date by the Liquidating Trustee to pay (in the event any payments are to be made to Holders of such Claims) Class 1.A, 1.B, 1.C, 1.D, and 1.E Priority Claims, Class 2.A Capmark Claims, Class 2.B, 2.C, 2.D, 2.E and 2.F General Unsecured Claims and Class 4.A, 4.B, 4.C, 4.D and 4.E Convenience Class Claims (as such terms are defined in the Plan). After the Effective Date, Distributable Cash shall be held in the Distribution Fund.

3.2     <u>No Limitation on Transferability</u>. To the fullest extent permitted by applicable law, the beneficial interests in the FFR Trust may be assigned or otherwise transferred by any Beneficiary including, without limitation, (a) to any relative, spouse or relative of the spouse of such Beneficiary; (b) to any trust or estate in which such Beneficiary has a majority of the beneficial interest; (c) to any corporation, partnership or other organization in which such Beneficiary is directly or indirectly the beneficial owner of a majority of the voting securities or equity interests, or which owns a majority of the voting securities or beneficial interests of such Beneficiary; and (d) upon the death or dissolution of such Beneficiary in accordance with the

8

operation of law; provided, that (i) any such transfer shall be effected in compliance with the Securities Act of 1933, as amended, and the rules and regulations of the Securities and Exchange Commission thereunder, and any other applicable federal or state securities law; (ii) any Beneficiary effecting such transfer shall transfer its entire interest to a single transferee (each, a "Transferee"), and each Transferee shall thereafter be bound by the same restriction, except in each case to the extent such transfer is made pursuant to operation of law; and (iii) such transfer shall be made using the form of transfer document attached hereto as Exhibit A. Written notice of any transfer or assignment by a Beneficiary permitted hereunder shall be delivered to the Liquidating Trustee within (10) ten days of such transfer and the Liquidating Trustee shall update the books and records of the FFR Trust accordingly, including, without limitation, the Beneficiary List. For the avoidance of doubt, the FFR Trust will be permitted to directly or indirectly transfer any of the Liquidating Assets to any third party at any time and from time to time. Notwithstanding the foregoing, such interests shall not be assigned or otherwise transferred by any Beneficiary and/or the FFR Trust, if it would cause the FFR Trust to be terminated pursuant to I.R.C. Section 708(b)(1)(B), or if it would cause the FFR Trust to be a publicly-traded partnership for purposes of the I.R.C. and registration under the Securities Exchange Act of 1934, as amended.

ARTICLE IV

PURPOSE, AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES

4.1     Purpose of the FFR Trust. The FFR Trust shall be established for the sole purpose of liquidating the Liquidating Assets. Accordingly, consistent with the Plan, the Liquidating Trustee shall, in an expeditious but orderly and commercially reasonable manner that is in the best interests of the Beneficiaries (and designed to achieve the goal, among others, of realizing the highest net present value for FFR Trust assets that are liquidated), (a) liquidate the Estates and the Liquidating Assets, (b) investigate, litigate and/or settle Causes of Action, including Avoidance Actions, (c) review, reconcile and object to Disputed Claims, (d) sell, liquidate and/or recover any and all Assets of the Estates and the Liquidating Assets, and (e) make distributions of any Liquidating Assets and the proceeds thereof to the Beneficiaries, as set forth in the Plan.

4.2     Authority of Liquidating Trustee.

(a)     In connection with the administration of the FFR Trust, the Liquidating Trustee has the power and authority to perform on behalf of the FFR Trust any and all acts necessary or desirable to accomplish the purposes of the FFR Trust in consultation with the Trust Oversight Committee as more fully set forth below and in accordance with the Plan.

(b)     In connection with the administration of the FFR Trust, in accordance with the Plan, the Liquidating Trustee shall have the power, authority and duty with the approval of the Trust Oversight Committee:

(i)     to manage all of the FFR Trust's Assets, including but not limited to the low income housing tax credit portfolio, in order to

9

maximize value for the Beneficiaries (such management may include the continued operation of any Asset and all income derived therefrom) until such time as the Liquidating Trustee determines, in its reasonable business judgment and given market conditions and other timing considerations determined to be appropriate, that a sale of such Asset would produce the maximum value for the Beneficiaries; for greater clarity, the Liquidating Trustee in consultation with the Trust Oversight Committee and Newco (solely in its capacity as asset manager pursuant to the Asset Management Agreement) will periodically review the value and liquidity of the assets in the low income housing tax credit portfolio in determining whether a sale or other disposition and the timing of such sale or other disposition of one or more of such assets would produce the maximum value for the Beneficiaries;

(ii)     to recover any and all Liquidating Assets;

(iii)    to manage, control and operate the FFR Trust;

(iv)     to collect and reduce to Cash the Liquidating Assets and close the Liquidating Trust as expeditiously as is compatible with the best interests of all the Beneficiaries of the FFR Trust;

(v)      to investigate and, if necessary and appropriate, to prosecute, enforce (or to not prosecute or enforce), or to compromise, release, or settle any Causes of Action, including Avoidance Actions, on behalf of the Estates and the FFR Trust;

(vi)     to invest the Liquidating Assets in accordance with Local Rule 4001-3;

(vii)    to create the Wind-down Reserve Account and deposit funds to such reserve;

(viii)   to file any and all reports, pleadings and other documents necessary to carry out the provisions of the Plan;

(ix)     to make any and all distributions required or permitted to be made under the Plan;

(x)      to pay out of the FFR Trust any and all Distributions on account of Allowed Claims, liabilities and losses incurred in connection therewith;

(xi)     to employ, supervise and compensate any professionals and independent contractors of the FFR Trust;

(xii)    to make and file tax returns for any of the Debtors (other than Fairfield) and the FFR Trust;

(xiii)   to commence and pursue dissolution or winding up proceedings for the FFR Trust;

(xiv)   to request the entry of a Final Decree(s);

(xv)   to take any and all actions, including any action set forth in Article IV.W of the Plan, necessary to dissolve and cancel the existence of each of the Liquidating Debtors in the State of Delaware, and in any other jurisdiction in which a Liquidating Debtor is qualified to do business;

(xvi)   to determine reserve amounts for Post-Confirmation Expenses and Disputed Claims;

(xvii)   to decrease the amounts needed for the Minimum Cash Balance, as otherwise provided in the Plan;

(xviii)   to sign and timely file Internal Revenue Service Form 8832 as described in Section 7.1(d); and

(xix)   to take any and all other actions necessary or appropriate to implement the Plan and the reorganization of the Liquidating Debtors, and the liquidation of the FFR Trust in accordance with applicable law; provided, that nothing herein shall permit the Liquidating Trustee to terminate or cancel the Debtors' director and officer liability insurance coverage relating to the period following the Petition Date; and provided further that, the Liquidating Trustee shall not renew or extend such insurance coverage, or other new or substitute coverage, without the approval of the Trust Oversight Committee.

(c)   In connection with the execution of his duties under the Plan, the Liquidating Trustee is hereby authorized, in consultation with the Trust Oversight Committee:

(i)   to execute such documents and to take such other actions as are necessary to effectuate the Plan and perform his duties as liquidating agent of and for the Estates and the FFR Trust, including to execute such documents and take such other action on behalf of the FFR Trust or any Debtors;

(ii)   to open, close and manage bank accounts, and to enter into business transactions within or without the ordinary course of business;

(iii)   to authorize and benefit from any insurance policies and rights of indemnification;

(iv)   to retain and pay professionals of his choice (including any of the Debtors' or the Committee's former Professionals) or other Persons to assist the Liquidating Trustee in the liquidation of the Liquidating Assets, without prior Bankruptcy Court approval (but subject to the

11

procedures set forth in <u>Section 2.7(e)</u>), and to designate himself or another Person to be the Disbursing Agent, subject to the consent of the Trust Oversight Committee as set forth in Article VI.B of the Plan;

(v)     to incur any reasonable and necessary expenses (up to the amounts set forth in the Administrative Budget) in the performance of his duties as liquidating agent of and for the Estates and the FFR Trust;

(vi)     to prepare and deliver to the Trust Oversight Committee the Administrative Budget of the FFR Trust with respect to each six-month period following the Effective Date and any amendments or modifications thereto;

(vii)     to settle any Disputed Claim and implement the Guaranty Claims Protocol;

(viii)     to settle any Cause of Action or Avoidance Action without notice or hearing that has an estimated value of $500,000 or less or, after notice to any party affected by the settlement, the Capmark Lenders and the Trust Oversight Committee, and a hearing to seek an order of the Bankruptcy Court approving the compromise, release or settlement of any Cause of Action or Avoidance Action that has an estimated value of greater than $500,000; and

(ix)     to employ such other procedures, not inconsistent with the Plan, necessary for the Liquidating Trustee to perform his duties hereunder.

(d)     Pursuant to Article IV.M of the Plan, on the Effective Date the Liquidating Trustee is authorized to execute the Asset Management Agreement and delegate certain of his duties and responsibilities with the consent of the Trust Oversight Committee to the Servicer only as provided for under and pursuant to the terms and conditions of the Asset Management Agreement.

4.3     <u>Limitation of Liquidating Trustee's Authority</u>.  Notwithstanding anything herein to the contrary, the Liquidating Trustee shall take such actions consistent with the orderly liquidation of the Liquidating Assets as are required by applicable law, in accordance with and consistent with the Plan and as described herein.

4.4     <u>Books and Records</u>.  The Liquidating Trustee or its designated agent shall maintain in respect of the FFR Trust and the Beneficiaries books and records relating to the Liquidating Assets and income of the FFR Trust and the payment of expenses of, and liabilities of claims against or assumed by, the FFR Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the FFR Trust. The

12

Liquidating Trustee shall, within 60 days of the close of each calendar year, provide the Trust Oversight Committee with the following:[1]

        (a)    (i) unaudited financial statements of the FFR Trust for such calendar year, prepared in accordance with GAAP, including (A) a balance sheet as of the end of such calendar year; (B) a capital account reconciliation; and (C) a statement of profit and loss for such calendar year (hereinafter collectively referred to as the "Year-End Statements"), or (ii) if requested by the Trust Oversight Committee, audited Year-End Statements, together with an auditor's report of an independent firm of certified public accountants selected by the Trust Oversight Committee;

        (b)    budget to actual comparison and reconciliation statements for such calendar year; and

        (c)    such other reports or statements as the Trust Oversight Committee may reasonably request.

Except as provided in Section 8.1, nothing in this Liquidating Trust Agreement requires the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the FFR Trust, or as a condition for managing any payment or distribution out of the Liquidating Assets. Beneficiaries shall have the right upon three (3) business days' prior written notice delivered to the Liquidating Trustee to inspect such books and records (including financial statements) relative to such Beneficiary's claims, provided that, if so requested, such Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee and the Trust Oversight Committee.

        4.5    Additional Powers. Except as otherwise set forth in this Liquidating Trust Agreement or in the Plan, and subject to the Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Liquidating Trustee may control and exercise authority over the Liquidating Assets and over the protection, conservation and disposition thereof. No Person dealing with the FFR Trust shall be obligated to inquire into the authority of the Liquidating Trustee in connection with the protection, conservation or disposition of the Liquidating Assets.

        4.6    Wind-down Reserve Account. On the Effective Date, or as soon thereafter as reasonably practicable, the Liquidating Trustee shall create the Wind-down Reserve Account and shall hold at least the Minimum Cash Balance in such reserve account from the assets transferred by the Debtors to the FFR Trust. The Liquidating Trustee shall pay Plan administration costs and costs of holding and liquidating any non-Cash property, including but not limited to taxes, professional fees, and the fees and expenses of the Responsible Person for Fairfield, from the Wind-down Reserve Account. To the extent that the Liquidating Trustee, in consultation with the Trust Oversight Committee, determines that funds allocated to the Wind-down Reserve Account are insufficient for such purposes, the net proceeds of the continuing liquidation of the Assets and any other Distributable Cash shall, to the extent necessary for such purposes, be allocated to the Wind-down Reserve Account. After all costs associated with the

---

[1] [NOTE THAT IF THE TRUST IS A REPORTING COMPANY, THIS SECTION WILL HAVE TO CHANGE]

LEGAL_US_E # 88722945.3

wind-down of the FFR Trust have been paid, and/or upon the reasonable determination of the Liquidating Trustee, in consultation with the Trust Oversight Committee, that the funds in the Wind-down Reserve Account exceed the amounts necessary to pay the expenses for which such fund is established, the remaining or excess funds, as applicable, in the Wind-down Reserve Account shall be designated as Distributable Cash.

4.7     Funding of the Plan.

(a)     The Cash Distributions to be made pursuant to the Plan will be made and the Cash necessary to fund the FFR Trust and the Wind-down Reserve Account will be derived from (i) Cash proceeds received by the Debtors from the liquidation of their Assets as of the Effective Date and other funds then available, and (ii) any payments to be received by the Debtors from the further liquidation of Assets and the prosecution and enforcement of Causes of Action and Avoidance Actions of the Debtors, and other funds available as of the Effective Date.

(b)     To the extent not otherwise provided for herein or ordered by the Bankruptcy Court, the Liquidating Trustee, with the consent of the Trust Oversight Committee, shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for accrued expenses and for the payment of prospective expenses and liabilities of the Estates and the FFR Trust after the Effective Date. Without limitation, these reserves shall include funds for the Wind-down Reserve Account, Professional Fee Claims, Administrative Claims, Priority Tax Claims, Priority Claims, Convenience Class Claims, Disputed Claims and all amounts due pursuant to 28 U.S.C. §1930.

(c)     Subject to Section 4.18, the Liquidating Trustee shall not be obligated to physically segregate and maintain separate accounts for reserves or for the Distribution Fund. Separate reserves and funds may be bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Liquidating Trustee to determine Distributable Cash, reserves and amounts to be paid to parties in interest.

4.8     Application of Liquidating Assets and Other Property.     Prior to distribution of any portion of the FFR Trust Recoveries to any Beneficiaries, Trust Recoveries shall be paid as follows (a) to the Liquidating Trustee's and the Trust Oversight Committee's professionals, in accordance with Section 2.7(e), for services rendered and expenses incurred in aiding in the performance of the Liquidating Trustee's responsibilities, (b) to the Liquidating Trustee for the Liquidating Trustee's compensation and reasonable and necessary expenses incurred and/or to be incurred (as estimated by the Liquidating Trustee and approved by the Trust Oversight Committee) in fulfilling the Liquidating Trustee's obligations set forth in the Plan and in this Liquidating Trust Agreement, and (c) to the Members of the Trust Oversight Committee for their reasonable and necessary expenses incurred in fulfilling the obligations of the Trust Oversight Committee set forth in the Plan and in this Liquidating Trust Agreement. The Liquidating Trustee shall apply all Net Trust Recoveries and any proceeds therefrom, as follows:

> FIRST, to pay any unpaid obligations of the Debtors incurred from the Confirmation Date through the Effective Date, including, without

LEGAL_US_E # 88722945.3

limitation, the fees and expenses of Professionals as allowed by the Bankruptcy Court. Thereafter, such obligations shall become obligations of the FFR Trust and shall be paid in accordance with this Liquidating Trust Agreement.

SECOND, to make the payments required under the Plan in accordance with the terms, provisions and priorities set forth in the Plan.

Notwithstanding anything to the contrary in this Section 4.8, prior to making any distribution to Beneficiaries, upon approval of the Trust Oversight Committee, the Liquidating Trustee may retain such amounts (i) as are reasonably necessary to maintain the Minimum Cash Balance and meet contingent liabilities and to maintain the value of the Liquidating Assets during liquidation, (ii) to pay reasonable estimated administrative expenses (including any taxes imposed on the FFR Trust or in respect of the Liquidating Assets of the FFR Trust), (iii) as the Liquidating Trustee may deem necessary to provide further funding to the Disbursing Agent, and (iv) to satisfy other liabilities incurred or assumed by the FFR Trust (or to which the Liquidating Assets are otherwise subject), all for the term of the FFR Trust and in accordance with this Liquidating Trust Agreement and the Plan. In addition, the Liquidating Trustee shall establish a Distribution Reserve Account (the "Distribution Reserve Account") as of the first Distribution Date. The Liquidating Trustee shall deposit into the Distribution Reserve Account on each Distribution Date, pending resolution of Disputed Claims, that portion of Net Trust Recoveries that would otherwise be distributable in accordance with the Plan in respect of such Disputed Claims, if such Disputed Claim had then constituted an Allowed Claim entitled to receive Trust Recoveries in accordance with the Plan. The amount of such deposits made by the Liquidating Trustee into the Distribution Reserve Account on any Distribution Date shall be in an amount as directed by the Trust Oversight Committee pursuant to the Beneficiary List. The Liquidating Trustee shall distribute the Net Trust Recoveries on deposit in the Distribution Reserve Account to the Beneficiary of any Disputed Claims that become Allowed Claims on the next Distribution Date after the date the Disputed Claim becomes an Allowed Claim.

4.9    Delivery of Distributions; Withholding. The Liquidating Trustee shall not distribute any Net Trust Recoveries to any Beneficiaries in a particular Class prior to the earliest date on which the Beneficiaries in such Class are entitled to receive Net Trust Recoveries in accordance with the Plan and shall not be required to make any such distribution if the Net Trust Recoveries and income therefrom (if any) available for distribution to the Beneficiaries are not sufficient, in the Liquidating Trustee's discretion (after receiving approval of the Trust Oversight Committee) to justify incurring the FFR Trust Expenses necessarily associated with making distribution of monies. The Liquidating Trustee shall have the power, subject to Trust Oversight Committee consent, to make interim distributions to the Beneficiaries if the Liquidating Trustee determines that such interim distributions are warranted and economical; provided, however, that

15

the Liquidating Trustee shall make interim distributions at least annually to the extent the Liquidating Trustee determines there are sufficient available excess funds in the Distribution Fund. If the Liquidating Trustee determines to make interim distributions to the Beneficiaries, the Liquidating Trustee shall determine the amount to be distributed by taking into account such factors as ongoing expenses and costs, taxes and reserves necessary to provide for the resolution of Disputed Claims. Amounts withheld shall be placed in an interest-bearing account which shall fund ongoing expenses and costs relating to such reserves, including, without limitation, taxes in respect of Disputed Claims, if any. Except as otherwise provided in this Liquidating Trust Agreement, distributions to Beneficiaries shall be made by the Disbursing Agent (i) at the addresses set forth on the Proofs of Claim filed by such Beneficiary (or at the last known addresses of such Beneficiary if no motion requesting payment or Proof of Claim is filed or the Debtors or the FFR Trust have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Liquidating Trustee has not received a written notice of a change of address. At the option of the Liquidating Trustee, any distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer or by ACH.

4.10    Undeliverable Distributions. If a distribution to a Beneficiary is returned as undeliverable, no further distributions to such Beneficiary shall be made unless and until the Liquidating Trustee and the Disbursing Agent are notified of the then-current address of such Beneficiary, at which time all missed distributions shall be made to such Beneficiary without interest. Amounts in respect of undeliverable distributions shall be returned to the Liquidating Trustee until such distributions are claimed. All funds or other undeliverable distributions returned to the Liquidating Trustee in respect of any Claim and not claimed within four (4) months of return shall be forfeited and remain with and vest in the FFR Trust for distribution to other Beneficiaries. Any unclaimed funds held by the FFR Trust at the time the Final Decree is entered may be donated to a charity selected by the Liquidating Trustee and the Trust Oversight Committee provided that such funds do not exceed $10,000 without further order of the Bankruptcy Court.

4.11    Fractional Dollars. Notwithstanding any other provisions of this Liquidating Trust Agreement to the contrary, no payment of fractional cents shall be made under this Liquidating Trust Agreement. Cash shall be issued to Beneficiaries entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).

4.12    De Minimis Distributions. With the exception of distributions to Holders of Allowed Convenience Class Claims, any distribution of less than $25.00 shall be considered de minimis, and Beneficiaries that are entitled to any distribution of less than $25.00 shall not receive any distribution unless and until the aggregate of such distributions exceeds $25.00. Such funds shall remain with and vest in the FFR Trust for distribution to such Beneficiaries upon the respective amounts aggregating more than $25.00.

4.13    Deposit into Reserve. Distributions of Liquidating Assets with respect to Disputed Claims shall be deposited into the Distribution Reserve Account as set forth in Section 4.8 of this Liquidating Trust Agreement. The amount deposited shall be determined by the Liquidating Trustee based upon each Beneficiary List delivered to the Liquidating Trustee, or as

16

otherwise agreed to by the Debtors and the Liquidating Trustee. The Liquidating Trustee may, in the Liquidating Trustee's sole discretion unless otherwise instructed by the Trust Oversight Committee, invest any Cash that is withheld in the Distribution Reserve Account in a manner that will yield a reasonable net return, taking into account the safety of the investment. Notwithstanding any such investment and the addition to Liquidating Assets of any income earned in respect thereof, nothing in this Liquidating Trust Agreement shall be deemed to entitle the Holder of a Disputed Claim to postpetition interest on such Claim, in the event such Claim ultimately becomes an Allowed Claim.

4.14 <u>Tax Treatment of Distribution Reserve Account</u>. The Distribution Reserve Account is intended to be treated as one or more disputed ownership funds within the meaning of Treasury Regulations Section 1.468B-9(b)(1). The Liquidating Trustee shall act as the "administrator," within the meaning of Treasury Regulations Section 1.468B-9(b)(2), of such funds. The Distribution Reserve Account will be subject to the continuing jurisdiction of the Bankruptcy Court, and, as a result, no money or property can be paid or distributed from the Distribution Reserve Account to, or on behalf of, a "claimant" or the "transferor" (as such terms are defined in the Treasury Regulations Sections 1.468B-9(b)(3) and 1.468B-9(b)(7), respectively) except if, as and when Claims become Allowed Claims (or Trust Expenses) and making distributions prescribed in the Plan.

4.15 <u>Distributions After Allowance</u>.

(a) On the next Distribution Date after the date when the order or judgment of the Bankruptcy Court allowing all or part of a Disputed Claim becomes a Final Order, the Liquidating Trustee shall distribute to the Beneficiaries of Disputed Claims that have become Allowed any property in the Distribution Reserve Account that would have been distributed to such Beneficiaries on the Distribution Dates on which distributions previously were made to Beneficiaries, as if the Disputed Claims that have become Allowed had been Allowed Claims, on such earlier Distribution Dates. All distributions made under this <u>Section 4.15</u> on account of an Allowed Claim will be made together with any dividends, payments or other distributions made on account of, as well as subject to any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the Distribution Dates on which distributions were previously made to Beneficiaries.

(b) After a Final Order has been entered, or other final resolution has been reached with respect to all Disputed Claims, any remaining property held in the Distribution Reserve Account will be distributed in accordance with the Plan and this Liquidating Trust Agreement.

4.16 <u>No Partial Distributions</u>. The Liquidating Trustee shall not make any partial distributions to any Holder of any Disputed Claims pending resolution of such Disputed Claims, provided that, the foregoing shall not limit, impair or otherwise affect the right of such Holder to receive, in accordance with the Plan and this Liquidating Trust Agreement, Net Trust Recoveries in respect of any other claims of such Holder that are Allowed Claims.

LEGAL_US_E # 88722945.3

4.17 Duties of the Liquidating Trustee.

  (a) Reporting Duties.

    (i) Fede ral Income Tax. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall file returns for the FFR Trust for United States federal and state income tax purposes as a partnership. Consistent with its status as a partnership, the FFR Trust shall not be, and the Beneficiaries shall be, responsible for the payment of their allocable portion of any federal income tax liability related to the operation of the FFR Trust. With respect to the Distribution Reserve Account, the Liquidating Trustee will timely (a) file such income tax and other returns, elections and statements as are required to comply with (i) the applicable provisions of the I.R.C. and the Treasury Regulations promulgated thereunder, including the requirements set forth in Treasury Regulations 1.468B-9(c), and (ii) any applicable state and local law and regulations promulgated thereunder, and (b) pay from the applicable Distribution Reserve Account any taxes reported as owing on such returns and statements. With respect to any Person from whom a tax identification number, certificate tax identification number or other tax information required by law to avoid withholding or to file information or tax returns has not been received by the FFR Trust (or the Disbursing Agent), the FFR Trust or the Disbursing Agent, as the case may be, at their sole option, may decline to make such distribution until the information is received and if such information is not received within 180 days of the Effective Date, the FFR Trust or Disbursing Agent may redistribute any such monies to other Trust Beneficiaries in the same Class.

    (ii) Other. The Liquidating Trustee shall file (or cause to be filed) any other statements, returns or disclosures relating to the FFR Trust that are required by any governmental authority.

  (b) Winding Up of the Liquidating Debtors. The Liquidating Trustee shall wind up the remaining affairs of the Liquidating Debtors, including the filing of all required tax returns including, without limitation, IRS forms related to the Debtors' 401(k) plan and other ERISA plans, and the handling of audits and shall have the right to request an expedited determination under Section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through, and including, the dissolution of the Liquidating Debtors.

  4.18 Segregation of First Tier Subsidiaries from Second Tier Subsidiaries. Due to the substantive consolidation in the Plan of Fairfield and the First Tier Subsidiaries, the Liquidating Trustee may maintain joint records and accountings for Fairfield and all of the First

Tier Subsidiaries. However, in order to accurately reflect that the Second Tier Subsidiaries are not substantively consolidated with Fairfield and the First Tier Subsidiaries, the Liquidating Trustee must maintain separate records and accountings for the expenses and sale proceeds for each Second Tier Subsidiary.

4.19 <u>Compliance with Laws</u>. Any and all distributions of Liquidating Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

ARTICLE V

THE LIQUIDATING TRUSTEE AND TRUST OVERSIGHT COMMITTEE

5.1 <u>Generally</u>. The Liquidating Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this FFR Trust and not otherwise, except that the Liquidating Trustee may deal with the Liquidating Assets as permitted by <u>Section 5.9</u>.

5.2 <u>No Recourse to Liquidating Trustee</u>. Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which there is insufficient Cash in the relevant fund or reserve to provide a recovery equal to that received by other Beneficiaries in the relevant Class, no Beneficiary shall have recourse to the Protected Parties, or their successors or assigns, or the Holder of any other Claim, or any of their respective property. However, nothing in the Plan shall modify any right of a Holder of a Claim under section 502(j) of the Bankruptcy Code. THUS, THE BANKRUPTCY COURT'S ENTRY OF AN ESTIMATION ORDER MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

5.3 <u>Liability of Liquidating Trustee; Indemnification</u>. None of the Liquidating Trustee, and the Trust Oversight Committee and its Members, and their respective designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such) shall be liable for the act or omission of any Member, designee, professional, agent, or representative of the Liquidating Trustee or the Trust Oversight Committee, nor shall the Liquidating Trustee, or any Member of the Trust Oversight Committee be liable for any act or omission taken or omitted to be taken in its capacity as the Liquidating Trustee, or as a Member of the Trust Oversight Committee, respectively, other than acts or omissions resulting from the Liquidating Trustee's or such Member's willful misconduct, gross negligence or fraud. The Liquidating Trustee or the Trust Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with Members, and their respective designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, neither the Liquidating Trustee, nor the Trust Oversight Committee shall be under any obligation to consult with Members, or their respective designees and professionals, or any duly designated agents and representatives thereof (in their capacity as

19

such), and their determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or the Trust Oversight Committee or, as applicable, Members, or their respective designees and professionals, or all duly designated agents and representatives thereof, unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Assets shall be used to indemnify and hold harmless the Liquidating Trustee, and the Trust Oversight Committee and its Members, and their respective designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to the FFR Trust or the implementation or administration of the Plan, **[and such indemnification shall survive the resignation of the Liquidating Trustee or any Member of the Trust Oversight Committee, as applicable;]** provided, however, that no such indemnification will be available to such Persons for such actions or omissions if a court of competent jurisdiction has determined by final order that the challenged conduct occurred as a result of willful misconduct, gross negligence or fraud.

5.4     Standard of Care; Indemnification; Exculpation. The Liquidating Trustee shall perform the duties and obligations imposed on the Liquidating Trustee by this Liquidating Trust Agreement using his best efforts in a commercially reasonable manner. Neither the Liquidating Trustee, the Trust Oversight Committee, nor its Members shall be personally liable to the FFR Trust, to any Beneficiary or any other Person (or any predecessor or successor thereto) for any reason whatsoever, except for such of his own acts as shall constitute willful misconduct, gross negligence or fraud. Except as aforesaid, the Liquidating Trustee and the Trust Oversight Committee and its Members shall be defended, held harmless and indemnified from the Liquidating Assets (but not indemnified or defended by the Beneficiaries or any of the parties released in the Plan), against any and all losses, claims, costs, expenses and liabilities to which the Liquidating Trustee or the Trust Oversight Committee and its Members may be subject by reason of their respective execution in good faith of their respective duties under this Liquidating Trust Agreement. The Liquidating Trustee's officers, employees, agents, if any (including, without limitation, the Liquidating Trustee's professionals) shall be held harmless and indemnified upon authorization of the Trust Oversight Committee. Without limiting the generality of the foregoing, neither the Liquidating Trustee, the Trust Oversight Committee, nor its Members shall have any liability to any Beneficiary on account of the Liquidating Trustee's investment or non-investment of any Liquidating Assets or any losses with respect to any such investments of Liquidating Assets, provided such investments are made, or the Liquidating Trustee's decision not to invest any Liquidating Assets in any case is made, in accordance with the terms of this Liquidating Trust Agreement.

5.5     Action Upon Instructions. If in performing the Liquidating Trustee's duties under this Liquidating Trust Agreement, the Liquidating Trustee is required to decide between alternative courses of action, or the Liquidating Trustee is unsure of the application of any provision of this Liquidating Trust Agreement or the Plan, then the Liquidating Trustee may promptly deliver a notice to the Trust Oversight Committee requesting written instructions as to the course of action to be taken by the Liquidating Trustee. If the Trust Oversight Committee provides the Liquidating Trustee with written instructions as to the course of action to be taken by the Liquidating Trustee pursuant to this Section 5.5, absent willful misconduct, gross negligence or fraud, the Trust Oversight Committee and its Members shall be defended, held

20

harmless and indemnified from the Liquidating Assets (but not defended or indemnified by the Beneficiaries or any of the parties released in the Plan), against any and all losses, claims, costs, expenses and liabilities to which the Trust Oversight Committee may be subject by reason of the Trust Oversight's Committee written instructions pursuant to this Section 5.5. If the Liquidating Trustee does not receive such written directions within ten (10) Business Days after the Liquidating Trustee has delivered such notice, the Liquidating Trustee may, but shall be under no duty to, take or refrain from taking such action not inconsistent with this Liquidating Trust Agreement as the Liquidating Trustee shall deem advisable. If the Liquidating Trustee does not receive direction from the Trust Oversight Committee within such ten (10) Business Day period or the Liquidating Trustee believes that a court order is necessary or advisable to protect the interests of the Beneficiaries or to otherwise determine the Liquidating Trustee's rights or duties in any respect under this Liquidating Trust Agreement, then the Liquidating Trustee may apply to the Bankruptcy Court for a determination as to the course of action to be taken by the Liquidating Trustee.

5.6     Reliance by Liquidating Trustee or Trust Oversight Committee and its Members. Except as otherwise provided in Sections 5.3 and 5.4:

(a)     the Liquidating Trustee and the Trust Oversight Committee and its Members may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties; and

(b)     Persons dealing with the Liquidating Trustee and the Trust Oversight Committee and its Members shall look only to the Liquidating Assets to satisfy any liability incurred by the Liquidating Trustee or the Trust Oversight Committee and its Members to such person in carrying out the terms of this Liquidating Trust Agreement, and the Liquidating Trustee and the Trust Oversight Committee and its Members shall have no personal obligation to satisfy any such liability.

5.7     Investment and Safekeeping of Liquidating Assets. The Liquidating Trustee may invest the Cash of the FFR Trust (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Assets during liquidation, (b) to pay Post-Confirmation Expenses according to the Administrative Budget (including, but not limited to, any taxes imposed on the FFR Trust) and (c) to satisfy other respective liabilities incurred by the FFR Trust in accordance with the Plan or the Liquidating Trust Agreement (including, without limitation, the making of advance tax payments).

5.8     Authorization to Expend Liquidating Assets. The Liquidating Trustee may expend the Liquidating Assets with the consent of the Trust Oversight Committee (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Assets during liquidation, (b) to pay all reasonable administrative expenses of the FFR Trust (including, but not limited to, any taxes imposed on the FFR Trust), and (c) to satisfy all other liabilities incurred or assumed by the FFR Trust (or to which the Liquidating Assets are otherwise subject) in accordance with this Liquidating Trust Agreement or the Plan, including, without limitation, those liabilities set forth in Section 4.8 hereof.

5.9     Expense Reimbursement and Indemnification.  The Liquidating Assets shall be subject to the claims of the Liquidating Trustee and the Trust Oversight Committee and its Members, and the Liquidating Trustee shall be entitled to reimburse himself and the Trust Oversight Committee and its Members out of any available Cash in the FFR Trust, with the consent of the Trust Oversight Committee, for their actual, reasonable and documented out-of-pocket expenses and against and from any and all loss, liability, expense, or damage which the Liquidating Trustee and the Trust Oversight Committee and its Members may sustain in good faith and without willful misconduct, gross negligence or fraud in the exercise and performance of any of the powers and duties of the Liquidating Trustee or the Trust Oversight Committee under this Liquidating Trust Agreement.  In order to receive such reimbursement, each of the Liquidating Trustee and the Trust Oversight Committee and its Members must submit statements of expenses (excluding third party counsel expenses of individual Members) and supporting vouchers to the Liquidating Trustee and the Trust Oversight Committee in accordance with Section 2.7(e).

5.10     Compensation.  In accordance with the terms and conditions of and as explicitly provided for in that certain employment agreement by and between Liquidating Trustee and FFR Trust dated as of even date herewith (the "Trustee Employment Agreement"), as compensation for the performance of his duties, the Liquidating Trustee will be entitled to bill hourly for services rendered by the Liquidating Trustee and his employees.  In accordance with the Trustee Employment Agreement, notice of the compensation rates of the Liquidating Trustee and his pre-approved employees shall be provided to the Members of the Trust Oversight Committee.  Each Member of the Trust Oversight Committee may be paid an amount up to $15,000 for the first year of the term of this Agreement, and then $5,000 annually thereafter, as compensation for his or her services as a Member of the Trust Oversight Committee.

5.11     No Bond.  The Liquidating Trustee shall serve without bond.

5.12     Confidentiality.  The Liquidating Trustee shall, during the period that he serves as Trustee under this Liquidating Trust Agreement and thereafter, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Liquidating Assets relates or of which he has become aware in his capacity as Trustee; provided, however, that this Section 5.12 shall not apply to information provided in compliance with an Order of the Bankruptcy Court.

ARTICLE VI

SUCCESSOR TRUSTEE

6.1     Removal.  The Liquidating Trustee may be removed by an affirmative vote in accordance with Section 2.7(d) or upon order of the Bankruptcy Court upon good cause shown by any Creditor.  Such removal shall become effective on the later to occur of: (a) the date action is taken by the Trust Oversight Committee, (b) the entry of a Final Order of the Bankruptcy Court, or (c) the appointment of a successor by the Trust Oversight Committee and the acceptance by such successor of such appointment.

22

6.2    <u>Resignation</u>. The Liquidating Trustee may resign by giving not less than one hundred twenty (120) days' prior written notice thereof to the Members of the Trust Oversight Committee or the Court, as applicable. Such resignation shall become effective on the later to occur of: (a) the day specified in such notice; and (b) the appointment of a successor by the Trust Oversight Committee and the acceptance by such successor of such appointment. If a successor Liquidating Trustee is not appointed or does not accept his or her appointment within one hundred twenty (120) days following delivery of notice of resignation, the Liquidating Trustee shall petition any court of competent jurisdiction for the appointment of a successor Liquidating Trustee in advance of the effectiveness of such resignation.

6.3    <u>Appointment of Successor upon Removal, Resignation, or Incapacity</u>. If the Liquidating Trustee is removed pursuant to <u>Section 6.1</u>, resigns pursuant to <u>Section 6.2</u> or otherwise is incapable of serving as Liquidating Trustee, the Trust Oversight Committee shall appoint a successor Liquidating Trustee by an affirmative vote in accordance with <u>Section 2.7(d)</u>. If a successor Liquidating Trustee is not appointed or does not accept his or her appointment pursuant to the preceding sentence of this <u>Section 6.3</u> within ninety (90) days following such action for removal, delivery of notice of resignation or incapacity of the predecessor Liquidating Trustee, as the case may be, any Beneficiary may petition any court of competent jurisdiction for the appointment of a successor Liquidating Trustee.

6.4    <u>Acceptance of Appointment by Successor Liquidating Trustee</u>. Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder and an employment agreement by and between the successor Liquidating Trustee and the FFR Trust, and shall file such acceptance and employment agreement with the FFR Trust records. Thereupon, such successor Liquidating Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of his predecessor in the FFR Trust with like effect as if originally named herein; <u>provided</u>, however, that a removed or resigning Liquidating Trustee shall, nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidating Trustee under the FFR Trust all the estates, properties, rights, powers, and trusts of such predecessor Liquidating Trustee.

ARTICLE VII

REPORTS TO BENEFICIARIES

7.1    <u>Securities Laws, Tax and Other Reports to Beneficiaries.</u>

(a)    <u>Securities Laws</u>. Under Section 1145 of the Bankruptcy Code, the issuance of Liquidating Trust Interests under the Plan shall be exempt from registration under the Securities Act of 1933 and applicable federal, state and local laws requiring registration of securities. If the Liquidating Trustee determines, on the advice of counsel, that the FFR Trust is required to comply with the registration and reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file periodic reports with the Securities and Exchange Commission.

LEGAL_US_E # 88722945.3

(b)    Other Reporting.  If the Liquidating Trustee is not required to file the periodic reports referred to in Section 7.1(a) above, as soon as practicable after the end of each calendar year and six (6) months thereafter, and as soon as practicable upon termination of the FFR Trust, the Liquidating Trustee shall submit to each Beneficiary appearing on his records as of the end of such period or such date of termination a written report including: (i) financial statements of the FFR Trust for such period; and (ii) a description of any action taken by the Liquidating Trustee in the performance of his duties which materially affects the FFR Trust and of which notice has not previously been given to the Beneficiaries.

(c)    Any report required to be distributed by the Liquidating Trustee under Section 7.1(b) shall also be distributed to the Trust Oversight Committee within five (5) Business Days of its distribution to Beneficiaries under Section 7.1(b).  The Liquidating Trustee may post any report required to be provided under this Section 7.1 on the web site maintained by the Liquidating Trustee in lieu of actual notice to Beneficiaries (unless otherwise required by law).

(d)    Tax Classification.  The FFR Trust shall timely execute and file Internal Revenue Form 8832 electing to qualify the Company as a partnership for federal income tax purposes pursuant to Section 301.7701-3 of the Regulations as of the date of the FFR Trust's formation.  In connection therewith, each of the Beneficiaries hereby consents to such election and agrees to cooperate to effect such election.  The FFR Trust shall furnish a copy of such election to each Beneficiary after the filing of the election.  The FFR Trust and the Liquidating Trustee (i) shall not cause or permit the FFR Trust to elect (A) to be excluded from the provisions of Subchapter K of Chapter 1 of the I.R.C. or (B) to be treated as a corporation for U.S. federal income tax purposes or (C) to be treated as an "electing large partnership" as defined in I.R.C. Section 775; (ii) shall file any required U.S. tax returns in a manner consistent with its treatment as a partnership for U.S. federal income tax purposes; and (iii) shall not take any action that would be inconsistent with the treatment of the FFR Trust as a partnership for such purposes.

(e)    Tax Appendix.  The FFR Trust, the Liquidating Trustee and the Beneficiaries acknowledge and agree that the provisions in the Tax Appendix to this Liquidating Trust Agreement shall determine the allocation of income and certain other tax matters with respect to the FFR Trust and the Beneficiaries.

(f)    Tax Information.  The FFR Trust and the Liquidating Trustee shall use their commercially reasonable best efforts to provide all information to the Beneficiaries (which information shall be estimated if final information is not available) for the preparation of the Beneficiaries' tax returns within forty-five (45) days after the close of each Fiscal Year.  The FFR Trust and the Liquidating Trustee shall use their commercially reasonable best efforts to cause Schedule K-1 s to be delivered to each Member no later than the ninety (90) days after the close of each Fiscal Year.  The FFR Trust and the Liquidating Trustee shall also provide, or cause to be provided, any other information reasonably requested by such Beneficiary in order for such Beneficiary to comply with its or any of its beneficial owners' tax reporting obligations.  Such information shall be provided to the Beneficiary within ninety (90) days of the receipt of a written request by such Beneficiary.

24

## ARTICLE VIII

## TERMINATION OF FFR TRUST AND TRUSTEE

8.1     Termination of FFR Trust.  The Liquidating Trustee shall not unduly prolong the duration of the FFR Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Liquidating Assets and to effect the distribution of the Liquidating Assets to the Beneficiaries in accordance with the terms hereof and terminate the FFR Trust as soon as practicable thereafter.  Prior to termination of the FFR Trust, substantially all of the Liquidating Assets will be distributed to the Beneficiaries, pursuant to the provisions set forth in Section 9.1 of the Tax Appendix.  The FFR Trust shall terminate when all of the Liquidating Assets have been liquidated and substantially all of the Distributions have been made.

8.2     Term of Liquidating Trustee.  The initial Liquidating Trustee, and each successor Liquidating Trustee, shall serve until the earlier of (a) the later to occur of (i) the entry of the Final Decree, (ii) the dissolution of the FFR Trust, and (iii) the payment of the final distributions to the Beneficiaries; or (b) the expiration of the term of such Liquidating Trustee's employment agreement or such Liquidating Trustee's resignation, death, incapacity, removal or termination by the Trust Oversight Committee pursuant to this Liquidating Trust Agreement or order of the Bankruptcy Court.

## ARTICLE IX

## AMENDMENT AND WAIVER

9.1     Amendment and Waiver.  This Liquidating Trust Agreement may be amended or supplemented from time to time by the Liquidating Trustee with the prior approval of a majority of the Members of the Trust Oversight Committee, except that, no such Trust Oversight Committee authorization shall be required if the Liquidating Trustee's counsel advises the Liquidating Trustee that any such amendment is required to ensure that the FFR Trust will not be required to register the beneficial interests under the Securities Exchange Act of 1934, as amended, or pursuant to a Bankruptcy Court order.  Technical amendments to this Liquidating Trust Agreement may be made, as necessary to clarify this Liquidating Trust Agreement or enable the Liquidating Trustee to effectuate the terms of this Liquidating Trust Agreement, by the Liquidating Trustee with the consent of the Trust Oversight Committee.  Notwithstanding this Section 9.1, any amendments to this Liquidating Trust Agreement shall not be inconsistent with the purpose and intention of the FFR Trust to liquidate the Liquidating Assets in accordance with Section 4.1 hereof.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1     Preservation of Privilege and Defenses.  In connection with the rights, claims, Causes of Action and Avoidance Actions that constitute the Liquidating Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any

LEGAL_US_E # 88722945.3

documents or communications (whether written or oral) transferred to the FFR Trust shall vest in the Liquidating Trustee and his representatives, and the Debtors and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses.

10.2    Cooperation.    The Debtors shall provide the Liquidating Trustee with copies of such of their books and records as the Liquidating Trustee shall reasonably require for the purpose of performing his duties and exercising his powers hereunder.

10.3    Laws as to Construction/Governing Law.    This Liquidating Trust Agreement shall be governed and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of law.

10.4    Counterparts.    This Liquidating Trust Agreement may be executed in one or more counterparts (via facsimile or otherwise), each of which shall be deemed an original but which together shall constitute but one and the same instrument.

10.5    Headings.    Sections, subheadings and other headings used in this Liquidating Trust Agreement are for convenience only and shall not affect the construction of this Liquidating Trust Agreement.

10.6    Interpretative Provisions.

(a)    All references to the plural herein shall also mean the singular and to the singular shall also mean the plural unless the context otherwise requires.

(b)    All references to the Debtors and the Liquidating Trustee pursuant to the definitions set forth in the Recitals hereto, or to any other Person herein, shall include their respective successors and assigns.

(c)    The words "hereof", "herein", "hereunder", "this Liquidating Trust Agreement" and words of similar import when used in this Liquidating Trust Agreement shall refer to this Liquidating Trust Agreement as a whole and not any particular provision of this Liquidating Trust Agreement and as this Liquidating Trust Agreement now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(d)    The word "including" when used in this Liquidating Trust Agreement shall mean "including, without limitation".

10.7    Severability.    If any provision of this Liquidating Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Liquidating Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Liquidating Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

LEGAL_US_E # 88722945.3

10.8    Notices. Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended:

To the Debtors:

Paul, Hastings, Janofsky & Walker, LLP
Attn: Richard A. Chesley, Esq.
Attn: Stacey T. Kern, Esq.
191 N. Wacker Dr., Suite 3000
Chicago, IL  60606

To the Liquidating Trustee:

FTI Consulting, Inc.
Attn: Andrew Hinkelman
One Front Street, Suite 1600
San Francisco, CA 94111

With a copy to:
Morrison & Foerster LLP
Attn: Brett H. Miller, Esq. &
Attn: Melissa A. Hager, Esq.
1290 Avenue of the Americas
New York, NY 10104

If to a Beneficiary:

To the name and address set forth on the registry maintained by the Liquidating Trustee.

10.9    Relationship to the Plan. The principal purpose of this Liquidating Trust Agreement is to aid in the implementation of the Plan. To that end, the Liquidating Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Liquidating Trust Agreement. If any provisions of this Liquidating Trust Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

10.10    Successors and Permitted Assigns. This Liquidating Trust Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and permitted assigns hereunder.

10.11    No Suits by Claimholders. No claimholder shall have any right by virtue of any provision of this Liquidating Trust Agreement to institute any action or proceeding in law

LEGAL_US_E # 88722945.3

or in equity against any party other than the Liquidating Trustee on or under or with respect to the Liquidating Assets.

10.12 Irrevocability. The FFR Trust is irrevocable, but is subject to amendment as provided for herein.

10.13 Trust Continuance. The death, dissolution, resignation, incompetency or removal of the Liquidating Trustee shall not operate to terminate the FFR Trust created by this Liquidating Trust Agreement or to revoke any existing agency created under the terms of this Liquidating Trust Agreement or invalidate any action theretofore taken by the Liquidating Trustee. In the event of the resignation or removal of the Liquidating Trustee, the Liquidating Trustee shall promptly (a) execute and deliver such documents, instruments and other writings as may be requested by the Bankruptcy Court or reasonably requested by the Trust Oversight Committee or a successor Liquidating Trustee to effect the termination of the Liquidating Trustee's capacity under this Liquidating Trust Agreement and the conveyance of the Liquidating Assets then held by the Liquidating Trustee to the successor, (b) deliver to the Bankruptcy Court or the successor Liquidating Trustee all documents, instruments, records and other writings related to the FFR Trust as may be in the possession of the Liquidating Trustee and (c) otherwise assist and cooperate in effecting the assumption of his obligations and functions by such successor Liquidating Trustee in accordance with Article VI hereof.

10.14 Enforcement and Administration. The Bankruptcy Court shall enforce and administer the provisions of this Liquidating Trust Agreement, as set forth in the Plan and herein.

10.15 Submission to Jurisdiction; Appointment of Agent for Service of Process.

(a) The Bankruptcy Court shall retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter arising out of or related to the Chapter 11 Cases and the Plan, including any matters involving the Liquidating Trustee, FFR Trust or Trust Oversight Committee.

(b) In addition, each of the parties hereto hereby irrevocably and unconditionally agrees (i) to be subject to the jurisdiction of the courts of the State of Delaware and of the federal courts sitting in the State of Delaware, and (ii) (A) to the extent such party is not otherwise subject to service of process in the State of Delaware, to appoint and maintain an agent in the State of Delaware as such party's agent for acceptance of legal process, and (B) that, to the fullest extent permitted by applicable law, service of process may also be made on such party by prepaid certified mail with a proof of mailing receipt validated by the United States Postal Service constituting evidence of valid service, and that service made pursuant to (ii) (A) or (B) above shall, to the fullest extent permitted by applicable law, have the same legal force and effect as if served upon such party personally within the State of Delaware. For purposes of implementing the parties' agreement to appoint and maintain an agent for service of process in the State of Delaware, each such party that has not as of the date hereof already duly appointed such an agent does hereby appoint _____, as such agent.

## 10.16  Reasonable Best Efforts; Further Assurances.

(a)  Upon the terms and subject to the conditions herein provided, except as otherwise provided in this Agreement, and without limiting the obligations of the parties, each of the parties hereto agrees to use its commercially reasonable best efforts to take or cause to be taken all action, to do or cause to be done and to assist and cooperate with the other party hereto in doing all things necessary, proper or advisable under applicable Laws and regulations to consummate and make effective, in the most expeditious manner practicable, the transactions contemplated hereby and under the Plan.

(b)  Any Member, the Liquidating Trustee, or any Member of the Trust Oversight Committee shall promptly inform the other parties hereto of any communication from any governmental entity regarding any of the transactions contemplated by this Agreement and the Plan.  If any such party or Affiliate thereof receives a request for additional information or documentary material from any such governmental entity with respect to the transactions contemplated by this Agreement, then such party shall use its reasonable best efforts to make, or cause to be made, as soon as practicable and after consultation with the other party, an appropriate response in compliance with such request.

(c)  From time to time after the Effective Date, upon the reasonable request of any party hereto, the other party hereto shall execute and deliver or cause to be executed and delivered, such further instruments, and take such further action as the requesting party may reasonably request, in order to effectuate the purpose, terms and conditions hereof.

LEGAL_US_E # 88722945.3

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Liquidating Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**FAIRFIELD RESIDENTIAL LLC**

By: _____

Name: _____

Its: _____

**[LIQUIDATING TRUSTEE]**

By: _____

Name: _____

Its: _____

# FFR TRUST

### Transfer of Beneficial Trust Interest

THIS AGREEMENT FOR TRANSFER OF BENEFICIAL TRUST INTEREST, dated as of _____, 20___ (this "Agreement"), is made with respect to FFR Trust, a Delaware statutory trust (the "Trust"), established by that certain Liquidating Trust Agreement dated _____ ___, 2010, as the same may be amended and/or modified from time to time (the "Trust Agreement"), and is by and between _____ (the "Assignor") and _____ (the "Assignee"). Capitalized terms used but not defined herein have the respective meanings ascribed to them in the Trust Agreement.

WITNESSETH:

WHEREAS, Assignor holds a beneficial trust interest in the Trust as described in Schedule I attached hereto (the "Interest"); and

WHEREAS, on the terms and subject to the conditions of this Agreement and the Trust Agreement, Assignor desires to transfer to Assignee that portion of Assignor's Interest as is set forth and described on Schedule I hereto (the "Transferred Interest"), and Assignee desires to acquire and accept the Transferred Interest.

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants and agreements set forth herein, the parties, with the intention of being legally bound, hereto agree as follows:

1.      Assignment; Admission as Substituted Beneficiary.  Assignor hereby assigns and transfers to Assignee, and Assignee hereby accepts from Assignor, all of Assignor's right, title and interest to the Transferred Interest.  The parties hereto acknowledge and agree that Assignee shall become a substituted Beneficiary with respect to the Transferred Interest at the Effective Time (defined below), on the terms and subject to the conditions of this Agreement and the Trust Agreement.

2.      Documents and Actions; Effective Time.  The transfer of the Transferred Interest and the admission of Assignee as a substituted Beneficiary shall be effected pursuant to the execution and delivery of the following documents and performance of the following actions:

> (i)      execution of this Agreement and delivery of same to the Liquidating Trustee (and/or a designee thereof); and

> (ii)      delivery to the Liquidating Trustee (or a designee thereof) of such documentation and information to the reasonable satisfaction of the Liquidating Trustee, acting reasonably, as is required by regulatory authorities under applicable securities laws (including the Securities Act of 1933, as amended (the "Securities Act")), "know your customer" and/or anti-money-laundering rules and regulations (including, the U.S. Patriot Act), if requested by the Liquidating Trustee.

> For purposes of this Agreement, the "Effective Time" shall mean the time at which the Trustee or a representative thereof, after reviewing the documents described in this Section 2, admits

Assignee as a substituted Beneficiary with respect to the Transferred Interest. Following the Effective Time, the Beneficiary List will be updated to reflect the transfer of the Transferred Interest contemplated by this Agreement.

3.    Acceptance by Assignee of Trust Agreement. With effect from the Effective Time, Assignee hereby assumes and agrees to be bound by the terms and conditions of the Trust Agreement as a substituted Beneficiary with respect to the Transferred Interest for the purposes of Section 3 thereof.

4.    Representations and Warranties.

(a)    General Representations. Assignor and Assignee each represent and warrant to the Trust with respect to itself that (i) any waivers, consents or approvals from any third Person (including any Governmental Entity) that may be necessary in connection with the proposed Transfer and the admission of Assignee as a substitute Beneficiary have been obtained, (ii) that the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized and will not violate any applicable law or regulation and they require no action by or in respect of, or filing with, any governmental body, self regulatory organization, agency or official, and (iii) to the Assignor and Assignee's knowledge, the transfer shall not have a material adverse effect on the Trust as a result of any requirement of applicable law in connection with or as a result of such Transfer.

(b)    Assignor Representations. [Assignor represents and warrants to the Trust that the transfer of the Transferred Interest by Assignor is not part of a plan or scheme to evade the registration requirements of the Securities Act. Neither Assignor nor any person acting on behalf of Assignor has offered or sold any of the Transferred Interest by any form of general solicitation or general advertising.] Assignor represents and warrants that it is the owner of the Transferred Interest and that such Transferred Interest is free of all liens or encumbrances other than those provided for, if any, in the Trust Agreement and/or the Plan.

(c)    Assignee Representations. Assignee represents and warrants to the Trust and agrees that:

(i)    [*Securities Law Status* -- (1) Assignee is acquiring the Transferred Interest for its own account with the present intention of holding such securities for purposes of investment, and it has no intention of selling such securities in a public distribution in violation of the federal securities laws or any applicable state or foreign securities laws; (2) Assignee understands that the Transferred Interest will not be registered under the Securities Act or other applicable federal or state, domestic or foreign securities laws and must be held indefinitely unless subsequently registered under the Securities Act and any other applicable federal or state, domestic or foreign securities laws or unless an exemption from such registration becomes or is available; (3) Assignee acknowledges and understands that no federal or state agency has passed upon the Transferred Interests or made any finding or determination as to the fairness of the terms of its investment; (4) Assignee is an "accredited investor", as defined under Rule 501(a) promulgated under the Securities Act; (5) Assignee has received and reviewed all information necessary to make an investment decision with respect to the Transferred Interest; (6) Assignee acknowledges that there are restrictions on the Transfer of the Transferred Interest under the Trust Agreement; (7) Assignee has read and is familiar with the Trust Agreement and hereby assumes all duties and obligations of Assignor as a substituted Beneficiary with respect to the Transferred Interest; (8) Assignee has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the investment in the Transferred Interest; (9) Assignee is able to bear the risk of an investment in the Transferred Interest, has the capacity to protect its own interests in

- 3 -

connection with the Transferred Interest and can afford the complete loss of an investment in the Transferred Interest and (10) Assignee is aware that there is no established market for the Transferred Interests and no guarantee that a market for the Transferred Interest will develop or, if a market develops, that it will provide adequate liquidity.]

(iii) *Tax Forms* -- Assignee agrees to provide the Trust with the correct form of United States Internal Revenue Service Form required by US tax law or any successor form thereto, or any other similar form that the Trust may require of such Assignee.

5.      Survival of Agreements, Representations and Warranties.  All agreements, representations and warranties contained herein or made in writing by or on behalf of Assignor or Assignee in connection with the transactions contemplated by this Agreement shall survive the execution and delivery of this Agreement, any investigation at any time made by any party hereto or on its behalf, and the Transfer of the Transferred Interest pursuant to this Agreement and payment therefor, if any.

6.      Third Party Beneficiary.  The parties agree and acknowledge that the Trust is an intended third party beneficiary of this Agreement.

7.      Amendments.  This Agreement or any term hereof may not be amended or waived except with the written consent of Assignor, Assignee and, the Trust.

8.      Joint Ownership.  If any of the Assignor or Assignee (each an "Undersigned") is a natural person (and not an entity) and if this Agreement is signed by or on behalf of a joint owner, then (i) all references herein to such Undersigned shall be deemed to mean such Undersigned and each joint owner, and (ii) all acknowledgements, understandings, agreements, representations and warranties made by or on behalf of such Undersigned in this Agreement shall be deemed, mutatis mutandis, to have been made by such Undersigned and each joint owner jointly and severally.

9.      General.  This Agreement: (i) shall be binding upon and will inure to the benefit of the parties hereto and their respective legal representatives, successors and assigns whether so expressed or not; (ii) shall be governed, construed and enforced in accordance with the laws of the State of New York; and (iii) shall survive the admission of Assignee as a substituted Beneficiary of the Trust. This Agreement may be executed and delivered in counterparts (including by email PDF or facsimile transmission), each of which will be deemed an original.

[Signature Page to Follow]

**FFR TRUST**

Signature Page
for
Agreement for Transfer of Beneficial Trust Interest

IN WITNESS WHEREOF, the undersigned have executed this Agreement for Transfer of Beneficial Trust Interest as of the date first above written.

ASSIGNOR:

_____

By: _____
Name:
Title:

ASSIGNEE:

_____

By: _____
Name:
Title:

**FFR TRUST**

Transfer of Beneficial Trust Interest

A.    Interest (Include Total Number of Beneficial Interests Held as of Date Hereof)

    _____ Beneficial Interests

B.    Transferred Interest (Include Number of Beneficial Interests Being Transferred to Assignee Hereunder)

    _____ Beneficial Interests

B.    Assignee Information -

    Name of Assignee: _____

    Name and Title of Authorized Signatories: _____

    _____

    Federal Tax I.D. Number: _____

    Tax Residence: _____

    Tax Year End Date: _____

    Principal Business Address: _____

    _____

    _____

    Telephone Number: _____

Facsimile Number: _____

E-Mail Address: _____

**TAX APPENDIX TO LIQUIDATING TRUST AGREEMENT
ALLOCATION OF PROFITS AND LOSSES**

## ARTICLE I

### THE INTENT OF THE PARTIES

Pursuant to Regulation Section 301.7701-3, the FFR Trust shall be treated as a partnership for federal income tax purposes, and the tax treatment of the FFR Trust shall be governed by Subchapter K of the I.R.C. The intention is to utilize the concepts and requirements of the I.R.C. and Regulations involving partnerships, and the definitions contained herein should be read consistently with each provision of the I.R.C. and Regulations.

## ARTICLE II

### DEFINITIONS

For purposes of this Tax Appendix and this Liquidating Trust Agreement, the terms and phrases listed below shall be defined as follows:

(a)     "Book Value" means the value of FFR Trust property maintained on the FFR Trust's books for purposes of determining the Beneficiaries' Capital Accounts. With respect to any asset of the FFR Trust, such asset's adjusted basis for federal income tax purposes shall be its Book Value, except as follows:

The initial Book Value of any asset contributed by a Beneficiary to the FFR Trust shall be the gross fair market value of such asset as determined by the Liquidating Trustee determined in a manner consistent with Section 2.5 of the Liquidating Trust Agreement.

The Book Value of all FFR Trust assets shall be adjusted to equal their respective gross fair market values, as determined by the Liquidating Trustee in accordance with I.R.C. Section 7701(g), as of the following times: (a) the acquisition of an additional Allowed Claim in the FFR Trust by any new or existing Beneficiary in exchange for more than a de minimis Capital Contribution; (b) the distribution by the FFR Trust to a retiring or continuing Beneficiary as consideration for an Allowed Claim in the FFR Trust of more than a de minimis amount of money or other FFR Trust property; and (c) the liquidation of the FFR Trust.

If the Book Value of an asset has been determined or adjusted pursuant to paragraph (i) or (ii) above of this Section 2(a), such Book Value shall thereafter be adjusted for the Depreciation taken into account with respect to such asset for purposes of computing Profits and Losses.

(b)     "Capital Account" means an individual account maintained by the FFR Trust for each Beneficiary, which shall be established and maintained by the FFR Trust in accordance with the Regulations promulgated under I.R.C. Section 704(b). A

Beneficiary's Capital Account shall initially be equal to the amount of such Beneficiary's Capital Contribution.

(c)     "Capital Contribution" means the total amount of cash and the net fair market value of property actually contributed to the FFR Trust by a Beneficiary (and the predecessor Beneficiary of the Allowed Claims of such Beneficiary). For purposes of this Liquidating Trust Agreement, the phrase "net fair market value of property" means the Book Value of property, reduced by liabilities assumed by the FFR Trust or to which such property is subject. The amount of each Beneficiary's initial Capital Contribution shall be the amount that such Beneficiary would receive if the Liquidating Trust dissolved immediately after the Capital Contributions are made by the Beneficiaries and the proceeds were distributed to the Beneficiaries in accordance with Section 9.2 of this Tax Appendix.

(d)     "Depreciation" means, for each taxable year or other period, an amount equal to the depreciation, amortization or other cost recovery deduction, as computed for federal income tax purposes, allowable with respect to an asset of the FFR Trust for such year or other period, except that if the Book Value of a FFR Trust asset differs from its adjusted basis for federal income tax purposes at the beginning of such year or other period, Depreciation shall be an amount which bears the same ratio to such beginning Book Value as the federal income tax depreciation, amortization or other cost recovery deduction for such year or other period bears to such beginning adjusted tax basis.

(e)     "Excess Capital Account Deficit" means, with respect to a Beneficiary, the deficit balance, if any, in such Beneficiary's Capital Account as of the end of the relevant taxable year, after giving effect to the following adjustments:

Increase such Capital Account by any amounts which such Beneficiary is obligated by this Liquidating Trust Agreement to restore to the FFR Trust pursuant to Regulation Section 1.704-1(b)(2)(ii)(c), or is deemed obligated to restore to the FFR Trust pursuant to the penultimate sentences of Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5); and

Decrease such Capital Account by the items described in Sections 1.704-1(b)(2)(ii)(d)(4), (5), and (6) of the Regulations, and for this purpose, the Liquidating Trustee shall make the determination of the items described in such Sections of the Regulations.

The foregoing definition of Excess Capital Account Deficit is intended to comply with the provision of Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(f)     "Fiscal Year" means the taxable year of the FFR Trust, which shall be the calendar year unless otherwise required by the I.R.C.

(g)     "Nonrecourse Deductions" shall be defined as set forth in Sections 1.704-2(b) and (c) of the Regulations.

(h) "Nonrecourse Liability" or "Nonrecourse Debt" or "Nonrecourse Loan" shall have the meanings defined in Regulations Sections 1.704-2(b)(3) and 1.752-1(a)(2), without regard to whether those Sections apply to such liability.

(i) "Partner Minimum Gain" means a Beneficiary's share of minimum gain attributable to a Partner Nonrecourse Debt within the meaning of Regulations Sections 1.704-2(i)(4) and (5).

(j) "Partner Nonrecourse Debt" means any Nonrecourse Debt of the FFR Trust for which a Beneficiary bears the economic risk of loss within the meaning of Regulations Section 1.704-2(b)(4).

(k) "Partner Nonrecourse Deduction" means any item of FFR Trust Loss, deduction, or expenditure that is attributable to a Partner Nonrecourse Debt within the meaning of Regulations Sections 1.704-2(i)(1) and (2).

(l) "Partnership Minimum Gain" shall be defined as set forth in Sections 1.704-2(b)(2) and 1.704-2(d)(1) of the Regulations. Each Beneficiary's share of the FFR Trust's Partnership Minimum Gain shall be defined as set forth in Section 1.704-2(g) of the Regulations.

(m) "Profits" and "Losses" means for each Fiscal Year or other period an amount equal to the FFR Trust's taxable income or loss for such year or period, determined in accordance with I.R.C. Section 703(a) (for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to I.R.C. Section 703(a)(1) shall be included in taxable income or loss), with the following adjustments:

any income of the FFR Trust that is exempt from federal income tax as described in I.R.C. Section 705(a)(1)(B) shall be added to such taxable income or loss;

any expenditures of the FFR Trust not deductible in computing its taxable income and not properly chargeable to capital account (as described in and within the meaning of I.R.C. Section 705(a)(2)(B)) or treated as I.R.C. Section 705(a)(2)(B) expenditures pursuant to Regulations Section 1.704-1(b)(2)(iv)(i) shall be subtracted from such taxable income or loss;

if property held by the FFR Trust is reflected on the FFR Trust's books at other than its adjusted tax basis, then in lieu of depreciation, amortization and other cost recovery deductions taken into account for federal income tax purposes, there shall be taken into account Depreciation for such year or other period, computed in accordance with the Regulations issued pursuant to I.R.C. Section 704(b);

any items that are specially allocated to a Beneficiary pursuant to this Tax Appendix shall not be taken into account in determining Profits and Losses; and

for purposes of determining Profit or Loss upon the sale or other disposition of property held by the FFR Trust, then in accordance with the Regulations under I.R.C. Section 704(b), the Book Value at the time of sale or other disposition shall be substituted for the property's adjusted tax basis if at the time of sale or disposition there is a variance in such value and adjusted tax basis.

Except as may be otherwise provided in this Liquidating Trust Agreement, all items that are components of Profits and Losses shall be divided among the Beneficiaries in the same ratio as they share Profits and Losses.

(n)     "Regulations" means the Income Tax Regulations issued by the United States Treasury Department, as the same may be amended from time to time.

ARTICLE III

ALLOCATION OF PROFITS AND LOSSES

3.1     In General.  Profits and Losses of the FFR Trust shall be allocated in accordance with Sections 3.2 and 3.3 of this Tax Appendix.

3.2     Profits and Losses.  After accounting for the special allocations of Section 3.3 of this Tax Appendix, Profits and Losses shall be allocated among the Beneficiaries as follows:

(a)     Profits.  For each Fiscal Year, Profits shall be allocated in the following order and priority:

First, an amount of Profits equal to the aggregate negative balances (if any) in the Capital Accounts of all Beneficiaries having negative Capital Accounts (increasing for this purpose each Beneficiary's Capital Account balance by its remaining share of Partnership Minimum Gain and/or Partner Minimum Gain) shall be allocated to such Beneficiaries in proportion to their negative Capital Account balances (as so increased) until all such Capital Accounts (as so increased) shall have zero balances; and

Second, an amount of Profits shall be allocated to each of the Beneficiaries until the positive balance in the Capital Account of each Beneficiary (increasing for this purpose each Beneficiary's Capital Account balance by its remaining share of Partnership Minimum Gain and/or Partner Minimum Gain) equals the aggregate amount of cash which would be distributed to such Beneficiary in accordance with the Plan if all assets of the FFR Trust were sold for an amount equal to their Book Value and all FFR Trust cash were so distributed.

(b)     Losses.  For each Fiscal Year, Losses shall be allocated in the following order and priority:

First, an amount of Losses equal to the aggregate positive balances (if any) in the Capital Accounts of all Beneficiaries having positive balance Capital Accounts shall be allocated to such Beneficiaries in proportion to their positive Capital Account balances until all such Capital Accounts shall have a zero balance; provided, however, that if the amount of Losses so to be allocated is less than the sum of the positive balances in the Capital Accounts of those Beneficiaries having positive balances in their Capital Accounts, then such Losses shall be allocated to the Beneficiaries in such proportions and in such amounts so that the Capital Account balances of each Beneficiary shall equal, as nearly as possible, the amount such Beneficiary would receive if an amount equal to the excess of (a) the sum of all Beneficiaries' balances in their Capital Accounts computed prior to the allocation of Losses under this Section 3.2(b)(1) over (b) the aggregate amount of Losses to be allocated to the Beneficiaries pursuant to this Section 3.2(b)(1) were distributed to the Partners in accordance with the Plan; and

Second, the balance, if any, of any such Losses shall be allocated to the Beneficiaries in proportion to their share of Allowed Claims.

3.3 Special Allocations. The following special allocations (the "Regulatory Allocations") shall be made in the following order:

(a) Partner Nonrecourse Deductions. Any Partner Nonrecourse Deductions for any fiscal year or other period shall be specially allocated to the Beneficiary who bears the economic risk of loss with respect to the Partner Nonrecourse Debt to which such Partner Nonrecourse Deductions are attributable in accordance with Regulations Section 1.704-2(i)(1).

(b) Nonrecourse Deductions. Nonrecourse Deductions for any taxable year or other period shall be specially allocated among the Beneficiaries pro rata in proportion to their ratio for sharing Profits or Losses for the taxable year. The "excess nonrecourse liabilities" (as defined in Regulations Section 1.752-3(a)) shall be allocated to the Beneficiaries based on their share of Allowed Claims as compared to the total of Allowed Claims for all Beneficiaries.

(c) Minimum Gain Chargeback. Except as otherwise provided in Regulations Section 1.704-2(f) and notwithstanding any other provision of the Liquidating Trust Agreement, or of this Article III, if there is a net decrease in Partnership Minimum Gain during any partnership taxable year, each Beneficiary shall be allocated items of partnership income and gain for that year equal to that Beneficiary's share of the net decrease in Partnership Minimum Gain, as determined pursuant to Regulations Section 1.704-2(g)(2). Notwithstanding the foregoing, if the minimum gain chargeback would cause a distortion of the economic agreement of the Beneficiaries as set forth in the Plan, and it is not expected that the FFR Trust will have sufficient other income to correct the distortion, the Liquidating Trustee shall be authorized to request the Service for a waiver of the minimum gain chargeback requirement, as provided in Regulations Section 1.704-2(f)(4). This Section 3.3(c)

is intended to comply with the minimum gain chargeback requirement in Regulations Section 1.704-2(f) and (g) and shall be interpreted consistently therewith. To the extent permitted by such Section of the Regulations and for purposes of this Section 3.3(c) only, each Beneficiary's Excess Capital Account Deficit shall be determined prior to any other allocations pursuant to this Section 3.3 with respect to such taxable year and without regard to any net decrease in Partner Minimum Gain during such taxable year.

(d)     Partner Minimum Gain Chargeback.     Except as otherwise provided in Regulations Section 1.704-2(i)(4) and notwithstanding any other provision of this Agreement, or of this Section 3.3 except Section 3.3(c), if there is a net decrease in Partner Minimum Gain attributable to a Partner Nonrecourse Debt during any taxable year of the FFR Trust, each Person who has a share of the Partner Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Regulations Section 1.704-2(i)(5), shall be specially allocated items of income and gain of the FFR Trust for such year (and, if necessary, subsequent years) in an amount equal to that Beneficiary's share of the net decrease in Partner Minimum Gain. The items to be so allocated shall be determined in accordance with Section 1.704-2(i)(4) and (f)(5) of the Regulations. This Section 3.3(d) is intended to comply with the Partner Minimum Gain chargeback requirement in such Section of the Regulations and shall be interpreted consistently therewith. Solely for purposes of this Section 3.3(d), each Beneficiary's Excess Capital Account Deficit shall be determined prior to any other allocations pursuant to this Section 3.3 with respect to such taxable year, other than allocations pursuant to Section 3.3(c) of this Tax Appendix.

(e)     Loss Limitation.     Items of FFR Trust loss and deduction otherwise allocable to a Beneficiary hereunder that would cause or increase an Excess Capital Account Deficit with respect to such Beneficiary as of the end of the taxable year to which such allocation relates shall not be allocated to such Beneficiary and instead shall be allocated to the other Beneficiaries in a reasonable manner determined by the Liquidating Trustee and consistent with the allocation provisions of Section 3.2 of this Tax Appendix (as limited by this Section 3.3(e)), provided that such reallocation does not cause or increase an Excess Capital Account Deficit with respect to any other Beneficiary.

(f)     Qualified Income Offset.     If any Beneficiary unexpectedly receives any adjustments, allocations, or distributions described in Regulations Section 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), or 1.704-1(b)(2)(ii)(d)(6), items of FFR Trust income and gain shall be specially allocated to such Beneficiary in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the Excess Capital Account Deficits created by such adjustments, allocations, or distributions as quickly as possible, provided that an allocation pursuant to this Section 3.3(f) shall be made only if and to the extent that a Beneficiary would have Excess Capital Account Deficit after all other allocations provided for in Sections 3.2(a) and (b) of this Tax Appendix have been tentatively made as if this Section 3.3(f) were not in this Tax Appendix.

(g)     Gross Income Allocation.     If any Beneficiary has a deficit Capital Account at the end of any taxable year of the FFR Trust which is in excess of the sum of (i) the amount such Beneficiary is obligated to restore pursuant to any provision of this Agreement, and (ii) the amount such Beneficiary is deemed to be obligated to restore pursuant

to the penultimate sentences of Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5), each such Beneficiary shall be specially allocated items of FFR Trust income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this Section 3.3(g) shall be made only if and to the extent that such Beneficiary would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Section 3.3 have been made as if this Section 3.3(g) and Section 3.3(e) hereof were not in this Tax Appendix.

(h)     I.R.C. Section 734 and 743 Adjustments.  To the extent an adjustment to the adjusted tax basis of any asset held by the FFR Trust pursuant to I.R.C. Section 734(b) or I.R.C. Section 743(b) is required, pursuant to the Regulations to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis), and such gain or loss shall be specially allocated to the Beneficiaries in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Regulations.

## ARTICLE IV

## CURATIVE ALLOCATIONS

The Regulatory Allocations are intended to comply with certain requirements of the Regulations.  It is the intent of the Beneficiaries and the Liquidating Trustee that, to the extent possible, all Regulatory Allocations shall be offset either with other Regulatory Allocations or with special allocations of other items of partnership income, gain, loss, or deduction pursuant to this Article IV.  Therefore, notwithstanding Article III of this Tax Appendix, (other than the Regulatory Allocations including Section 3.3(h)), the Liquidating Trustee shall make such offsetting special allocations in whatever manner it determines appropriate so that, after such offsetting allocations are made, each Beneficiary's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Beneficiary would have had if the Regulatory Allocations were not part of the Agreement and all FFR Trust items were allocated pursuant to Section 3.2 of this Tax Appendix.  In exercising its discretion under this Article IV, the Liquidating Trustee shall take into account future Regulatory Allocations under Article III.

## ARTICLE V

## SPECIAL RULES

5.1     Restatement of Book Value.  In accordance with Regulation Section 1.704-1(b)(2)(iv)(f), the Liquidating Trustee may, upon the occurrence of the events specified in such Section of the Regulations, revalue the FFR Trust's property and assets (including intangible assets such as goodwill) as well as the Beneficiaries' Capital Accounts.

5.2     Prorations.  For purposes of determining the Profits, Losses, or any other items allocable to any period, Profits, Losses and any such other items shall be determined on a daily, monthly, or other basis, as determined by the Liquidating Trustee using any permissible method under I.R.C. Section 706 and the Regulations thereunder.

## ARTICLE VI

## TAX ALLOCATIONS: I.R.C. SECTION 704(C)

6.1     In General.   In accordance with I.R.C. Section 704(c) and the Regulations thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the FFR Trust shall, solely for tax purposes, be allocated among the Beneficiaries so as to take account of any variation between the adjusted tax basis of such property to the FFR Trust for federal income tax purposes and its initial Book Value.

6.2     Revaluation.   If the Book Value of any FFR Trust asset is adjusted pursuant to Section 2(a) of this Tax Appendix, subsequent allocations of income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted tax basis of such asset for federal income tax purposes and its Book Value in the same manner as under I.R.C. Section 704(c) and the Regulations thereunder.

6.3     Elections.   Any elections or other decisions relating to such allocations shall be made by the Liquidating Trustee in any manner that reasonably reflects the purpose and intention of this Agreement.  Allocations pursuant to this Article VI are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any Beneficiary's Capital Account or share of Profits, Losses, other items, or distributions pursuant to any provision of this Liquidating Trust Agreement.

## ARTICLE VII

## TAX ELECTION

In the event of a transfer of all or part of an Allowed Claim of a Beneficiary, or upon the distribution of cash or other property to a Beneficiary, the FFR Trust may, but shall not be obligated to, elect pursuant to I.R.C. Section 754 to adjust the basis of the assets held by the FFR Trust.  The determination to make such election shall be within the absolute discretion of the Liquidating Trustee, and the Liquidating Trustee may, in its discretion, require one or more Persons likely to benefit from such election to pay the additional accounting and other expenses associated with making such election.

## ARTICLE VIII

## APPOINTMENT OF TAX MATTERS PARTNER  [DISCUSS]

8.1     Designation.   _____ is hereby designated, pursuant to I.R.C. Section 6231(a)(7), as the FFR Trust's "tax matters partner" ("TMP"), and is responsible for acting as the liaison between the FFR Trust and the Internal Revenue Service ("Service") and as the coordinator of the FFR Trust's actions pursuant to a Service tax audit of the FFR Trust.  The TMP shall continue to serve as TMP until the earliest to occur of the following events:

(a)     The TMP is no longer willing or able to serve;

      (b)     The TMP no longer holds an Allowed Claim in the FFR Trust;
or

      (c)     The TMP is removed by the Beneficiaries.

Upon the occurrence of (a), (b) or (c) above, the Beneficiaries shall select a new TMP.

      8.2     Authority.   The TMP shall have the authority to take the following actions:

      (a)     Furnish to the Service, when properly requested pursuant to the I.R.C., the names, addresses, profits, interest and taxpayer identification number of each Person who or which was a Beneficiary in the FFR Trust at any time during the FFR Trust's taxable year;

      (b)     Keep each Beneficiary informed of all administrative and judicial proceedings for the adjustment, at the FFR Trust level, of FFR Trust items;

      (c)     Extend the period of limitations for making assessments against the FFR Trust;

      (d)     After receipt from the Service of a notice of a final FFR Trust administrative adjustment:

      (i)     File a petition for a readjustment of FFR Trust items for such taxable year with the United States Tax Court, the U. S. District Court of the United States for the district in which the FFR Trust's principal place of business is located, or the United States Court of Claims as determined by the TMP; and

      (ii)     Enter into binding settlement agreements with the Service with regard to FFR Trust items as provided in I.R.C. Section 6224(c)(3).

      8.3     Reimbursement.  In furtherance of the duties of the TMP described in this Agreement, the TMP shall be reimbursed by the FFR Trust for all expenses, costs and liabilities expended or incurred by the TMP.

      8.4     Indemnification.  The FFR Trust shall indemnify and reimburse the TMP for all expenses, including legal and accounting fees, claims, liabilities, losses and damages incurred in connection with any administrative or judicial proceeding with respect to the tax liability of the Beneficiaries.  The payment of all such expenses shall be made before any distributions are made by the FFR Trust.  No Beneficiary shall have any obligation to provide funds for such purpose.  The taking of any action and the incurring of any expense by the TMP in connection with any such proceeding, except to the extent required by law, is a matter in the sole discretion of the TMP and the provisions on limitations of liability of Beneficiaries and indemnification set forth in this Liquidating Trust Agreement shall be fully applicable to the TMP in its capacity as such.

## ARTICLE IX

## LIQUIDATION TERMINATION OF THE FFR TRUST

9.1     Termination of the FFR Trust.  Upon the occurrence of an event that causes the termination of the FFR Trust under Section 16.1 of the Liquidating Trust Agreement, the Liquidating Trustee shall liquidate the FFR Trust's assets and distribute the proceeds in the following order of priority:

(a)     Debts.  To the payment of the debts and liabilities of the FFR Trust (including any and all fees and loans payable to one or more Beneficiaries) in the order of priority as provided by law, and the expense of liquidation;

(b)     Reserves.  To establish reserves that the Liquidating Trustee may deem reasonably necessary for any contingent, foreseen or unforeseen liabilities or obligations of the FFR Trust; and

(c)     Distributions.  The remaining balance, if any, shall then be distributed to the Beneficiaries in accordance with the priorities set forth in the Plan, after giving effect to all contributions, distributions, and allocations (pursuant to Section 3.2 of this Tax Appendix) for all periods.

(d)     No Deficit Make Up.  No Beneficiary shall have any obligation to restore a negative or deficit balance in its Capital Account existing upon liquidation of the FFR Trust or otherwise.

9.2     Fair Market Value Distributions.  If any assets are to be distributed in kind to one or more of the Beneficiaries (in connection with the liquidation of the FFR Trust or otherwise), the value of such assets shall be adjusted pursuant to the Regulations promulgated under I.R.C. Section 704(b) and such assets shall be distributed at their respective fair market values.  Furthermore, each Beneficiary's Capital Account shall be adjusted to reflect what such Beneficiary's Capital Account would be if the FFR Trust were to sell all of such assets at their respective fair market values and allocated the Profits or Losses among the Beneficiaries in accordance with the provisions of this Tax Appendix.